

Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
Tel.: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com

September 25, 2015

**By ECF**

Honorable Vernon S. Broderick, United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Sonterra Capital Master Fund, Ltd. v. Barclays Bank plc, et al.*, No. 15-cv-3538 (VSB)

Dear Judge Broderick:

This firm represents defendant Lloyds Banking Group plc in the above-referenced action. Pursuant to Your Honor's Order dated July 8, 2015 (ECF No. 17) and Rule 4.A of Your Honor's Individual Rules and Practices, we write on behalf of all defendants ("Defendants") to request a pre-motion conference in connection with Defendants' anticipated motion to dismiss the amended complaint (ECF No. 18) ("AC") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. This putative class action is one of many civil cases pending in this district relating to the London Interbank Offered Rate ("LIBOR"). Previously filed actions relating to LIBOR have been the subject of substantial pre-answer motion practice, resulting in the dismissal of numerous claims as well as dismissal of many defendants for lack of personal jurisdiction. The AC is similarly flawed, as Defendants will show in their motion.

This action pertains to British pound sterling ("GBP") LIBOR, and is the latest in a series of cases brought by the same plaintiff (represented by the same counsel) relating to Japanese Yen ("JPY") LIBOR, Swiss Franc LIBOR, and the Euro Interbank Offered Rate ("EURIBOR"). Plaintiff, an investment fund, claims to have traded in foreign-exchange ("FX") forward contracts (which are not priced, benchmarked, or settled based on LIBOR). It alleges harm from a purported agreement to manipulate the GBP LIBOR rate from 2005 to 2010, and asserts claims under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*; Section 1 of the Sherman Act, 15 U.S.C. § 1; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; as well as a claim for unjust enrichment. Other judges of this Court have already rejected these theories, and they should be rejected here as well.

**Personal Jurisdiction.** Personal jurisdiction does not exist over Defendants because all but one of them have both their headquarters and principal places of business in Europe, and 18 U.S.C. § 1965, 15 U.S.C. § 22, and 7 U.S.C. § 25(c) do not save Plaintiff's claims.[1] Defendants are not subject to general jurisdiction because they are not "at home" in New York or anywhere

---

[1] Although Defendant Barclays Capital Inc. is headquartered in New York, it must be dismissed from this action because, in addition to all the reasons set forth in the text, Plaintiff makes no specific allegations against it beyond its corporate affiliations with Defendant Barclays Bank PLC. *Concord Assocs., L.P. v. Entm't Props. Tr.*, No. 12 CIV 1667 ER, 2014 WL 1396524, at *24 (S.D.N.Y Apr. 9, 2014) ("Group pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand…a motion to dismiss").

else in the United States, as required by *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), nor have they consented to such jurisdiction. Defendants are not subject to specific jurisdiction because Plaintiff fails to allege that they had any "suit-related" contacts with New York (or anywhere in the United States) sufficient to support such jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("[S]uit-related conduct must create a substantial connection with the forum . . . ."). Three judges of this Court have already dismissed foreign defendants—including Defendants here—from LIBOR cases involving nearly identical jurisdictional allegations.[2] *See generally Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819 (VSB), slip op. at 7-16 (S.D.N.Y. Sept. 21, 2015) (dismissing action for lack of general or specific jurisdiction).

**CEA**. Plaintiff's CEA claims fail for numerous reasons. *First*, they are untimely under the CEA's two-year statute of limitations, particularly because (i) widely publicized LIBOR-related news reports, regulatory settlements, and lawsuits as early as the first half of 2008 put Plaintiff on inquiry notice of its potential claims well over two years before it filed suit on May 6, 2015, and (ii) Plaintiff's conclusory allegations of fraudulent concealment fail to show that the statute of limitations has been tolled. *Second*, during the putative class period, Plaintiff's GBP FX forwards (the only instruments at issue here), as well as other financial products referenced in the Amended Complaint, were excluded from the CEA's coverage. Allegations involving other "Sterling LIBOR-based derivatives" cannot save these claims because Plaintiff does not assert that it traded them, and class claims cannot survive where the only named plaintiff lacks standing in its own capacity. *Third*, Plaintiff includes transactions such as GBP futures contracts traded on the London International Financial Futures and Options Exchange, but such claims are impermissibly extraterritorial; the CEA does not apply to futures contracts traded on foreign exchanges. *See Loginovskaya v. Batratchenko*, 764 F.3d 266, 273 (2d Cir. 2014). *Fourth*, Plaintiff fails to allege the basic elements of a CEA claim, let alone with the specificity required by Rule 9(b). In particular, Plaintiff fails to plead specific intent because there are no facts showing that Defendants intended to manipulate, or directed their alleged conduct toward, GBP FX forwards; and Plaintiff fails to plead any actual damages proximately caused by Defendants' alleged conduct. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 620-21 (S.D.N.Y. 2013) ("*LIBOR II*"). *Fifth* and finally, Plaintiff lacks standing because GBP LIBOR is neither the commodity underlying, nor the price of, the GBP FX forwards at issue.

**Antitrust**. Plaintiff's antitrust claims similarly fail. *First*, Plaintiff has not alleged injury-in-fact; FX forwards are not tied to GBP LIBOR, so Plaintiff could not have been injured by the alleged conduct. *Second*, Plaintiff has failed to allege antitrust injury – one that "stems from a competition-*reducing* aspect or effect of the defendant's behavior." *LIBOR II*, 962 F. Supp. 2d at 627. As four judges of this Court have determined, the LIBOR-setting process, by its nature, is a cooperative process, not a competitive one.[3] As a result, alleged coordination in LIBOR setting does not establish antitrust injury or a restraint of trade. *See Laydon I*, 2014 WL 1280464, at *12. Antitrust injury is also lacking because Plaintiff is not an efficient enforcer of

---

[2] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015 ("*LIBOR IV*") (Buchwald, J.) (U.S Dollar ("USD") LIBOR); *7 W. 57th St. Realty Co. v. Citigroup Inc.*, No. 13 CIV 981 PCG, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.) (USD LIBOR); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 GBD, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ("*Laydon II*") (Daniels, J.) (JPY LIBOR).

[3] *See LIBOR IV*, 2015 WL 4634541, at *78–83; *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 GBD, 2014 WL 1280464, at *7-8 (S.D.N.Y. Mar. 28, 2014) ("*Laydon I*"); *Mayfield v. British Bankers' Ass'n*, No. 14-cv-4735, Dkt. No. 6, slip op. at 4-5 (S.D.N.Y. July 22, 2014) (Preska, C.J.); *7 W. 57th St. Realty*, 2015 WL 1514539, at *14-20.

the antitrust laws; the "attenuated causation between the alleged conspiracy and the asserted injury is too indirect," and Plaintiff's alleged injuries are too speculative given the "complicated series of market interactions" Plaintiff cites to show how defendants' conduct affected the price of its FX forwards. *See id.* at *9-10. *Third*, the antitrust claims are barred because Plaintiff fails to allege that the alleged conduct, involving submissions made in London for a non-U.S. currency, had a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce *or* that Plaintiff's claims arise from such an effect. 15 U.S.C. § 6a; *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004). *Fourth*, Plaintiff fails to allege a plausible antitrust conspiracy; it has not pleaded facts giving rise to a plausible inference that each Defendant made a "conscious commitment to a common scheme," *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 222 (S.D.N.Y. 1998), or provided "specifics with respect to the acts of [that] defendant," *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491 (D. Conn. 2008). Instead, Plaintiff alleges a six-year conspiracy among all Defendants to manipulate LIBOR based on a handful of internal communications incapable of supporting allegations of interbank collusion, AC ¶¶ 120-128, plus exactly *two* alleged communications in 2007 between one Defendant and unidentified brokers related to GBP LIBOR, *id.* ¶¶ 131-132. Likewise, Plaintiff's allegations of a six-year conspiracy to fix derivatives prices are based on *one* alleged instance of misconduct in 2006, as supposedly illustrated by two phone calls between employees of one Defendant and an unnamed broker. *Id.* ¶¶ 148-151. These paltry allegations do not present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Fifth* and finally, even if Plaintiff could state a claim, that claim is time-barred because Plaintiff brought suit on May 6, 2015, more than four years after the end of the alleged conduct. AC ¶ 1; 15 U.S.C. § 15b.

**RICO**. Plaintiff lacks standing to bring a RICO claim because its claimed injuries are too remote and speculative. *Laydon v. Mizuho Bank Ltd.*, No. 12-cv-3419 GBD, 2015 WL 1515487, at *9-10 (S.D.N.Y. Mar. 31, 2015) ("*Laydon III*") (dismissing RICO claims in JPY LIBOR context). Even assuming Plaintiff had standing, its claims are impermissibly extraterritorial. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 139 (2d Cir.), *reh'g denied*, 764 F.3d 149 (2d Cir. 2014), *pet. for cert. filed*, July 27, 2015. Because Plaintiff's asserted RICO predicate of wire fraud does not apply extraterritorially, Plaintiff must allege "extensive factual allegations" of domestic conduct in establishing the elements of wire fraud to sustain a RICO claim. *Laydon III*, 2015 WL 1515487, at *7-8. Plaintiff cannot support such allegations when all the relevant conduct occurred abroad. Nor has Plaintiff pleaded that each defendant engaged in the requisite predicate acts (here, wire fraud) or entered into a RICO conspiracy. Plaintiff's allegations fail because it cannot allege (i) a fraudulent scheme under the wire fraud statute, given the absence of a concerted plan among all Defendants; and (ii) a pattern of racketeering activity, given the isolated and sporadic nature of the trader-based conduct. Finally, the RICO claims are time-barred for the same reasons as the antitrust claims.

**Unjust Enrichment**. Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has alleged no direct relationship or transaction between itself and any Defendant. *See Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517-18 (2012) (dismissing unjust enrichment claim where parties "simply had no dealings with each other"). Judges Daniels and Buchwald have dismissed nearly identical unjust enrichment claims on this ground.[4]

---

[4] *See Laydon I*, 2014 WL 1280464, at *14; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479-80 (S.D.N.Y. 2014) ("*LIBOR III*"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 737 (S.D.N.Y. 2013) ("*LIBOR I*"). Nor has Plaintiff alleged facts plausibly showing how each Defendant was

3

Respectfully submitted,

*[signature]*

Marc J. Gottridge

cc: All counsel (via ECF)

---

737 (S.D.N.Y. 2013) ("*LIBOR I*"). Nor has Plaintiff alleged facts plausibly showing how each Defendant was enriched at its expense. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 532 (S.D.N.Y. 2008). Alleging that Defendants "financially benefitted from their unlawful acts," AC ¶ 269, is insufficient.