

**New York**
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

www.lowey.com

**Pennsylvania**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

September 30, 2015

**VIA ECF**
The Honorable Vernon S. Broderick
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, Case No. 15-cv-03538 (VSB)

Dear Judge Broderick:

     As counsel for Plaintiff, we respond to Defendants' September 25 request for a pre-motion conference regarding their anticipated Rule 12 motion to dismiss the Amended Class Action Complaint ("Complaint" or "¶___").

     Defendants have already admitted to the conduct alleged in the Complaint. Collectively, they have paid $7 billion dollars in fines to resolve charges related to a pervasive and global effort to rig the foreign exchange and interest rate derivatives market by abusing their control over the London Inter-Bank Offered Rate ("LIBOR"). The Complaint details how Defendants, a group of banks charged with setting Sterling LIBOR, coordinated false interest rate submissions, shared proprietary market sensitive information, made false bids and offers, engaged in sham transactions, and otherwise agreed to rig the Sterling LIBOR fixing and manipulate the prices of Sterling LIBOR-based derivatives to artificial levels for their financial benefit. ¶¶ 129-32, 144-55, 160-61. This manipulative conduct injured Plaintiff, who paid more for and/or received less Sterling than it otherwise should have, in transactions for Sterling foreign exchange forwards, a derivative priced based on Sterling LIBOR. ¶¶ 171-75.

     Unable to hide from their admissions, Defendants' main point for dismissal is that Plaintiff's transactions in Sterling foreign exchange forwards were not price based on Sterling LIBOR. As a result, Defendants argue, while holders of other financial instruments may have been harmed, Plaintiff plausibly could not have been. This argument must fail because the CFTC has already found that this very conduct harmed holders of foreign exchange forwards – the self-same instruments held by Plaintiff. A finding by the expert government agency supporting Plaintiff's claim of harm is the antithesis of an implausible pleading.

     **Personal Jurisdiction.** Defendants are subject to both general and specific jurisdiction within the United States for, among other reasons, by registering with the New York Department of Financial Services and other banking regulators, Defendants have consented to jurisdiction. In addition, the International Banking Act requires a foreign bank to identify a "home state" in the United States. In this location, a foreign bank is treated the same as a domestic bank and subject



Letter to The Honorable Vernon S. Broderick
September 30, 2015
Page 2

to general jurisdiction consistent with the "at home" rule in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).

Defendants' manipulation of Sterling LIBOR for the benefit of their U.S.-based derivatives transactions subjects them to specific jurisdiction under the "effects test" of *Calder v. Jones*, 465 U.S. 783, 787 (1984). Courts in this District have already rejected Defendants' efforts to divest this Court of jurisdiction to address LIBOR-related misconduct where trillions of dollars of financial instruments pegged to Sterling LIBOR are transacted within United States borders. *See United States v. Hayes*, 12 MJ 3229, 2015 U.S. Dist. LEXIS 35149, *5, 29-38 (S.D.N.Y. Mar. 20, 2015) (rejecting argument by UBS LIBOR-based derivatives trader that prosecuting "foreign national charged with conspiring to manipulate a foreign financial benchmark, for a foreign currency, while working for a foreign bank, in a foreign country" violates due process). Defendants were each aware that their manipulation of Sterling LIBOR would adversely impact the prices of Sterling LIBOR-based derivatives they sold directly to U.S. counterparties, "particularly in a center of international finance like New York" and should be "held to account for [their] illegal actions wherever [their] manipulation efforts had effects." *Id.* at *31-32, n.4.[1]

**CEA.** Defendants' CEA arguments are also without merit. Defendants' argument that news articles put Plaintiff on inquiry notice for Sterling LIBOR manipulation in 2008 depends upon a factual finding that disclosures involving manipulation of a different benchmark, United States Dollar LIBOR, somehow apprised Plaintiff of the alleged misconduct. As the Second Circuit has held, for inquiry notice to exist, "the triggering information must 'relate [ ] directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants.'" *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008) (collecting cases). More recently, the Second Circuit held that the district court "too hastily" dismissed LIBOR claims on statute of limitations grounds where, even though defendants pointed to news articles reporting LIBOR manipulation, "the present record is insufficient to decide this question as a matter of law." *BPP Ill., LLC v. Royal Bank of Scot. Group, PLC*, 603 F. App'x 57, 59 (2d Cir. 2015). Further, Plaintiff specifically alleges Defendants' affirmative acts of concealment (¶¶ 189-90) and the inherently self-concealing nature of the alleged price-fixing conspiracy. *See In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 00 CIV 7804 (LMM), 2004 U.S. Dist. LEXIS 3892, at *15 (S.D.N.Y. Mar. 12, 2004) (bid-rigging and price-fixing conspiracies are inherently self-concealing).

**Antitrust.** Defendants' antitrust arguments rely on the counter-factual narrative that Sterling foreign exchange forwards are not priced based on Sterling LIBOR. This factual dispute regarding the impact of Defendants' conduct on Plaintiffs' transactions must be resolved in

---

[1] Before an opportunity for discovery and an evidentiary hearing, Plaintiff need only allege a *prima facie* basis for jurisdiction, "notwithstanding any controverting presentation by the moving party." *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (citation and internal quotation omitted).



Plaintiffs' favor on a motion to dismiss. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). The Complaint details how Defendants rigged Sterling LIBOR and engaged in other anti-competitive conduct to financially benefit their own Sterling LIBOR-based derivatives positions. This conduct clearly violates the Sherman Act, which makes it illegal for Defendants to "impose[] their view of proper pricing, supplanting the market's free play." *United States v. Apple, Inc.*, 791 F.3d 290, 327-329 (2d Cir. 2015). That Defendants implemented their scheme by coopting the LIBOR fixing process does not change the analysis as "machinery employed" in fixing prices "is immaterial." *Id.* By fixing Sterling LIBOR at their desired rates, Defendants caused antitrust injury to Plaintiff by fixing the prices of the derivatives it bought and sold, causing a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 859 (7th Cir. 2012) ("the plaintiffs have alleged that the cartel established benchmark prices in markets where it was relatively free to operate, and it then applied those prices to its U.S. sales."). Under this straightforward causal chain, Plaintiff is an efficient enforcer of the antitrust laws as there is no third party standing between Defendants' conduct and Plaintiff's injury. *See, e.g., Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983).

**RICO.** Because Defendants used domestic wires to facilitate their scheme, "[t]he presumption against extraterritoriality is [] irrelevant to [] the wire fraud and the conspiracy." *See Hayes*, 2015 U.S. Dist. LEXIS 35149, at *28-29 (finding that the wire fraud "occurred in the United States" when a foreign-based defendant caused a false Yen-LIBOR rate to be published in the U.S. and used U.S. wires to execute trades with U.S. counterparties based on the false Yen-LIBOR). Even if the scheme was hatched extraterritorially, Plaintiff's claim still stands as the Second Circuit expressly left open "whether domestic conduct satisfying fewer than all of the statute's essential elements could constitute a violation of such a statute." *European Community v. RJR Nabisco, Inc*, 764 F.3d 129, 142 n. 14 (2d Cir. 2014). Plaintiffs' detailed allegations of use of United States wires in furthering the racketeering scheme amply meet the domestic use of RICO territoriality test.

**Unjust Enrichment.** Plaintiff transacted in Sterling LIBOR-based derivatives, including FX forward contracts, at prices manipulated by Defendants' conduct. New York law does not require "privity," direct dealing, or an actual, substantive relationship. *See Sperry v. Crompton Corp.*, 863 N.E. 2d 1012, 1018 (N.Y. 2007).

Respectfully submitted,

s/ Geoffrey M. Horn             s/ Christopher Lovell
**Lowey Dannenberg Cohen & Hart, P.C.    Lovell Stewart Halebian Jacobson LLP**

cc: Counsel of Record (via ECF)