# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., on behalf of itself and all others similarly situated, <br><br>                 Plaintiff, <br><br>       v. <br><br> BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, AND JOHN DOE NOS. 1-50, <br><br>               Defendants. | No. 15-cv-03538 (VSB) <br><br> ECF Case <br><br> **ORAL ARGUMENT REQUESTED** |
| FRONTPOINT EUROPEAN FUND, L.P., and RICHARD DENNIS, on behalf of themselves and all others similarly situated, <br><br>               Plaintiffs, <br><br>       v. <br><br> BARCLAYS BANK PLC, BARCLAYS CAPITAL, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, AND JOHN DOE NOS. 1-50, <br><br>              Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 2

    A.    The Foreign Defendants .......................................................................... 3

    B.    Plaintiffs' Personal Jurisdiction Allegations .......................................... 3

    C.    Judges in This District Already Have Rejected Jurisdictional Allegations Virtually Identical to Those Made by Plaintiffs. ...................... 4

ARGUMENT .......................................................................................................... 8

I.    FOREIGN DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION. .............................................................................................. 9

    A.    No Foreign Defendant Is "At Home" in New York. ............................... 9

    B.    The Foreign Defendants Did Not Consent to General Jurisdiction by Registering Branches or Offices Under State Banking Statutes. .......... 11

II.    FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION. ............................................................................................ 15

    A.    The Alleged Suit-Related Conduct Occurred Outside the U.S. ............. 17

    B.    Plaintiffs' Specific Jurisdiction Allegations Are Insufficient. .............. 19

        1.    Allegations of U.S. Derivatives Transactions Are Insufficient. ............... 19

        2.    The Foreign Defendants Did Not Consent to Jurisdiction by Entering into ISDAs with Non-Plaintiffs. ............................................. 22

        3.    Allegations of Use of U.S. Wires to Transmit LIBOR Are Insufficient. ...................................................................................... 22

        4.    Allegations of Foreseeability of Harm in the Forum Are Insufficient. ...................................................................................... 23

III.    NO FEDERAL STATUTE PROVIDES FOR PERSONAL JURISDICTION. ............... 25

    A.    Because Plaintiffs' Federal Claims Fail on the Merits, a "Nationwide Contacts" Analysis Is Unnecessary. ...................................................... 26

    B.    There Is No Jurisdiction Even Under a "Nationwide Contacts" Analysis ............ 26

    C.    A "Nationwide Contacts" Analysis Does Not Comport with Due Process. ......... 27

IV.    CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND INTERNATIONAL COMITY SUPPORT DISMISSAL ................................................ 28

V.    JURISDICTIONAL DISCOVERY IS INAPPROPRIATE ............................................ 29

CONCLUSION ....................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
　2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............................................................. *passim*

*AM Tr. v. UBS AG*,
　78 F. Supp. 3d 977 (N.D. Cal. 2015) ........................................................................ *passim*

*Asahi Metal Indus. v. Super. Ct. of Cal.*,
　480 U.S. 102 (1987) ................................................................................................28

*B&M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*,
　15 N.Y.S.3d 318 (App. Div. 2015) ...........................................................................12

*Beach v. Citigroup Alternative Invs. LLC*,
　2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ...............................................................22

*Bensmiller v. E.I. DuPont de Nemours & Co.*,
　47 F.3d 79 (2d Cir. 1995) ........................................................................................15

*Brown v. Lockheed Martin Corp.*,
　814 F.3d 619 (2d Cir. 2016) .................................................................................... *passim*

*Calder v. Jones*,
　465 U.S. 783 (1984) .............................................................................................21, 24

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
　90 F. Supp. 3d 97 (S.D.N.Y. 2015) ...........................................................................15

*Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*,
　2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014) ...........................................................16

*Cmty. Fin. Grp. v. Stanbic Bank Ltd.*,
　2015 WL 4164763 (S.D.N.Y. July 10, 2015) .............................................................22

*Courtesy Sandwich Shop, Inc., v. Port of N.Y. Auth.*,
　190 N.E.2d 402 (N.Y. 1963) ....................................................................................15

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014) ............................................................................................ *passim*

*Dale v. Banque All. S.A.*,
　2004 WL 2389894 (S.D.N.Y. Oct. 22, 2004) ............................................................22

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998)..................................................................................12

*Galope v. Deutsche Bank Nat'l Tr. Co.*,
  2014 WL 8662645 (C.D. Cal. Nov. 14, 2014)...........................................17, 24, 25

*Gliklad v. Bank Hapoalim B.M.*,
  2014 WL 3899209 (Sup. Ct. N.Y. Cty. Aug. 4, 2014) ........................................12

*Gucci Am. Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014).................................................................... *passim*

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  74 F. Supp. 3d 581 (S.D.N.Y. 2015) ...................................................................20

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ............................................ *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015)............................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015)............................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  935 F. Supp. 2d 666 (S.D.N.Y. 2015).................................................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262-NRB, Dkt. No. 1267 (S.D.N.Y. Dec. 23, 2015) ........................30

*In re Roman Catholic Diocese, Inc.*,
  745 F.3d 30 (2d Cir. 2014)...............................................................................9, 15

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)....................................................................7, 9, 16, 24

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...........................................................................................27

*J. Zeevi & Sons v. Grindlays Bank (Uganda) Ltd.*,
  37 N.Y.2d 220 (1975) ........................................................................................13

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998).................................................................................29

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  133 S. Ct. 2586 (2013).........................................................................................15

*Langenberg v. Sofair*,
  2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)...................................................................29

*Laydon v. Mizuho Bank, Ltd.*,
  2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .............................................................. *passim*

*Licci ex rel Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013)............................................................................................28

*Motorola Credit Corp. v. Uzan*,
  2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015).................................................................15

*Newtown Jackson Co. v. Barclays Bank*,
  133 N.Y.S.2d 726 (Sup. Ct. Queens Cty. 1954) ...........................................................12

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013).............................................................................................26

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010)............................................................................................8, 9

*Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*,
  2014 WL 2610608 (S.D.N.Y. June 10, 2014) ...............................................................16

*Republic of Pan. v. BCCI Holdings (Lux.) S.A.*,
  119 F.3d 935 (11th Cir. 1997) .......................................................................................28

*Rush v. Savchuk*,
  444 U.S. 320 (1980)......................................................................................................16

*SEC v. Softpoint Inc.*,
  2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) ....................................................................27

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)....................................................................................5, 9, 10

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
  No. 15-cv-00871-SHS, Dkt. No. 81 (S.D.N.Y. Sept. 22, 2015) ...................................30

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)..............................................................................................16

*United States v. Hayes*,
  99 F. Supp. 3d 409 (S.D.N.Y. 2015)..............................................................................25

*Varga v. Credit Suisse*,
  155 N.Y.S.2d 655 (Sup. Ct. N.Y. Cty. 1956) ................................................................12

iv

*Vera v. Republic of Cuba,*
   91 F. Supp. 3d 561 (S.D.N.Y. 2015) ................................................................12

*Walden v. Fiore,*
   134 S. Ct. 1115 (2014) ........................................................................ *passim*

*World Point Trading PTE., Ltd. v. Credito Italiano,*
   649 N.Y.S.2d 689 (App. Div. 1996) ..................................................................13

**Statutes and Rules**

7 U.S.C. § 25(c) ..................................................................................................26

15 U.S.C. § 22 ................................................................................................26, 27

18 U.S.C. § 1965(b) ............................................................................................26

Conn. Gen. Stat. § 36a-428g .........................................................................11, 13

Federal Rule of Civil Procedure 12(b)(2) .....................................................1, 20, 30

N.Y. Banking Law § 200 .................................................................... *passim*

N.Y. Banking Law § 200-b .........................................................................11, 13

N.Y. Bus. Corp. Law § 1301 ...............................................................................15

The Foreign Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Class Action Complaint ("CAC") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

This action concerns alleged manipulation of an interest rate benchmark, British Pound Sterling LIBOR ("Sterling LIBOR").  At all relevant times, Sterling LIBOR was administered in London by a British trade association and calculated in and published from London based upon panel bank submissions originating from London or elsewhere in Europe.  Each Foreign Defendant has its place of incorporation and principal place of business outside of the U.S.  The manipulation alleged by Plaintiffs occurred outside of the U.S.

This Court lacks personal jurisdiction over the Foreign Defendants.  *First*, under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Foreign Defendants are not subject to general jurisdiction because they are not "at home" in New York (or the U.S.).  Nor did the Foreign Defendants consent to general jurisdiction in New York (or the U.S.) by registering branches or local offices under New York or Connecticut banking statutes.  Indeed, the Second Circuit's recent decision in *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), forecloses Plaintiffs' assertion to the contrary.

*Second*, Plaintiffs fail to plead any basis for this Court to exercise specific jurisdiction over the Foreign Defendants.  The CAC alleges no "suit-related" contacts with New York (or the

---

[1] The Foreign Defendants are:  Barclays Bank plc ("Barclays"), Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank"), Deutsche Bank AG ("DB"), Lloyds Banking Group plc ("Lloyds"), The Royal Bank of Scotland plc ("RBS"), and UBS AG ("UBS").  This motion is also supported by the accompanying declarations of P. Gonsalves (Barclays); A. Sherman (Rabobank); A. Cambria and J. Randazzo (DB); K. McKendry (Lloyds); J. Lobato-Church (RBS); and J. Connors (UBS).  For the Court's convenience, the Foreign Defendants also submit Appendix A hereto, which summarizes the operative jurisdictional facts set forth in the declarations.  The Foreign Defendants and Barclays Capital Inc. ("BCI") also submit simultaneously herewith a separate memorandum of law in support of their motion to dismiss all claims against them for lack of subject matter jurisdiction and failure to state a claim (the "12(b)(1)/(6) Mem.").

U.S.) sufficient to support specific jurisdiction under the Supreme Court's holding in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).  Nor did any Foreign Defendant consent to jurisdiction by entering into ISDA Master Agreements ("ISDAs") containing New York forum selection clauses with entities other than Plaintiffs.

Three judges in this District have already dismissed claims against foreign defendants— including several Foreign Defendants here—for lack of personal jurisdiction in cases involving alleged manipulation of interest rate benchmarks (including the LIBOR benchmark in other currencies).  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) (Buchwald, J.) (USD LIBOR multidistrict litigation); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) (Buchwald, J.) (same); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.) (USD LIBOR individual action); *Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) (Yen LIBOR/Euroyen TIBOR putative class action).  The courts in those actions rejected jurisdictional allegations and theories virtually identical to those offered here by Plaintiffs.  This Court should likewise dismiss the Complaint as against the Foreign Defendants.

## FACTUAL BACKGROUND

Plaintiffs allege manipulation of Sterling LIBOR, an interest rate benchmark that was at all relevant times overseen by the British Bankers' Association ("BBA"), a London-based banking industry trade association.  CAC ¶ 6.  The Sterling LIBOR benchmark reflects the estimated cost of borrowing British Pounds Sterling in the London interbank money market. *Id.* ¶¶ 6, 115.  It was calculated based on estimates by certain banks of the interest rates that each would hypothetically expect to pay to borrow British Pound Sterling in a reasonable market size

just before 11 a.m. on any London banking day, for fifteen maturities or "tenors"—with the duration of the loans ranging between overnight and twelve months. *Id*. ¶ 116. For the relevant time period, the BBA based the Sterling LIBOR benchmark on submissions by sixteen panel banks, six of which are named as defendants in this action. *Id.* ¶¶ 40, 48, 52, 59, 72, 78, 116. Thomson Reuters, as agent for the BBA, calculated Sterling LIBOR by averaging the middle eight of sixteen submissions daily. *Id.* ¶ 117. Thomson Reuters distributed the index worldwide via Bloomberg and other electronic financial services platforms. *Id*.

## A.   The Foreign Defendants.

The Foreign Defendants, or their foreign affiliates, were among the sixteen Sterling LIBOR panel banks.[2] All are headquartered and organized abroad: Barclays, Lloyds and RBS are incorporated and maintain their principal places of business in the U.K.; DB in Germany; Rabobank in the Netherlands; and UBS in Switzerland. *See* App'x A. Each Foreign Defendant's business conducted from New York and the U.S. represents a minority of the business activities conducted by it around the world, some only a small fraction. *See id*. Throughout the putative class period (January 1, 2005 through December 31, 2010), the offices of the Foreign Defendants (or their subsidiaries) responsible for determining and transmitting to Thomson Reuters in London their respective Sterling LIBOR submissions were all located in Europe, not the U.S. *Id*.

## B.   Plaintiffs' Personal Jurisdiction Allegations.

Plaintiffs allege personal jurisdiction over the Foreign Defendants based on the following

---

[2] Lloyds itself was never a member of the BBA's Sterling LIBOR Contributor Panel. Rather, its subsidiary Lloyds Bank plc (formerly known as Lloyds TSB Bank plc), was a member throughout the alleged Class Period, and in January 2009 Lloyds acquired HBOS plc, a subsidiary of which was a member of the same Contributor Panel until February 6, 2009. *See* Lloyds CFTC Order (July 28, 2014) at 2 & n.2, http://www.cftc.gov/idc/groups/public/ @lrenforcementactions/documents/legalpleading/enflloydsorderdf072814.pdf. Lloyds is a holding company that has no presence in the U.S. *See* App'x A at 3-4; Lloyds CFTC Order at 4.

purported contacts:

i.   As to certain Foreign Defendants, registering branches or offices with the New York State Department of Financial Services ("DFS") or Connecticut Department of Banking (CAC ¶ 28);

ii.   As to all Foreign Defendants, being subject to the supervision of the Board of Governors of the Federal Reserve System (*id.*);

iii.   As to all Foreign Defendants, transacting in Sterling LIBOR-based derivatives within the U.S. and with U.S. counterparties (but, as to most Foreign Defendants, not with Plaintiffs) (*id.*);

iv.   As to UBS, transacting in Sterling LIBOR-based derivatives with Plaintiff FrontPoint European Fund, L.P. ("FrontPoint") pursuant to an ISDA containing a New York forum selection clause (*id.* ¶¶ 29-31);

v.   As to all Foreign Defendants, entering into ISDAs with entities other than Plaintiffs that contained New York forum selection clauses (*id.* ¶ 32);

vi.   As to all Foreign Defendants, using U.S. wires to transmit published Sterling LIBOR and the panel banks' submissions to investors in the U.S. through financial services platforms (*id.* ¶ 33); and

vii.   As to all Foreign Defendants, supposedly knowing that the conduct at issue would have "direct, substantial and reasonably foreseeable effects in the United States" (*id.* ¶ 35).

As discussed below, these allegations—even if assumed for purposes of this motion to be true—are insufficient to support the exercise of personal jurisdiction over the Foreign Defendants.

### C.   Judges in This District Already Have Rejected Jurisdictional Allegations Virtually Identical to Those Made by Plaintiffs.

Three judges in this District have already conducted personal jurisdiction analyses in cases involving alleged manipulation of interest rate benchmarks.  As summarized below, each judge dismissed claims against foreign defendants—including, in three cases, Foreign Defendants named in this action—for lack of personal jurisdiction.

**_LIBOR IV_**.  In *LIBOR IV*, Judge Buchwald adjudicated motions to dismiss more than a dozen complaints for lack of personal jurisdiction.  Each complaint alleged manipulation of USD LIBOR, a London-based interest rate benchmark calculated in precisely the same manner and

published by the same banking association as Sterling LIBOR except that it concerns U.S.

Dollars and not British Pounds Sterling.  Plaintiffs in those actions alleged both general and

specific jurisdiction over foreign defendants (including Foreign Defendants here) based on some

of the same purported jurisdictional contacts alleged by Plaintiffs here—namely:  (i) substantial

business activities in the challenged jurisdictions; (ii) registration with the DFS; (iii) the

foreseeability of harm in the challenged jurisdictions; (iv) marketing and publication of USD

LIBOR in the challenged jurisdictions; (v) certain defendants' contracts with plaintiffs located in

the forum; and (vi) forum selection clauses in certain defendants' contracts with plaintiffs.[3]

Judge Buchwald held that the foreign defendants were not subject to general jurisdiction

in New York, concluding "without hesitation" that the allegations of the defendants' continuous

business contacts with New York and registrations with the DFS did not "comprise[] an

'exceptional case where [the defendant's] contacts with [those states] are so substantial as to

render it 'at home' in that state.'"  *LIBOR IV*, 2015 WL 6243526, at *27 (quoting *Sonera*

*Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223 (2d Cir.), *cert. denied*, 134 S. Ct.

2888 (2014)).[4]  Further, Judge Buchwald rejected specific jurisdiction based on the alleged

foreseeability of harm in the forum, holding that "[i]t is bedrock law that merely foreseeable

effects of defendants' conduct do not support personal jurisdiction."  *Id.* at *32.  Judge Buchwald

also held that defendants' alleged marketing and publication of USD LIBOR in the forum did not

give rise to jurisdiction, ruling, among other things, that "[i]t is incontrovertible that the

importance of LIBOR was its universal significance, not its projection into any particular state,"

and that haling foreign defendants into court on this basis "would improperly create *de facto*

---

[3] Plaintiffs in those actions also asserted personal jurisdiction on the basis of certain defendants' requests for artificial submissions emanating from New York.  Judge Buchwald held that, in certain limited circumstances, such requests were a sufficient basis for personal jurisdiction.  *LIBOR IV*, 2015 WL 6243526, at *30.  Plaintiffs here allege no such requests for artificial Sterling LIBOR submissions.

[4] Unless otherwise indicated, all internal citations and quotation marks are omitted herein.

universal jurisdiction." *Id.* at *30.  Judge Buchwald further held that plaintiffs' claims did not

"arise out of or relate to defendant's LIBOR 'marketing' activities in any given forum" because

"plaintiffs who allege that they were defrauded by a panel bank without having any relationship

with that bank would have relied on LIBOR regardless of whether any particular defendant dealt

in LIBOR-based products or communicated information about LIBOR into the plaintiffs' state."

*Id*.  With respect to defendants that had transacted with a plaintiff, Judge Buchwald held that

personal jurisdiction existed as to the counterparty defendant, but only (i) in the plaintiff's home

forum over claims concerning the contractual relationship (assuming that an exclusive forum

selection clause did not provide otherwise), *id.* at *31, 35; and (ii) in a forum authorized by a

contractual forum selection clause over claims encompassed by the clause, *id.* at *34.

**_LIBOR V._**  In *LIBOR V*, Judge Buchwald adjudicated motions to dismiss five

consolidated class action complaints—each of which alleged manipulation of USD LIBOR—for

lack of personal jurisdiction.  Similar to allegations addressed in *LIBOR IV*, plaintiffs in the class

actions alleged both general and specific jurisdiction over foreign defendants (including Foreign

Defendants here) based on some of the same purported jurisdictional contacts alleged by

Plaintiffs here—namely:  (i) substantial business activities in the challenged jurisdictions; (ii) the

foreseeability of harm in the challenged jurisdictions; and (iii) marketing and publication of USD

LIBOR in the challenged jurisdictions.[5]  Consistent with *LIBOR IV*, Judge Buchwald rejected

jurisdiction over the foreign defendants on these bases.  *LIBOR V*, 2015 WL 6696407, at *8-9,

13-14, 19.  Certain plaintiffs also alleged that they had transacted with certain defendants, and

Judge Buchwald upheld personal jurisdiction with respect to these defendants only in the same

---

[5] As in *LIBOR IV*, plaintiffs in the class actions also asserted personal jurisdiction on the basis of certain defendants'
requests for artificial submissions emanating from New York.  Judge Buchwald held that, in certain limited
circumstances, these were sufficient bases for personal jurisdiction.  *LIBOR V*, 2015 WL 6696407, at *8.  Again,
Plaintiffs here allege no such requests for artificial Sterling LIBOR submissions.

limited circumstances as in *LIBOR IV*.  *Id.* at *6, 13.

 **_7 West 57th Street._**  In *7 West 57th Street*, Judge Gardephe also adjudicated a motion to dismiss for lack of personal jurisdiction in an action alleging manipulation of USD LIBOR. Although the plaintiff in that case conceded that there was no general jurisdiction over foreign defendants (including all of the Foreign Defendants here), it nevertheless asserted specific jurisdiction over each of the Foreign Defendants (and others) based on some of the same purported jurisdictional contacts alleged here—namely:  (i) continuous business activities in New York; (ii) foreseeable effects of defendants' alleged conduct in the U.S.; and (iii) alleged consent to jurisdiction by registering with the DFS.

 Judge Gardephe rejected the argument that jurisdiction could be based on the foreign defendants' general business activities in New York, explaining that "[p]laintiff must demonstrate that the Foreign [Defendants'] ***suit-related*** conduct creates minimum contacts with New York, . . . not simply that the Foreign [Defendants] have a presence here or conduct business activities here in general." *7 W. 57th St.*, 2015 WL 1514539, at *10 (emphasis in original).  Judge Gardephe also rejected jurisdiction on the basis of the foreseeable effects of defendants' alleged conduct on plaintiff in New York, finding that defendants' alleged manipulation of USD LIBOR was not "expressly aimed" at New York and observing that "'the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant.'"  *Id.* at *11 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)).  Finally, Judge Gardephe held that to the extent registration with the DFS constituted consent to jurisdiction, that consent is limited by statute, New York Banking Law § 200(3), "to claims arising out of the activities of a New York branch or agency."  *Id.*  Because the claims did not arise out of the activities of a New York

branch or agency, Judge Gardephe concluded that there was no consent to jurisdiction.  *Id*.

     **_Laydon_.**  In *Laydon*, Judge Daniels adjudicated certain defendants' motions to dismiss for lack of personal jurisdiction in an action alleging manipulation of Yen LIBOR, a London-based benchmark calculated identically to USD and Sterling LIBOR but concerning Japanese Yen, as well as Euroyen TIBOR, a Tokyo-based benchmark that is distinct from LIBOR but likewise is calculated based on submissions by panel banks.  Plaintiff alleged that personal jurisdiction could be based on some of the same (or similar) purported jurisdictional contacts alleged by Plaintiffs here—namely:  (i) the alleged transmission of electronic messages within the U.S.; and (ii) the in-forum "effects" of defendants' alleged conduct.

     Judge Daniels rejected plaintiffs' assertion of jurisdiction, holding that allegations that "[c]ommunications . . . passed through and/or were stored within the United States are insufficient to assert personal jurisdiction over a defendant" because there is no basis to conclude that defendants "took actions expressly aimed at the United States by passively connecting to the United States via internet protocol ('IP') addresses."  *Laydon*, 2015 WL 1515358, at *3.  Further, Judge Daniels held that in-forum "effects" of defendants' alleged conduct were insufficient because plaintiff failed to establish that the defendants' alleged manipulation of the relevant interest rate benchmarks was "expressly aimed" at the U.S.  *Id.* at *6.

     This Court should dismiss the CAC as against the Foreign Defendants for the same reasons articulated in *LIBOR IV*, *LIBOR V*, *7 West 57th Street* and *Laydon*.

## ARGUMENT

     "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  To survive a motion to dismiss, "a plaintiff must make a *prima facie*

showing that jurisdiction exists." *Id.* at 34-35.  The *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks*, 714 F.3d at 673.  The Court need not "draw argumentative inferences in the plaintiff's favor," or "accept as true a legal conclusion couched as a factual allegation." *Id*.

The personal jurisdiction inquiry requires a two-step analysis:  first, whether the defendant is subject to jurisdiction under the law of the forum; second, whether the exercise of jurisdiction comports with due process.  *Sonera*, 750 F.3d at 224.  Where, as here, the exercise of personal jurisdiction is incompatible with due process, the court need not assess whether jurisdiction comports with the law of the forum (*e.g.*, a forum state's long-arm statute).  *Id*.

## I.    FOREIGN DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION.

Personal jurisdiction can be general (all-purpose) or specific (conduct-linked).  *In re Terrorist Attacks*, 714 F.3d at 673-74.  "A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation—even those entirely unrelated to the defendant's contacts with the state." *Sonera*, 750 F.3d at 225 (emphasis in the original).  "Because general jurisdiction is not related to the events giving rise to the suit, . . . courts impose a more stringent minimum contacts test." *In re Roman Catholic Diocese, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014).  As set forth below and in the accompanying declarations, the Foreign Defendants are not subject to general jurisdiction.

### A.    No Foreign Defendant Is "At Home" in New York.

Plaintiff Sonterra Capital Master Fund, Ltd. ("Sonterra") has already conceded that there is no general jurisdiction here.  Dkt. No. 81 at 1 ("Plaintiff is not relying on the 'at home' test for general jurisdiction discussed in *Goodyear*, *Daimler*, and *Gucci*[.]").  That is undoubtedly the

correct conclusion, not only for Sonterra, but for all Plaintiffs.  Under *Daimler*, "a court may assert jurisdiction over a foreign corporation to hear any and all claims against [it] only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State."  134 S. Ct. at 751.  "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."  *Id.* at 760.  None of the Foreign Defendants is incorporated in or has its principal place of business in New York or anywhere else in the U.S.  *See* App'x A.  Thus, none of the paradigm bases for general jurisdiction identified in *Daimler* exists here.

Nor is this the type of "exceptional case" where the defendants' contacts with the forum are "so substantial and of such a nature as to render the corporation at home in that State."  134 S. Ct. at 761 n.19.  Each Foreign Defendant's operations in New York (and in the U.S. generally) account for only a minority of its global business operations (*see* App'x A), and "'plainly do not approach' the required level of contact" necessary to subject it to the exercise of general jurisdiction of courts in the forum.[6]  *Gucci Am. Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 761 n.19).  Allegations of engagement in a "'substantial, continuous, and systematic course of business,'" such as those Plaintiffs make here, are alone "insufficient to render [a company] at home in a forum."  *Sonera*, 750 F.3d at 226; *accord Brown*, 814 F.3d at 628-31.  Allegations of regulatory supervision by the Board of Governors of the Federal Reserve System (CAC ¶ 28) are similarly insufficient.  *See AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015) ("The fact that the foreign bank has to comply with U.S. banking regulations does not change the fact that the foreign bank remains 'at home' in its place

---

[6] Indeed, in *LIBOR IV*, Judge Buchwald ruled that Foreign Defendants Barclays and DB are not subject to general jurisdiction in New York.  2015 WL 6243526, at *26-27.  Plaintiffs in the actions before Judge Buchwald did not even attempt to argue that Foreign Defendants Lloyds or Rabobank—each of which was named as a defendant in an action filed in New York—are subject to general jurisdiction here.

of incorporation and principal place of business."), *appeal docketed*, No. 15-15343 (9th Cir. Feb. 25, 2015).

### B.   The Foreign Defendants Did Not Consent to General Jurisdiction by Registering Branches or Offices Under State Banking Statutes.

Plaintiffs allege that certain Foreign Defendants consented to general jurisdiction by registering a branch or representative office with the DFS under New York Banking Law §§ 200 and 200-b (or, in the case of RBS and UBS, registering with the Connecticut Department of Banking under Connecticut General Statutes § 36a-428g).  CAC ¶ 28.[7]  Plaintiffs are wrong.

New York Banking Law § 200(3) requires foreign banks operating in New York to "appoint[] the superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action ***arising out of a transaction with its New York agency or agencies or branch or branches***, may be served with the same force and effect as if it were a domestic corporation and had been lawfully served with process within the state[.]"  N.Y. Banking Law § 200(3) (emphasis added).  Thus, any consent to jurisdiction provided by § 200(3) is expressly limited to suits "arising out of a transaction" with the Foreign Bank's New York agency or branch, and is not a basis for the exercise of general jurisdiction.[8]  For this reason, the court in *7 West 57th Street* rejected the argument that registration under § 200(3) constitutes consent to general jurisdiction.  2015 WL 1514539, at *11 ("The plain language of [§ 200] limits any consent to personal jurisdiction by registered banks to

---

[7] Plaintiffs do not assert that Lloyds so consented, alleging only that Lloyds' subsidiary Lloyds Bank plc—not a defendant in this case—registered with the DFS.  *See* CAC ¶ 28; *accord* App'x A at 2-5.

[8] Plaintiffs' atextual reading of § 200(3) is inconsistent with the statute's historical evolution.  The 1938 version of Banking Law § 200(3) provided ***unlimited*** consent for service of process in "any action or proceeding" brought by a resident of New York.  N.Y. Banking Law § 200(3) (1938).  The scope of the consent was limited in 1951, when the Legislature amended that service of process provision to limit it to "cause[s] of action arising out of a transaction with its New York agency or agencies or branch or branches[.]"  N.Y. Banking Law § 200(3) (1951).

*specific* personal jurisdiction." (emphasis in original).[9]  State courts in New York have also

rejected Plaintiffs' reading based on the plain language of § 200(3).  *See Gliklad v. Bank*

*Hapoalim B.M.*, 2014 WL 3899209, at *1 (Sup. Ct. N.Y. Cty. Aug. 4, 2014) (examining plain

language of § 200(3) and holding that it "provid[es] for the exercise of specific jurisdiction, not

general"); *Varga v. Credit Suisse*, 155 N.Y.S.2d 655, 658 (Sup. Ct. N.Y. Cty.) (action arising out

of a European bank's conduct in Europe "[c]learly [did] not come within the scope of" § 200(3)),

*aff'd*, 2 A.D.2d 596 (1st Dep't 1956); *Newtown Jackson Co. v. Barclays Bank*, 133 N.Y.S.2d

726, 729 (Sup. Ct. Queens Cty. 1954) (because action "did not arise out of a transaction with

[its] New York branch," defendant "could not . . . have been subjected to suit in this jurisdiction

merely by service of process upon the Superintendent" under § 200(3)).[10]  Plaintiffs have not

alleged any claim arising out of a transaction with any Foreign Defendant's New York branch or

---

[9] *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*In re FX II*"), 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016) ("By the terms of the statute, any consent to jurisdiction by virtue of the New Defendants' registration with the NYDFS is not general jurisdiction over all claims, but instead is limited to claims arising out of transactions with the New Defendants' New York agencies or branches."); *LIBOR IV*, 2015 WL 6243526, at *27 (no general jurisdiction over defendants licensed by DFS).

[10] *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y.), *appeal dismissed for lack of jurisdiction*, 802 F.3d 242 (2d Cir. 2015), and *B&M Kingstone, LLC v. Mega International Commercial Bank Co.*, 15 N.Y.S.3d 318 (App. Div. 2015), *leave to appeal dismissed*, 26 N.Y.3d 995 (2015), both of which address only the enforceability of third-party information subpoenas issued to a foreign bank's New York branch in connection with judgment enforcement proceedings, rather than lawsuits against foreign banks, do not support a different conclusion.  In *Vera*, the court held that a foreign bank whose registered New York branch was served with such a subpoena "consented to the necessary regulatory oversight in return for permission to operate in New York" and was therefore subject to jurisdiction there, for purposes of a subpoena calling for production of documents held at or accessible from the bank's New York branch, but did not analyze whether the bank consented to jurisdiction over *suits* against the bank arising from non-New York activities.  91 F. Supp. 3d at 571.  In *B&M Kingstone*, the First Department acknowledged that under *Daimler* and *Gucci* a foreign bank's worldwide operations were not subject to general jurisdiction, but relied on *Vera* to hold that the bank's New York branch was required to comply with an information subpoena served upon it.  15 N.Y.S.3d at 322-24.  Neither case suggested that foreign banks would be amenable to suit in New York on any and all claims worldwide.  The distinction between amenability to service of a subpoena and amenability to suit is critical because "a person who is subjected to *liability* by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony."  *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) (emphasis in original).  To ignore that distinction in this context would run afoul of the plain wording of § 200(3) and would violate the Foreign Defendants' due process rights.  *See infra* at 14-15.  Moreover, neither *Vera* nor *B&M Kingstone* are persuasive.  Neither court analyzed the plain language of § 200(3).  Accordingly, those decisions "do[] not reflect a detailed legislative analysis," *Brown*, 814 F.3d at 637 n.19, and should not be accorded significant weight, particularly in comparison with *7 West 57th Street*, *In re FX II*, *Gliklad*, *Varga*, and *Newtown Jackson*— each of which *did* analyze the plain language of § 200(3) and concluded that registration and appointment of an agent for service under the statute did not constitute consent to general jurisdiction.

agency, and, accordingly, § 200(3) is simply inapplicable here.[11]

The Second Circuit's recent decision in *Brown v. Lockheed Martin Corp.* mandates rejection of Plaintiffs' assertion that the Foreign Defendants consented to general jurisdiction by registering and designating an agent for acceptance of service of process pursuant to New York's or Connecticut's business registration statutes. *Brown* rejected a similar argument, holding that an out-of-state corporation did not consent to general jurisdiction in Connecticut by registering to conduct business in the state and designating a local agent for service under § 33-929 of the Connecticut General Statutes. 814 F.3d at 625-26, at *4-5. The Second Circuit held that the Connecticut statute—providing that the registered agent of a foreign corporation "is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation"—confers ***specific*** jurisdiction only over causes of action "arising out of [a foreign corporation's] business in the state[.]" *Id.* at 633-34. Because the Connecticut statute did not "contain express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts," *id.* at 636, *Brown* held, there was no basis to conclude that the out-of-state corporation had consented to general jurisdiction.

With respect to RBS's and UBS's registration under Section 36a-428g of the Connecticut General Statutes, *Brown* is dispositive because that statute merely incorporates the same statutory provisions that *Brown* held do not confer general jurisdiction. *See* Conn. Gen. Stat. § 36a-428g(c) (stating that foreign banks registering under the statute must comply with the requirements of § 33-920, part of the statutory scheme applicable to foreign corporations

---

[11] Plaintiffs' reliance on a separate statutory provision, New York Banking Law § 200-b, is equally unavailing. That provision is a grant of standing or subject matter jurisdiction, *see, e.g.*, *J. Zeevi & Sons v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 225-26 (1975); *World Point Trading PTE., Ltd. v. Credito Italiano*, 649 N.Y.S.2d 689, 692-93 (App. Div. 1996), and does not provide a basis for exercising personal jurisdiction. *See In re FX II*, 2016 WL 1268267, at *2 (rejecting argument that § 200-b provides personal jurisdiction).

addressed in *Brown*).[12]   With respect to the New York business registration statute on which

Plaintiffs rely—New York Banking Law § 200—this conclusion follows *a fortiori* from *Brown*.

The Connecticut statute at issue in that case was silent as to the claims that were subject to the

appointment of a local agent for service, whereas New York Banking Law § 200(3) affirmatively

***limits*** the statute's application to "action[s] or proceeding[s] against [the foreign banking

corporation] arising out of a transaction with its New York agency or agencies or branch or

branches."  Just like the Connecticut registration statute in *Brown*, the New York business

registration statute Plaintiffs invoke here merely requires foreign banks to register with banking

regulators and designate a local agent to accept service.  Certain Foreign Defendants' registration

pursuant to these statutes therefore does not amount to consent to general jurisdiction.

        Moreover, Plaintiffs' countertextual interpretation of the New York and Connecticut

registration statutes should be rejected because, if accepted, it would run afoul of the Due

Process Clause.  As the Second Circuit in *Brown* noted in refusing to interpret the Connecticut

business registration statute at issue in a manner that "would implicate Due Process and other

constitutional concerns," 814 F.3d at 626, if registration and appointment of an agent for service

of process under a statute amounted to an implied consent to general jurisdiction, "every

corporation would be subject to general jurisdiction in every state in which it registered, and

*Daimler*'s ruling would be robbed of meaning by a back-door thief," *id.* at 640.[13]   For this very

---

[12] Moreover, RBS's and UBS's registrations in Connecticut cannot provide general jurisdiction in ***New York***.  Even if a "nationwide contacts" analysis applied (though it does not, *see infra* at Part III.C), it would be inconsistent with due process following *Daimler* to conclude that registration in Connecticut constitutes consent to general jurisdiction even in Connecticut—much less consent to jurisdiction in any other state.  *See infra* at 14-15.

[13] Although the *Brown* court explicitly found it unnecessary to decide whether a state registration statute might confer general jurisdiction where "it could be fairly construed as requiring foreign corporations to consent to general jurisdiction . . . notwithstanding *Daimler*'s strong admonition against the expansive exercise of general jurisdiction," 814 F.3d at 640, it expressed serious doubts that such an exercise of jurisdiction would be constitutional.  *Id.* at 637 ("[F]ederal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts[.]").  The *Brown* court noted in *dicta* that some courts had interpreted registration under a statute not at issue

- 14 -

reason, Judge Rakoff recently rejected the argument that registration under New York Banking

Law § 200(3) constitutes consent to general jurisdiction, noting that to hold otherwise "would

directly contradict *Gucci*[,] [which] stands for the proposition that mere operation of a branch

office in a forum—and satisfaction of any attendant licensing requirements—is not

constitutionally sufficient to establish general jurisdiction." *Motorola Credit Corp. v. Uzan*,

2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015).[14]   At a minimum, therefore, as with the

Connecticut registration statute at issue in *Brown*, Plaintiffs' reading of § 200 should be rejected

under the constitutional avoidance doctrine. *Courtesy Sandwich Shop, Inc., v. Port of N.Y. Auth.*,

190 N.E.2d 402, 405 (N.Y. 1963) ("[W]here there are two possible interpretations [of a New

York statute] the court will accept [the one that] avoids constitutional doubts."); *cf. Bensmiller v.*

*E.I.  DuPont de Nemours & Co.*, 47 F.3d 79, 84 (2d Cir. 1995) (construing Connecticut long-arm

statute narrowly because, *inter alia*, "the construction asserted by plaintiffs . . . arguably offends

the Due Process Clause of the Fourteenth Amendment").[15]

## II.  FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.

"[S]pecific jurisdiction cases are limited to those involving issues deriving from, or

connected with, the very controversy that establishes jurisdiction." *In re Roman Catholic*

*Diocese*, 745 F.3d at 38.  In cases such as this involving alleged intentional torts, specific

---

here—New York Business Corporations Law § 1301—to constitute consent to general jurisdiction. *Id.* at 640.  As noted above, the weight of authority construing § 200(3), the relevant registration provision here, holds that registration under that statute does not constitute consent to general jurisdiction.

[14] *See also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (rejecting argument that registration under a New York business registration statute constituted consent to general jurisdiction because "[a]fter *Daimler* … the mere fact of [defendant's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business.").  In addition, adopting Plaintiffs' interpretation of the New York and Connecticut registration statutes would violate the unconstitutional conditions doctrine by requiring defendants to surrender constitutional rights (*i.e.*, due process rights guaranteed under *Daimler* and *Gucci*) in order to receive government benefits (*i.e.*, the privilege of registering a bank branch in the state).  *See Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013).

[15] To the extent Plaintiffs allege that the Foreign Defendants consented to general jurisdiction in New York because they entered into ISDAs containing New York forum selection clauses with entities other than Plaintiffs (CAC ¶ 32), those allegations do not support jurisdiction for the reasons discussed *infra*, Part II.B.2.

jurisdiction requires that "the defendant's suit-related conduct must create a substantial connection with the forum State," "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and the contacts must be "with the forum State itself, not . . . with persons who reside there." *Walden*, 134 S. Ct. at 1121-22 (emphasis in original).

"Specific jurisdiction therefore exists where the claim arises out of, or relates to, the defendant's contacts with the forum." *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014). There must be a "'substantial nexus' between the [contacts] and the cause of action." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014). Second Circuit authority requires no less than a "'but for' connection between the defendant's forum-directed activities and the claim," *LIBOR IV*, 2015 WL 6243526, at *28, and requires proximate causation "[w]here the defendant has only limited contacts with the state," *id*. Out-of-forum conduct can give rise to specific jurisdiction only where the allegedly tortious actions were "expressly aimed" at the forum and the plaintiff's claims arose out of those actions. *In re Terrorist Attacks*, 714 F.3d at 674.

In a putative class action, jurisdiction must be established over the claims of the named plaintiff, as "claims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Tr.*, 78 F. Supp. 3d at 986. Moreover, personal jurisdiction must be assessed on a defendant-by-defendant basis. Generalized jurisdictional allegations against defendants as a group are insufficient. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts"). Finally, "[a] plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original).

A.      **The Alleged Suit-Related Conduct Occurred Outside the U.S.**

The claims here arise from alleged manipulation of Sterling LIBOR abroad.  During the relevant period, all currencies of LIBOR (including Sterling) were determined in and published from London by the BBA and its agent, Thomson Reuters.[16]  The declarations submitted with this motion demonstrate that all Foreign Defendants' Sterling LIBOR submissions were determined in and/or transmitted from outside the U.S.  *See* App'x A.  Plaintiffs do not plead any facts showing alleged manipulation of Sterling LIBOR from within New York (or the U.S.).[17] Courts have repeatedly dismissed suits alleging interest rate benchmark manipulation against foreign defendants—including Foreign Defendants here—where plaintiffs failed to plead suit-related contacts in the forum.  *See LIBOR IV*, 2015 WL 6243526, at *21-27; *7 W. 57th St.*, 2015 WL 1514539, at *10-11; *Laydon*, 2015 WL 1515358, at *2-6; *Galope v. Deutsche Bank Nat'l Tr. Co.*, 2014 WL 8662645, at *3-4 (C.D. Cal. Nov. 14, 2014).

Plaintiffs' allegations premised on government investigations and prosecutions fail to show suit-related contacts in New York (or the U.S.).  For example, Plaintiffs assert that regulatory settlements demonstrate that derivatives traders employed by Barclays and DB in New York sought to manipulate Sterling LIBOR.  CAC ¶¶ 21, 55.  As is clear from the settlement documents on which these allegations are apparently based, however, the New York-based conduct at issue in those settlements related to benchmarks other than Sterling LIBOR.[18]

---

[16] CAC ¶ 35 ("Sterling LIBOR rates [are] published and compiled by and on behalf of the BBA"), ¶ 278 (pleading that BBA is a "foreign entity"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 734 (S.D.N.Y. 2015) ("The defendants were each members of the BBA, an entity based in England, and participated in the affairs of the BBA by submitting quotes each day to the BBA"); BBA: About Us, https://www.bba.org.uk/about-us (last visited Apr. 8, 2016) ("BBA is the leading trade association for the UK banking sector").

[17] Lloyds, as a holding company, engaged in no relevant conduct at all, and Plaintiffs offer no reason why any activities of Lloyds' subsidiaries should be imputed to Lloyds.  *See* App'x A at 2-5.

[18] *See* Barclays CFTC Order at 3, 8 & 8 n.9 (June 27, 2012), http://www.cftc.gov/idc/groups/public/@lrenforcementactions/documents/legalpleading/enfbarclaysorder062712.pdf; Barclays DOJ Statement of Facts

Conduct related to other benchmarks cannot support personal jurisdiction in *this* case, which concerns solely Sterling LIBOR. *LIBOR IV*, 2015 WL 6243526, at *32 ("[W]e reject . . . any argument that conduct related to non-USD LIBOR can support personal jurisdiction in these cases, which seek relief based on the manipulation of USD LIBOR only.").

Plaintiffs also point to criminal proceedings against former Rabobank employees Anthony Allen and Anthony Conti, apparently in an attempt to suggest that certain of Rabobank's traders may have engaged in suit-related conduct in the U.S. (*see, e.g.*, CAC ¶¶ 140-42), but these allegations do not provide a basis for personal jurisdiction. *First*, both of these former employees were based in London and neither was alleged in the proceedings to have made Sterling LIBOR submissions or requests for Sterling LIBOR submissions from within the U.S.[19] Plaintiffs do not allege otherwise. *Second*, the Allen/Conti proceeding concerned only USD LIBOR and Yen LIBOR, and nothing from the trial indicates that either Allen or Conti colluded with any New York-based Rabobank employees in relation to ***Sterling LIBOR***.[20] No testimony from the proceeding supports such an assertion, and Plaintiffs cite none.[21] Plaintiffs' failure to allege any facts indicating that any Rabobank employee in the U.S. engaged in any conduct concerning Sterling LIBOR is unsurprising, as none of the detailed regulatory settlements—which were the result of years of investigation by multiple authorities with access

---

at ¶¶ 12, 15-16, https://www.justice.gov/iso/opa/resources/931201271017342636 5941.pdf; DB DFS Order (April 23, 2015), http://www.dfs.ny.gov/about/ea/ea150423.pdf.

[19] *See* Declaration of David R. Gelfand, dated April 11, 2016, filed herewith ("Gelfand Decl."), Ex. A at 172:1-2, 172:21-173:3 (A. Allen based in London), 1172:5-9 (A. Conti based in London).

[20] Indeed, in the ten days of trial testimony, Sterling LIBOR was mentioned only four times, not once having anything to do with any purported Sterling LIBOR manipulation in the U.S. Gelfand Decl., Ex. A at 166:15-167:1, 322:18-323:21, 408:11-410:24, 560:8-561:6.

[21] Plaintiffs allege that Christian Schluep, a former Rabobank employee based in New York, "made multiple requests for false LIBOR submissions" (CAC ¶ 140), but do not allege that he made any ***Sterling*** LIBOR requests from New York. Although Plaintiffs suggest that testimony in the Allen/Conti proceeding indicates that Schluep colluded with Rabobank employees in relation to Sterling LIBOR (*id.* ¶ 140), the ***only*** testimony pertaining to misconduct by Schluep during the proceeding related solely to ***USD LIBOR***—a benchmark not at issue in this action. *See, e.g.*, Gelfand Decl., Ex. A at 861:12-17, 1007:19-1008:11.

to millions of pages of documents and audio communications—alleges that any Rabobank

employee engaged in Sterling LIBOR-related conduct in the U.S.[22]

### B.   Plaintiffs' Specific Jurisdiction Allegations Are Insufficient.

#### 1.   *Allegations of U.S. Derivatives Transactions Are Insufficient.*

Plaintiffs' allegations that the Foreign Defendants "transacted business throughout the

United States," including transacting in Sterling LIBOR-based derivatives in New York and the

U.S. (CAC ¶ 28), cannot support personal jurisdiction in this case because those contacts are not

"suit-related," *i.e.*, they do not form the basis of Plaintiffs' claims.  *See Walden*, 134 S. Ct. at

1121 ("suit-related conduct must create a substantial connection with the forum").  Plaintiffs do

not allege that they transacted with Foreign Defendants Barclays, DB, Lloyds, Rabobank, or

RBS.  With respect to these Foreign Defendants, Plaintiffs' claims arise solely from the Foreign

Defendants' alleged manipulation of Sterling LIBOR, not from the Foreign Defendants' alleged

transactions in Sterling LIBOR-based derivatives in New York and the U.S., or anything else the

Foreign Defendants are alleged to have done here.[23]  In *7 West 57th Street*, Judge Gardephe

rejected similar allegations based on defendants being engaged ***generally*** in business in New

York, holding that "Plaintiff must demonstrate that the Foreign [Defendants'] ***suit-related***

conduct creates minimum contacts with New York, . . . not simply that the Foreign [Defendants]

---

[22] *See, e.g.*, Rabobank CFTC Order at 36-38 (Oct. 29, 2013) (no allegation of U.S.-based conduct relating to Sterling LIBOR), http://www.cftc.gov/idc/groups/public/@lrenforcementactions/documents/legalpleading/ enfrabobank102913.pdf; Rabobank DOJ Statement of Facts ¶¶ 67-68 (Oct. 29, 2013) (same), http:// www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/11/06/statement_of_facts.pdf; Rabobank FCA Final Notice § 2.5 (Oct. 29, 2013) (same); https://www.fca.org.uk/static/documents/final-notices/rabobank.pdf. Although Plaintiffs allege that certain former employees of Rabobank had counterparties located in the U.S. (none of whom are Plaintiffs here) and knew that U.S. counterparties would be adversely affected by Sterling LIBOR manipulation (CAC ¶¶ 138-39), such allegations fail to establish specific jurisdiction over Rabobank because (i) the sole question on this motion is whether there is personal jurisdiction over the claims of any named plaintiff, *AM Trust*, 78 F. Supp. 3d at 986 ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"), and no Rabobank counterparty is a plaintiff here; and (ii) as discussed below, personal jurisdiction cannot be based on the foreseeable in-forum effects of the alleged manipulation (*see infra*, Part II.B.4).

[23] Likewise, to the extent Plaintiffs allege that the Foreign Defendants are subject to specific jurisdiction because they registered with banking authorities in New York or Connecticut (CAC ¶ 28), those allegations do not support specific jurisdiction because Plaintiffs' claims do not arise out of those business activities.

have a presence here or conduct business activities here in general."  2015 WL 1514539, at *10

(emphasis in original); *see also LIBOR V*, 2015 WL 6696407, at *19 n.30 ("Plaintiffs' reliance

on the moving defendants' various . . . [U.S.]-directed contacts and activities is misplaced, as

they have failed to show that the . . . claim arises out of those defendants' [U.S.] contacts").

    *In re FX II*, an action alleging manipulation of prices in the foreign exchange ("FX")

market, does not counsel a different result.  The "core allegation" in that case is that defendants,

using non-public information shared via chat rooms and otherwise, "'executed concerted trading

strategies designed to manipulate, and which actually did manipulate' the Fix"—*i.e.*, the

benchmark most widely used to price currency trading globally.  *In re Foreign Exch. Benchmark

Rates Antitrust Litig.* ("*In re FX I*"), 74 F. Supp. 3d 581, 587 (S.D.N.Y. 2015) (citing complaint).

Plaintiffs there alleged that defendants' FX transactions themselves were used to manipulate the

Fix, and that defendants' "collusive and manipulative acts took place, in substantial part, in New

York," where defendants allegedly "continuously and systematically entered into FX

transactions."  *In re FX II*, 2016 WL 1268267, at *5.  Plaintiffs also alleged that more than a

dozen of the defendants' ***U.S.-based employees*** were terminated, suspended, or resigned as a

result of regulatory and internal investigations into FX manipulation.  *See In re FX I*, 74 F. Supp.

3d at 589 (employee terminations/suspensions); *see also* Second Consolidated Am. Class Action

Compl., *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-CV-07789-LGS, Dkt.

No. 465, ¶¶ 292, 316-17, 346-47, 350-54, 361, 363-64 (S.D.N.Y. Sept. 21, 2015).  Accordingly,

Judge Schofield denied two defendants' Rule 12(b)(2) motions,[24] holding that allegations of

---

[24] Judge Schofield granted the motion as to the third defendant on the ground that plaintiffs' jurisdictional
allegations as to this defendant concerned the defendant's indirect subsidiary, not the defendant itself.  *In re FX II*,
2016 WL 1268267, at *7.  This logic compels the dismissal of Lloyds, for the same reasons.  *See supra* at 17 n.17;
*see also Laydon*, 2015 WL 1515358, at *4-5 (dismissing holding company that did not engage in any relevant
conduct for lack of jurisdiction).

"collusive conduct within the [U.S.]" and evidence of "extensive U.S.-based FX operations" gave rise to a plausible inference that suit-related conduct "either took place in the United States, or had effects expressly aimed inside the country due to [the moving defendants'] substantial FX businesses here." *In re FX II*, 2016 WL 1268267, at *6.[25]  This case is fundamentally unlike *In re FX II*, because Plaintiffs' claims arise from the Foreign Defendants' alleged manipulation of Sterling LIBOR (outside the U.S.), not from their alleged transactions in Sterling LIBOR-based derivatives in New York and the U.S.

Plaintiffs allege that suit-related specific jurisdiction exists over UBS for all of their claims because UBS allegedly consented to jurisdiction in New York in an ISDA with FrontPoint.  CAC ¶¶ 29-31.  That is not the case.  As noted above, "[a] plaintiff asserting specific personal jurisdiction 'must establish the court's jurisdiction with respect to ***each*** claim asserted.'"  *LIBOR IV*, 2015 WL 6243526, at *27.  The ISDA, therefore, supports specific jurisdiction over UBS for, at most, FrontPoint's claims for breach of the implied covenant and unjust enrichment, which are the only claims that relate to the parties' alleged contractual relationship.  *See LIBOR IV*, 2015 WL 6243526, at *31 ("[T]he swap agreements support personal jurisdiction in the plaintiffs' home forums over claims (whether pleaded in contract, unjust enrichment, or tort) concerning the contractual relationships that they embody.").  There is, therefore, no jurisdiction over UBS for (1) FrontPoint's other claims or (2) any claims by the other Plaintiffs.  Moreover, because FrontPoint's implied covenant and unjust enrichment claims fail for the reasons set out in Defendants' 12(b)(1)/(6) Memorandum, jurisdiction does not lie against UBS.  *See LIBOR IV*, 2015 WL 6243526, at *20-21, 29 (jurisdiction may be considered

---

[25] To the extent that Judge Schofield held that these defendants' extensive FX trading in the U.S. by itself could support the conclusion that their conduct was "expressly aimed" at the U.S., the Foreign Defendants respectfully submit that this holding was in error because Judge Schofield did not identify any allegations showing that the U.S. was the "focal point" of the defendants' conduct or that defendants "knew that the brunt of [the] injury" would be felt there, as required under *Calder v. Jones*, 465 U.S. 783 (1984).  *See infra*, Part II.B.4.

in tandem with merits and no personal jurisdiction when plaintiff's underlying legal theory fails).

> **2.      *The Foreign Defendants Did Not Consent to Jurisdiction by Entering into ISDAs with Non-Plaintiffs.***

Plaintiffs also allege that personal jurisdiction exists over ***all*** Foreign Defendants based on forum selection clauses in ISDAs entered into by certain Foreign Defendants with entities ***other than Plaintiffs***.  CAC ¶ 32.  But ISDAs with non-Plaintiffs do not remotely support the proposition that any Foreign Defendant consented to jurisdiction over ***Plaintiffs'*** claims.  Contractual consent to New York jurisdiction for claims arising out of a Foreign Defendant's contract with parties ***other than Plaintiffs*** does not constitute "blanket consent . . . to be subject to personal jurisdiction in New York in any action brought against it by a person who is not a party."  *Dale v. Banque All. S.A.*, 2004 WL 2389894, at *5 (S.D.N.Y. Oct. 22, 2004); *accord, e.g.*, *In re FX II*, 2016 WL 1268267, at *3; *Cmty. Fin. Grp. v. Stanbic Bank Ltd.*, 2015 WL 4164763, at *5 (S.D.N.Y. July 10, 2015).  Moreover, even if the CAC contained facts showing that the counterparties to such contracts were members of the putative class, which it does not, "claims of unnamed class members are irrelevant to the question of specific jurisdiction."  *AM Tr.*, 78 F. Supp. 3d at 986; *accord Beach v. Citigroup Alternative Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014).

> **3.      *Allegations of Use of U.S. Wires to Transmit LIBOR Are Insufficient.***

Plaintiffs also attempt to establish personal jurisdiction through conclusory allegations that the Foreign Defendants used domestic and interstate wires to transmit and cause Thomson Reuters to transmit published Sterling LIBOR and panel bank Sterling LIBOR submissions to investors in the U.S.  CAC ¶ 33.  To be clear, Plaintiffs do not allege that any Foreign Defendant made Sterling LIBOR submissions to the BBA ***from*** the U.S. (and the declarations submitted by the Foreign Defendants establish that they did not).  Plaintiffs instead allege that, once the daily

Sterling LIBOR fix was determined, Thomson Reuters (as the BBA's agent) transmitted the fix and the underlying submissions to others using U.S. wires.  *Id.*

Even if the Court credits these conclusory allegations, Thomson Reuters's contacts are precisely the types of fortuitous third-party contacts that *Walden* cautions cannot support the exercise of personal jurisdiction.  134 S. Ct. at 1126 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").  Moreover, even if Thomson Reuters's contacts could be attributed to the Foreign Defendants (and Plaintiffs provide no basis for doing so), and even crediting Plaintiffs' allegations that the Foreign Defendants themselves transmitted published Sterling LIBOR submissions, the alleged use of U.S. wires to transmit published Sterling LIBOR and panel bank submissions to U.S. investors is the kind of "highly attenuated connection" that courts adjudicating nearly identical motions in similar actions have rejected as insufficient to support the exercise of personal jurisdiction.  *Laydon*, 2015 WL 1515358, at *3 ("Communications that passed through and/or were stored within the United States are insufficient to assert personal jurisdiction over a defendant."); *LIBOR IV*, 2015 WL 6243526, at *32 n.53 (fact that Thomson Reuters is headquartered in New York has "no bearing" on whether foreign banks are subject to personal jurisdiction in New York or elsewhere).[26]

### 4.     *Allegations of Foreseeability of Harm in the Forum Are Insufficient.*

Lastly, Plaintiffs fail to establish personal jurisdiction over the Foreign Defendants by alleging that they knew that Sterling LIBOR was disseminated in the U.S. and that their alleged manipulation of Sterling LIBOR "would, and did, have direct, substantial and reasonably foreseeable effects in the United States."  CAC ¶ 35.  As *Walden* explained, "[t]he proper

---

[26] Moreover, for the reasons set forth in Part II.B.4, such allegations do not support personal jurisdiction because the transmissions were not aimed at New York or the U.S.  *See LIBOR IV*, 2015 WL 6243526, at *30 (publication of LIBOR did not give rise to personal jurisdiction because "the importance of LIBOR was its universal significance, not its projection into any particular state").

question [for specific jurisdiction] is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 134 S. Ct. at 1125; *see also In re Terrorist Attacks*, 714 F.3d at 674 ("[T]he fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant."). For this reason, courts in actions alleging interest rate benchmark manipulation consistently have held that personal jurisdiction cannot be based on the foreseeable in-forum effects of the alleged manipulation. *7 W. 57th St.*, 2015 WL 1514539, at *11 (rejecting argument that specific jurisdiction could be based on the foreseeable in-forum effects of defendants' alleged manipulation of USD LIBOR); *LIBOR IV*, 2015 WL 6243526, at *32 (same); *Galope*, 2014 WL 8662645, at *3-4 (dismissing claims of USD LIBOR manipulation for the same reason); *Laydon*, 2015 WL 1515358, at *3 (citing *Walden* and finding allegations of Yen LIBOR manipulation insufficient).

To establish personal jurisdiction on the basis of out-of-forum conduct, a plaintiff must allege facts demonstrating that the forum was the "focal point" of defendant's conduct such that defendant "expressly aimed" its conduct at the forum and "knew that the brunt of [the] injury" would be felt there. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *In re Terrorist Attacks*, 714 F.3d at 674. Thus, Plaintiffs must "plead facts demonstrating that the [benchmark] manipulation was done with the ***express*** aim of causing an effect in New York[.]" *7 W. 57th St.*, 2015 WL 1514539, at *11 (emphasis added). Plaintiffs have not done so here. As Judge Buchwald noted in *LIBOR IV*, "[i]t is incontrovertible that the importance of LIBOR was its universal significance, not its projection into any particular state." 2015 WL 6243526, at *30. Accordingly, "it does not stand to reason[] that foreign defendants aimed their [allegedly] manipulative conduct at the United States or any particular forum state." *Id.* at *32; *see also*

*7 W. 57th St.*, 2015 WL 1514539, at *10-11 (finding no specific jurisdiction where plaintiff failed to plead facts demonstrating that the "suit-related conduct was expressly aimed at New York, in addition to having an effect [t]here"); *Galope*, 2014 WL 8662645, at *3-4 (no express aiming of USD LIBOR manipulation at California); *Laydon*, 2015 WL 1515358, at *3 (no express aiming of Yen LIBOR and Euroyen TIBOR manipulation at U.S.).[27]

Plaintiffs have previously argued that *United States v. Hayes*, 99 F. Supp. 3d 409 (S.D.N.Y. 2015), *order adopted in part*, 118 F. Supp. 3d 620 (S.D.N.Y. 2015), *appeal dismissed*, No. 15-2597 (2d Cir. Mar. 15, 2016), a decision in a criminal proceeding against a former UBS employee, supports personal jurisdiction over the Foreign Defendants. Plaintiffs are wrong. Neither the magistrate judge nor the district judge in *Hayes* addressed personal jurisdiction, and Magistrate Judge Francis explicitly stated that an analogy to the law of personal jurisdiction in civil actions was "inapposite" in prosecutions of crimes committed abroad because "criminal law and civil law serve different purposes and have different sources and constraints." 99 F. Supp. 3d at 423 n.4 (citing *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013); *United States v. Hijazi*, 845 F. Supp. 2d 874, 882 n.8 (C.D. Ill. 2011)). *Hayes* is therefore entirely off-point.[28]

## III.   NO FEDERAL STATUTE PROVIDES FOR PERSONAL JURISDICTION.

Plaintiffs attempt to allege personal jurisdiction based on the Foreign Defendants' contacts with the U.S. as a whole rather than with New York specifically (*see* CAC ¶ 28), presumably (but not explicitly) relying upon nationwide service of process provisions in the

---

[27] Contrary to Plaintiffs' allegation (CAC ¶ 139), the testimony of former Rabobank employee Allen does nothing to establish Sterling LIBOR-related conduct expressly aimed at New York (or the U.S.). The Allen testimony Plaintiffs cite does not refer to Sterling LIBOR, which is unsurprising given that the trial had nothing to do with Sterling LIBOR. *See supra* at 18 & n.20. The testimony does not support specific jurisdiction over Rabobank for the additional reason that the sole question on this motion is whether there is personal jurisdiction over ***Plaintiffs'*** claims, *AM Trust*, 78 F. Supp. 3d at 985, and since Plaintiffs do not allege that they were a counterparty of Rabobank, they cannot plausibly allege that Rabobank intended to harm them.

[28] Plaintiffs' jurisdictional allegations fail as to RBS for the further reason that Plaintiffs do not allege that RBS engaged in ***any*** specific misconduct related to Sterling LIBOR. Instead, Plaintiffs concede that the RBS settlement agreements they rely upon contain ***no*** findings that any such misconduct occurred. (CAC ¶ 24.)

federal antitrust laws, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Commodity Exchange Act ("CEA").[29]  As it recently acknowledged in *Gucci*, 768 F.3d at 142 n.21, the Second Circuit has not yet decided whether personal jurisdiction under federal statutes authorizing nationwide service of process should be analyzed based upon contacts with the U.S. as a whole—a so-called "nationwide contacts" analysis—or based on contacts with the specific forum (here, New York).  Regardless, the service provisions in these statutes do not provide a sufficient basis for asserting personal jurisdiction over the Foreign Defendants.

A.    **Because Plaintiffs' Federal Claims Fail on the Merits, a "Nationwide Contacts" Analysis Is Unnecessary.**

The Court need not determine whether to engage in a "nationwide contacts" analysis because Plaintiffs' federal claims fail on the merits.  Although courts typically first examine personal jurisdiction challenges, the Court is permitted to consider the merits of Plaintiffs' Sherman Act, RICO, and CEA claims before deciding personal jurisdiction questions.[30]  Because these claims should all be dismissed on the merits (*see* 12(b)(1)/(6) Mem. at Parts I-IV), they cannot provide a basis for personal jurisdiction over any of the Foreign Defendants and therefore the Court need not even determine whether to engage in a "nationwide contacts" analysis.

B.    **There Is No Jurisdiction Even Under a "Nationwide Contacts" Analysis.**

Even if a "nationwide contacts" test could be applied, there would be no personal jurisdiction over the Foreign Defendants.  Each Foreign Defendant's contacts with the U.S. as a whole are insufficient to establish general jurisdiction because the Foreign Defendants are all incorporated and have their principal places of business outside the U.S. and are not "at home" in

---

[29] *See* 15 U.S.C. § 22 (Clayton Act); 18 U.S.C. § 1965(b) (RICO); 7 U.S.C. § 25(c) (CEA).

[30] *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues."); *LIBOR IV*, 2015 WL 6243526, at *24 (declining to assess personal jurisdiction under federal statutes where claims under those statutes failed on merits); *7 W. 57th St.*, 2015 WL 1514539, at *7 n.2 (same).

the U.S.  *See supra* Part I.  Specific jurisdiction on a "nationwide contacts" theory also is

lacking.  Just as Plaintiffs have failed to allege suit-related contacts with New York, *see supra*

Part II, so too have they failed to allege such contacts with the U.S. as a whole.[31]

### C.     A "Nationwide Contacts" Analysis Does Not Comport with Due Process.

Even if the Court were required to reach the issue of whether to examine a defendant's

contacts with New York or the U.S. as a whole,[32] *Daimler* compels the rejection of the

nationwide contacts approach because it would not comport with due process.

Pre-*Daimler* cases applying a nationwide contacts due process test typically reasoned that

where a federal statute authorizes nationwide service:  (i) the relevant sovereign enacting the

statute is the U.S., (ii) the relevant forum is therefore the U.S. as a whole, and (iii) as a matter of

sovereignty, due process can be satisfied by contacts with the U.S. as a whole.  *See, e.g.*, *SEC v.

Softpoint Inc.*, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001).  But *Daimler* rejected such

reasoning, holding that cases analyzing due process as a matter of sovereignty are no longer good

law.  134 S. Ct. at 754 (following *International Shoe Co. v. Washington*, 326 U.S. 310 (1945),

"the relationship among the defendant, the forum, and the litigation, rather than the mutually

exclusive sovereignty of the States . . . became the central concern of the inquiry into personal

jurisdiction").  Modern due process instead focuses on fundamental fairness to defendants.  *See

Daimler*, 134 S. Ct. at 761-62 ("[E]xorbitant exercises of all-purpose jurisdiction would scarcely

permit out-of-state defendants to structure their primary conduct with some minimum assurance

---

[31] Plaintiffs do not allege that they entered into Sterling LIBOR-related transactions with any Foreign Defendants in the U.S. other than UBS.  UBS's ISDA with FrontPoint does not support personal jurisdiction over it for the reasons set forth in Part II.B.1.

[32] To the extent Plaintiffs rely on the nationwide service of process provisions in the RICO statute and Clayton Act as a basis for personal jurisdiction, Plaintiffs do not attempt to satisfy other statutory prerequisites for such jurisdiction.  Plaintiffs have not sufficiently alleged that any Defendant meets the venue provisions of RICO's § 1965(a), that the ends of justice allow for jurisdiction over Defendants based on § 1965(b), or that the Clayton Act's venue provisions are satisfied such that its jurisdictional provisions may apply at all.

as to where that conduct will and will not render them liable to suit.").  The Supreme Court echoed those fairness concerns in *Walden*.  134 S. Ct. at 1125 n.9 ("minimum contacts" inquiry exists principally to protect "liberty of the nonresident defendant").  Thus, cases relying on the sovereignty of the U.S. as the basis for a nationwide contacts due process analysis no longer pass constitutional muster.

Although the Second Circuit has not yet addressed this issue, *Gucci*, 768 F.3d at 142 n.21, the correct due process analysis, consistent with the Supreme Court's recent jurisprudence, permits the assertion of personal jurisdiction, either general or specific, only when defendants have sufficient contacts with the particular forum where suit was brought.  *See Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997) ("We discern no reason why these constitutional notions of 'fairness' and 'reasonableness' should be discarded completely when jurisdiction is asserted under a federal statute rather than a state long-arm statute.").[33]

## IV.    CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND INTERNATIONAL COMITY SUPPORT DISMISSAL.

The Court must assess whether exercising jurisdiction "would comport with fair play and substantial justice."  *Gucci*, 768 F.3d at 136.  "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief[.]"  *Licci ex rel Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170.  It is unreasonable to assert personal jurisdiction over the Foreign Defendants because they had no suit-related connections with the forum.  *See Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.");  *Daimler*, 134 S. Ct. at 763 ("Other nations

---

[33] Although the court in *LIBOR IV* declined to accept this analysis, it recognized that the question is still open under Second Circuit law.  *See* 2015 WL 6243526, at *23.

do not share the uninhibited approach to personal jurisdiction advanced by the Court of Appeals in this case.").

## V.      JURISDICTIONAL DISCOVERY IS INAPPROPRIATE.

This Court ordered Plaintiff Sonterra to apply for jurisdictional discovery within seven days of service of Foreign Defendants' motion to dismiss its Amended Complaint.  Dkt. No. 61 (Oct. 19, 2015).  Sonterra did not do so—first requesting such discovery in its opposition brief filed sixty days after service of the motion.  Sonterra's request for jurisdictional discovery was therefore untimely and it should not be permitted now to renew its request in connection with this motion.  As to the other Plaintiffs, discovery "need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts," *Langenberg v. Sofair*, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006), but instead requires a threshold showing of personal jurisdiction.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (affirming denial of jurisdictional discovery where plaintiff did not establish a *prima facie* case of jurisdiction).  As set forth above, Plaintiffs have failed to make that *prima facie* showing.  No Foreign Defendant is "at home" in New York (or the U.S.) and no amount of discovery will establish otherwise.  *Daimler*, 134 S. Ct. at 762 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home.").  Moreover, Plaintiffs already possess extensive information from a variety of public sources and government investigations and their own business dealings, but are unable to make any plausible allegations supporting specific jurisdiction.  *See Laydon*, 2015 WL 1515358, at *7 (denying jurisdictional discovery where "no basis to believe Plaintiff would find any of the information that he seeks through jurisdictional discovery" and foreign defendants' "declarations support[ed] a conclusion that Plaintiff would not find what he seeks through discovery"); *In re Aluminum Warehousing*

*Antitrust Litig.*, 90 F. Supp. 3d 219, 239-40 (S.D.N.Y. 2015) (denying jurisdictional discovery where plaintiffs had benefit of extensive information from government entities).

*Every* judge in this District who has considered personal jurisdiction issues in cases alleging interest rate benchmark manipulation has done so without jurisdictional discovery. *LIBOR IV*, 2015 WL 6243526; *LIBOR V*, 2015 WL 6696407; *7 W. 57th St.*, 2015 WL 1514539; *Laydon*, 2015 WL 1515358.  The result here should be the same here, and this Court should deny Plaintiffs' request for jurisdictional discovery just as other courts in this District have, including requests by Sonterra in substantially similar actions related to other interest rate benchmarks.[34]

## CONCLUSION

For the foregoing reasons, this action should be dismissed as against the Foreign Defendants pursuant to Rule 12(b)(2).

---

[34] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262-NRB, Dkt. No. 1267 (S.D.N.Y. Dec. 23, 2015) (denying jurisdictional discovery where defendants had already provided the geographic location of the relevant USD LIBOR submitter(s)); *Sonterra Capital Master Fund Ltd. v. UBS AG*, No. 15-cv-05844-GBD-HBP, Hr'g Tr. at 57:1-2 (S.D.N.Y. Oct. 21, 2015) (denying request by Sonterra and other plaintiffs for jurisdictional discovery as "premature . . . before there's an adjudication on personal jurisdiction"); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 15-cv-00871-SHS, Dkt. No. 81 (S.D.N.Y. Sept. 22, 2015) (denying request by Sonterra and other plaintiffs for jurisdictional discovery in Swiss Franc LIBOR case and stating that jurisdictional issues would be "decided on a pre-discovery basis"); *Laydon*, 2015 WL 1515358, at *7 (denying jurisdictional discovery in Yen LIBOR case where plaintiff failed to make a *prima facie* case of personal jurisdiction and foreign defendants' "declarations support[ed] a conclusion that Plaintiff would not find what he seeks through discovery").

Dated:  New York, New York
        April 11, 2016

Respectfully submitted,


/s/ Jonathan D. Schiller*                           /s/ David R. Gelfand*
Jonathan D. Schiller                                David R. Gelfand
Leigh M. Nathanson                                  Sean M. Murphy
BOIES, SCHILLER & FLEXNER LLP                       Mark D. Villaverde
575 Lexington Avenue                                MILBANK TWEED HADLEY
New York, NY 10022                                    & McCLOY LLP
Tel: (212) 446-2300                                 28 Liberty Street
jschiller@bsfllp.com                                New York, New York 10005
lnathanson@bsfllp.com                               Tel.: (212) 530-5000
                                                    dgelfand@milbank.com
Michael A. Brille                                   smurphy@milbank.com
Melissa Felder Zappala                              mvillaverde@milbank.com
5301 Wisconsin Avenue NW
Washington, D.C. 20015                              *Attorneys for Defendant Coöperatieve*
Tel: (202) 237-2727                                 *Rabobank U.A. (f/k/a Coöperatieve*
mbrille@bsfllp.com                                  *Centrale Raiffeisen-Boerenleenbank B.A.)*
mzappala@bsfllp.com


/s/ David H. Braff*
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC*

/s/ Moses Silverman*
Moses Silverman
Andrew C. Finch
Noam Lerer
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3355
msilverman@paulweiss.com
afinch@paulweiss.com
nlerer@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*

/s/ Fraser L. Hunter, Jr.*
Fraser L. Hunter, Jr.
David S. Lesser
Jamie Dycus
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendant The Royal Bank of Scotland plc*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Kevin T. Baumann
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
kevin.baumann@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendant Lloyds Banking Group plc*

/s/ Peter Sullivan*
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California 94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG*

*Electronic signatures used with permission.