## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, AND JOHN DOE NOS. 1-50,<br><br>     Defendants. | No. 15-cv-03538 (VSB)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |
| FRONTPOINT EUROPEAN FUND, L.P., and RICHARD DENNIS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BARCLAYS BANK PLC, BARCLAYS CAPITAL, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, AND JOHN DOE NOS. 1-50,<br><br>     Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## <u>TABLE OF CONTENTS</u>

**Page**

I.     FOREIGN DEFENDANTS HAVE NOT CONSENTED TO JURISDICTION. .............. 1

II.    FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION. ......................................................................................... 4

    A.    The Alleged Suit-Related Conduct Occurred Outside the U.S. ............................ 4

    B.    Allegations of In-Forum "Effects" Are Insufficient. ............................................ 9

    C.    Plaintiffs' Conspiracy Theory Fails. ................................................................... 11

III.   FEDERAL STATUTES DO NOT GIVE RISE TO JURISDICTION. .......................... 14

IV.   JURISDICTIONAL DISCOVERY IS INAPPROPRIATE ............................................ 15

CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
    782 F. Supp. 215 (S.D.N.Y. 1992)....................................................................12

*AM Trust v. UBS AG*,
    78 F. Supp. 3d 977 (N.D. Cal. 2015) ...............................................................6, 9

*B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*,
    15 N.Y.S.3d 318 (N.Y. App. Div. 2015) ..............................................................2

*Bank of Am. v. Apollo Enter. Sols., LLC*,
    2010 WL 4323273 (S.D.N.Y. Nov. 1, 2010)......................................................15

*Beach v. Citigroup Alternative Investments LLC*,
    2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ......................................................6, 9

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016).............................................................................2, 3

*Calder v. Jones*,
    465 U.S. 783 (1984)..........................................................................................5, 9

*Cebulske v. Johnson & Johnson*,
    2015 WL 1403148 (S.D. Ill. Mar. 25, 2015) .....................................................12

*Cmty. Fin. Grp. v. Stanbic Bank Ltd.*,
    2015 WL 4164763 (S.D.N.Y. July 10, 2015) ......................................................4

*Daventree Ltd. v. Rep. of Azerbaijan*,
    349 F. Supp. 2d 736 (S.D.N.Y. 2004).................................................................14

*Davis v. A. & J. Elec.*,
    792 F.2d 74 (7th Cir. 1986) ...............................................................................11

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................15

*First Capital Asset Mgmt., Inc. v. Bricklellbush, Inc.*,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002).................................................................14

*Gelboim v. Bank of America Corp.*,
    --- F.3d ---, 2016 WL 2956968 (2d Cir. May 23, 2016)..............................1, 7, 13

*Genuine Parts Co. v. Cepec*,
2016 WL 1569077 (Del. Apr. 18, 2016)..................................................................3

*Greene v. Mizuho Bank, Ltd.*,
2016 WL 946921 (N.D. Ill. Mar. 14, 2016).............................................................6

*Grove Press, Inc. v. Angleton*,
649 F.2d 121 (2d Cir. 1981)...................................................................................12

*Gucci Am. Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)...................................................................................15

*Gucci Am. v. Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015)........................................................................5

*Heinfling v. Colapinto*,
946 F. Supp. 260 (S.D.N.Y. 1996)...................................................................12, 13

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015)...........................................................10, 11, 12

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .................................................1, 6, 15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ...........................................................4, 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016)....................................................2, 6, 7, 15

*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003)...........................................................................10, 11

*In re Satyam Comput. Serv. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013).......................................................12, 13, 14

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013)..................................................................................11

*Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*,
98 N.Y.2d 238 (N.Y. 2002) ...................................................................................4

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)..............................................................................................11

*King v. Am. Family Mut. Ins. Co.*,
632 F.3d 570 (9th Cir. 2011) ................................................................................3

iii

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972)............................................................14

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)...............................................................9

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)..................................................................9

*Lotes Co. v. Hon Hai Precision Industry Co.*,
    753 F.3d 395 (2d Cir. 2014)..............................................................14

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002)..................................................8

*Pabon v. Barclays Bank*,
    2016 WL 2770541 (S.D.N.Y. May 12, 2016) .....................................13

*Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*,
    243 U.S. 93 (1917)...............................................................................3

*Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*,
    257 U.S. 213 (1921)..............................................................................3

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)................................................................5

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010)..............................................................13

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)..................................................................5

*Tymoshenko v. Firtash*,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ...............................11, 12

*United States v. Allen*,
    2016 WL 615705 (S.D.N.Y. Feb. 16, 2016).......................................11

*United States v. Busic*,
    592 F.2d 13 (2d Cir. 1978)................................................................14

*United States v. Hayes*,
    99 F. Supp. 3d 409 (S.D.N.Y. 2015)............................................11, 14

*Varga v. Credit-Suisse*,
    157 N.Y.S.2d 391 (App. Div. 1956)....................................................2

*Vera v. Republic of Cuba,*
  91 F. Supp. 3d 561 (S.D.N.Y. 2015)..................................................................2

*Wilder v. News Corp.,*
  2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014) ....................................................12

**Statutes**

N.Y. Banking Law § 200(3) ...........................................................................1, 2, 3

N.Y. Banking Law § 200-b.............................................................................1, 2, 3

N.Y. Bus. Corp. Law § 304 ....................................................................................2

N.Y. Bus. Corp. Law § 1301 ..................................................................................3

N.Y. Bus. Corp. Law § 1314 ...............................................................................2, 3

**Rules**

Fed. R. Civ. P. 4(k)(2).........................................................................................15

Fed. R. Civ. P. 12(b)(2).....................................................................................1, 15

Plaintiffs concede that Foreign Defendants[1] are not "at home" in New York (or elsewhere in the U.S.) so as to authorize general jurisdiction over them.  *See* Opp. 26 n.24.  Plaintiffs instead argue that Foreign Defendants consented to general jurisdiction or are subject to specific jurisdiction.  But every judge in this District to address claims against foreign defendants—including several Foreign Defendants here—for alleged manipulation of interest rate benchmarks has rejected the arguments Plaintiffs advance, and the result here should be the same.  The recent decision in *Gelboim v. Bank of America Corp.*, --- F.3d ---, 2016 WL 2956968 (2d Cir. May 23, 2016), did not address personal jurisdiction and thus affords no basis for jurisdiction here.  Plaintiffs' claims against Foreign Defendants should be dismissed pursuant to Rule 12(b)(2).

## I.   FOREIGN DEFENDANTS HAVE NOT CONSENTED TO JURISDICTION.

Plaintiffs argue that certain Foreign Defendants consented to general jurisdiction by registering a branch with the DFS and appointing the Superintendent of the DFS as their agent for service of process.  *See* Opp. 22-28.  In advancing this argument, Plaintiffs largely abandon their earlier reliance on Banking Law § 200(3) and now argue that the Court "should instead focus on" § 200-b.  Opp. 23.  But neither provision provides a basis for jurisdiction here.

Section 200-b provides only that "an action or special proceeding against a foreign banking corporation may be maintained" by a non-resident "where the defendant is a foreign banking corporation doing business in this state."  N.Y. Banking Law § 200-b(2)(e).  As the court in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*FX II*") held, § 200-b "confer[s] subject matter jurisdiction and not personal jurisdiction" and "contains nothing from which consent to jurisdiction might be implied."  2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016).  Plaintiffs do not even attempt to distinguish the cases cited by Foreign Defendants, all of

---

[1] Capitalized terms and citations to Judge Buchwald's decisions ("*LIBOR I-V*") herein have the same meaning as in Foreign Defendants' opening brief (ECF No. 103).  Citations to "Opp." refer to Plaintiffs' opposition to this motion (ECF No. 114).  Unless otherwise specified, internal citations and quotation marks are omitted from case citations.

which hold that § 200-b is not a personal jurisdiction provision, *see* PJ Br. 13 n.11, and they cite

no contrary authority.[2]

Nor does § 200(3) provide a basis for jurisdiction.  As Judge Buchwald recently held, the

argument that § 200(3) provides a basis for general jurisdiction "flies in the face of the plain

language of the statute."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"),

2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016).  Judges in this District have consistently

held that the plain language of § 200(3) limits its scope to actions arising out of a transaction

with a foreign bank's New York agency or branch, *see* PJ Br. 11-12,[3] and Plaintiffs do not

distinguish those rulings.[4]  Instead, they respond that *Varga v. Credit-Suisse*, 157 N.Y.S.2d 391

(App. Div. 1956), supports their construction of § 200(3), but the *Varga* appellate court, like the

trial court, *see* PJ Br. 12, actually recognized that § 200(3), on its own, would not support

jurisdiction "where the cause of action arose in a foreign jurisdiction."  157 N.Y.S.2d at 393.

---

[2] Nothing in the legislative history cited by Plaintiffs remotely indicates that § 200-b was intended to confer personal jurisdiction.  *See* Opp. 23 (citing Lefkowitz Decl., Ex. 35).  Grasping at straws, Plaintiffs assert that courts have interpreted registration under a completely different statute, New York Business Corporation Law § 1314, as conferring general personal jurisdiction and argue that, because New York Banking Law § 200-b was purportedly enacted as the "Banking Law analogue" to § 1314, it must be interpreted similarly.  *See* Opp. 23-24.  However, the cases cited by Plaintiffs (*see* Opp. 23-24) actually held that registration under a **different** Business Corporation Law provision (§ 304), not § 1314, provided consent to personal jurisdiction.  That statute requires designation of the Secretary of State as agent for service of process; by contrast, § 200-b contains no comparable requirement.

[3] *Accord LIBOR VI*, 2016 WL 1558504, at *7.  Plaintiffs assert that even if jurisdiction under § 200(3) is limited to claims arising out of a transaction with a foreign bank's New York branch, such jurisdiction is established here because Foreign Defendants transacted in Sterling LIBOR-based derivatives "with Plaintiffs and U.S. counterparties" through their New York branches.  Opp. 26 n.24.  Because Plaintiffs' claims do not arise out of transactions with Foreign Defendants' New York branches, Plaintiffs' assertion is irrelevant.  *See infra* Part II.A.

[4] Plaintiffs' reliance on *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), and *B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*, 15 N.Y.S.3d 318 (N.Y. App. Div. 2015), *see* Opp. 25, is equally unavailing.  As recognized in *LIBOR VI*, those cases held that "foreign banks operating local branches in New York . . . [have] obligations to participate as third parties in lawsuits which involve assets under their management, not that such banks have consented to general jurisdiction in New York."  2016 WL 1558504, at *7.  Those decisions therefore have no relevance here.  *See also* PJ Br. 12 n.10.  Moreover, as noted in *LIBOR VI*, to the extent those decisions held that registration under § 200(3) amounts to consent to general jurisdiction, they "would 'risk unravelling the jurisdictional structure envisioned [by the Supreme Court] based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely.'"  *Id.* at *7 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639 (2d Cir. 2016)).  The other decisions Plaintiffs cite (*see* Opp. 26) address registration and appointment of an agent for service under different New York state statutes that Plaintiffs do not invoke here—rightly so, as Foreign Defendants are not registered under them—and which are, therefore, irrelevant.

The appellate court simply held that where a foreign bank registered and appointed an agent for service under **both** § 200(3) and the former Civil Practice Act, § 200(3) did not "confin[e] jurisdiction under the other sections of the Civil Practice Act" and, therefore, § 200(3) "*merely provides an additional and not exclusive method of service*."  *Id.* at 393-94 (emphasis added).

Plaintiffs' interpretations of §§ 200-b and 200(3) should also be rejected because they run afoul of the Due Process Clause.  *See* PJ Br. 14-15.  Indeed, Plaintiffs' own cases, *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), and *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921) (Opp. 27-28), "stand for the proposition that federal courts must, **subject to federal constitutional restraints**, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process."  *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576 (9th Cir. 2011) (emphasis added).  Plaintiffs' reliance upon dicta in *Brown*, 814 F.3d at 640, addressing registration under New York Business Corporations Law §§ 1301 and 1314 (Opp. 28), is misplaced, as no Foreign Defendant is registered under these provisions, which do not contain the limiting language of § 200(3).  *See* PJ Br. 14 n.13.  Moreover, Plaintiffs ignore the constitutional avoidance doctrine, *see* PJ Br. 15, which compels rejection of their countertextual reading of §§ 200(3) and 200-b.  *See Genuine Parts Co. v. Cepec*, 2016 WL 1569077, at *11 & n.82 (Del. Apr. 18, 2016).[5]

Plaintiffs also contend that UBS "consented to jurisdiction in ISDA Master Agreements with FrontPoint."  Opp. 9.  But at most, UBS consented to jurisdiction **only** for "dispute[s]

---

[5] Plaintiffs also fail to respond to Foreign Defendants' showing that construing registration under a state statute as consent to general jurisdiction violates the unconstitutional conditions doctrine.  *See* PJ Br. 15 n.14.  "A foreign corporation's consent to personal jurisdiction cannot be coerced or conditioned on the corporation waiving its right not to be subject to all-purpose jurisdiction in all but a few places where it has sufficient contacts." *Genuine Parts*, 2016 WL 1569077, at *17.  In addition, Plaintiffs silently concede, as *Brown* dictates, that registration with the Connecticut Department of Banking does not confer jurisdiction over RBS or UBS.  *See* CAC ¶ 28.

related to an ISDA Master Agreement," *id.—i.e.*, FrontPoint's quasi-contractual claims for breach of the implied covenant and unjust enrichment. Claims against UBS by other Plaintiffs, such as Sonterra or Dennis, or other claims by FrontPoint (*e.g.*, antitrust), do not qualify because jurisdiction must be established "with respect to each claim asserted." PJ Br. 16; *see also Cmty. Fin. Grp. v. Stanbic Bank Ltd.*, 2015 WL 4164763, at *5 (S.D.N.Y. July 10, 2015) (consent in contract does not extend to claims by non-party). Most importantly, however, FrontPoint's quasi-contractual claims against UBS fail on the merits,[6] and any purported consent by UBS to jurisdiction for those claims is, therefore, immaterial. *See LIBOR IV*, 2015 WL 6243526, at *20-21 (S.D.N.Y. Oct. 20, 2015) (courts may consider jurisdiction concurrently with merits and find lack of personal jurisdiction where plaintiffs' underlying legal theory fails).[7]

## II.   FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.

### A.   The Alleged Suit-Related Conduct Occurred Outside the U.S.

Plaintiffs' claims arise from the alleged manipulation of Sterling LIBOR abroad. *See* PJ

---

[6] *See* 12(b)(1)/(6) Mem. (ECF No. 100) at 54-55; Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Consolidated Am. Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim, filed contemporaneously herewith ("12(b)(1)/(6) Reply"), at Parts VI-VII. Plaintiffs' reliance on the 2002 decision *Indosuez International Finance B.V. v. National Reserve Bank*, 98 N.Y.2d 238 (N.Y. 2002), to establish jurisdiction under the "purposeful availment" standard (*see* Opp. 9 n.6) is misplaced. Under *Walden v. Fiore*, "suit-related conduct must create a **substantial connection** with the forum." 134 S. Ct. 1115, 1121 (2014) (emphasis added). There is no such substantial connection between UBS and New York, as explained *infra*. The alleged ISDA agreement is irrelevant as it relates only to quasi-contractual claims that are not viable.

[7] Sonterra previously argued that Foreign Defendants are subject to personal jurisdiction in this action based on forum selection clauses in selected agreements entered into by certain Foreign Defendants with **entities other than Plaintiffs**. *See* ECF No. 81 at 2-3. But Plaintiffs appear to have abandoned that argument—not surprisingly, as the argument has been flatly and repeatedly rejected by the courts. *See* PJ Br. 22. To the extent Plaintiffs continue to advance the argument (*see* Opp. 9 n.6), it fails: Plaintiffs neither distinguish any of the cases cited by Foreign Defendants, nor cite a single case holding that contractual consent to jurisdiction in an agreement with **non-plaintiffs** constitutes consent to specific jurisdiction over a **plaintiff's** claims. Moreover, none of the agreements attached to Plaintiffs' opposition even refers to Sterling LIBOR. *See* Lefkowitz Decl., Exs. 5-19. Nor do Plaintiffs allege that any Foreign Defendant entered into any Sterling LIBOR-based transactions with anyone under these agreements, and the only trade confirmations attached to the opposition relate to trades tied to **USD** LIBOR. *See id.*, Ex. 5 at 3; Ex. 7 at 13-14; Ex. 11 at 49-50; Ex. 14 at 4. In addition, the only Rabobank agreement cited by Plaintiffs was, as they concede, allegedly executed after the Class Period. *Id.* ¶ 10(o) & Ex. 19 at 1. To the extent Plaintiffs argue that the cited agreements and fund transfers through U.S. accounts support specific jurisdiction, that argument fails because those contacts are not suit-related. *See infra* at 5, 8-9.

Br. 17-19.  Plaintiffs respond that there is nevertheless specific jurisdiction here because certain Foreign Defendants' alleged business activities in New York (or the U.S.)[8]—*e.g.*, establishment of branches, transactions in Sterling LIBOR-based derivatives with non-plaintiffs, execution of ISDAs or other agreements with non-plaintiffs containing New York forum selection clauses, or employment of traders of Sterling LIBOR-based derivatives—give rise to personal jurisdiction. *See* Opp. 1-9, 11-13.  These contacts, however, cannot support specific jurisdiction in this action, as Plaintiffs' claims do not arise out of them.  *See* PJ Br. 19-20.

In an effort to recast these alleged in-forum contacts as suit-related, Plaintiffs misleadingly cite cases interpreting New York's long-arm statute and, on that basis, argue that a causal relationship between their claims and Foreign Defendants' forum contacts is unnecessary, provided their claims are "not completely unmoored" from those contacts.  *See* Opp. 9-10.  As explained in Foreign Defendants' moving brief, however, to satisfy constitutional due process, the Second Circuit requires a "but for" connection between the defendant's forum-directed activities and the claim, and proximate cause where, as here, the defendant had only limited contacts with the state.  *See* PJ Br. 16.  Plaintiffs allege ***no*** causal connection between the alleged misconduct forming the basis of their claims and the forum (whether New York or the U.S.).[9]

In a similar effort to conjure up supposedly suit-related contacts, Plaintiffs contend that *Walden* and *Calder v. Jones*, 465 U.S. 783 (1984), support their assertion that Foreign

---

[8] A nationwide contacts analysis is not appropriate.  *See infra* Part III.

[9] *Gucci America v. Weixing Li*, on which Plaintiffs rely (Opp. 10), expressly applies "but for" causation when addressing due process.  *See* 135 F. Supp. 3d 87, 98-99 (S.D.N.Y. 2015), *appeal dismissed*, No. 15-3850 (2d Cir. Feb. 16, 2016).  The portion of *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004), cited by Plaintiffs (Opp. 12) addresses New York's long-arm statute, not due process.  And contrary to Plaintiffs' suggestion (Opp. 19 n.13), Foreign Defendants have never conceded that personal jurisdiction is proper under the long-arm statute.  Rather, they have not addressed it because when jurisdiction is incompatible with due process, the Court need not assess jurisdiction under the statute.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014).  Plaintiffs conclusorily state that they "have alleged facts that comply with the provisions" of the long-arm statute (Opp. 19 n.13), but they present no argument as to how they have satisfied the requirements of any provision of the statute.

Defendants' alleged transactions in Sterling LIBOR-based derivatives with non-plaintiffs give rise to specific jurisdiction. *See* Opp. 14 n.9. But neither case involved a putative class action plaintiff purporting to rely on defendants' alleged contacts with unnamed putative class members. Here, Plaintiffs ask this Court to ignore black-letter law: "[c]ontacts with unnamed class members may not be used as a jurisdictional basis." *Beach v. Citigroup Alternative Investments LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014); *see also, e.g.*, *Greene v. Mizuho Bank, Ltd.*, 2016 WL 946921, at *8 (N.D. Ill. Mar. 14, 2016) ("[s]pecific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members"). Plaintiffs' sole response is a feeble attempt to distinguish just one of the cases standing for this proposition. *See* Opp. at 14 n.9 (citing *AM Trust v. UBS AG*, 78 F. Supp. 3d 977 (N.D. Cal. 2015)). The *AM Trust* court held that "claims of unnamed class members are irrelevant to the question of specific jurisdiction." 78 F. Supp. 3d at 986. Plaintiffs assert that in *AM Trust*, "the only [alleged] connection between the defendant and the forum was that some members of the [class of plaintiffs] . . . reside[d] in California." Opp. 14 n.9. But just like here, the plaintiffs there contended that specific jurisdiction existed based on the foreign defendant's non-suit related contacts with non-plaintiffs in the forum—an argument that the *AM Trust* court rejected. *See* 78 F. Supp. 3d at 983.

Plaintiffs also rely on *FX II* to argue that Foreign Defendants' trading of Sterling LIBOR-based derivatives in the U.S. with non-plaintiff U.S. counterparties supports personal jurisdiction (Opp. 12), but *FX II* lends Plaintiffs no support because, as the *LIBOR VI* court observed, the benchmark rates at issue in *FX II* were calculated based on actual market transactions and "defendants[] accomplished their purported scheme ***by entering into FX transactions***" that allegedly impacted those rates. *LIBOR VI*, 2016 WL 1558504, at *7 (emphasis in original); *see*

PJ Br. at 20-21.  "Here, by contrast, defendants [did] not engage in any market transactions at all . . . to affect the LIBOR fix," *LIBOR VI*, 2016 WL 1558504, at *7, which is based exclusively on submissions reflecting hypothetical borrowing rates in the Sterling market.  CAC ¶ 119.[10]

Plaintiffs rely on *Gelboim* (which did not even address personal jurisdiction) to argue that "any act that facilitates the price fixing scheme is itself a suit-related contact," Opp. 10, and that, therefore, conduct other than alleged manipulation of Sterling LIBOR abroad is supposedly jurisdictionally relevant here.  The only act Plaintiffs identify, however, that allegedly "injected [the] price artificiality" of which they complain was Foreign Defendants allegedly "manipulating the Sterling LIBOR fix" (Opp. 10)—conduct that Plaintiffs do not allege occurred anywhere in the U.S.  *See* PJ Br. 18-19.  Moreover, Plaintiffs' suggestion that *Gelboim* supports their argument that alleged Sterling LIBOR manipulation "caused an injury in the U.S. markets" (Opp. 10) is just a repetition of their legally insufficient attempt to premise personal jurisdiction on the "effects" in the U.S. of alleged Sterling LIBOR manipulation abroad.  *See infra* Part II.B.

Plaintiffs' other efforts to identify suit-related forum contacts similarly fail.  Plaintiffs assert that certain Foreign Defendants manipulated Sterling LIBOR from within New York (or the U.S.) (Opp. 13-14), but, as detailed in Foreign Defendants' moving brief, no Foreign Defendant's regulatory settlements contain any allegation that a Foreign Defendant engaged in Sterling LIBOR-related manipulation anywhere in the U.S.  *See* PJ Br. 17-19.[11]  The Court

---

[10] Plaintiffs point to their allegations that Foreign Defendants DB and Lloyds "pushed cash" and "spoofed," thereby engaging in "non-rate setting collusion and anti-competitive conduct" that constitutes suit-related contacts.  Opp. 12 n.7.  Plaintiffs, however, fail to allege that such conduct occurred in New York (or anywhere else in the U.S.) or had any effect on a Sterling LIBOR-based instrument held by Plaintiffs.  Indeed, the settlements cited in relation to DB concern Euros, not Sterling LIBOR.  *See* 12(b)(1)/(6) Mem. 8 n.9.  Moreover, the CAC contains no allegation that Defendants Barclays, BCI, Rabobank, RBS, or UBS engaged in any such conduct.

[11] *See* DB DOJ ¶ 18 (referring to New York-based conduct concerning only USD LIBOR); *id.* ¶¶ 96-97 (no allegation of U.S.-based conduct relating to Sterling LIBOR); DB CFTC at 30-32 (same); DB FCA §§ 2.2, 4.24 (same); DB DFS ¶ 16 (same); Rabobank CFTC at 36-38 (no allegation of U.S.-based conduct relating to Sterling LIBOR); Rabobank DOJ ¶¶ 67-68 (same); Rabobank FCA § 2.5 (same); Barclays DOJ ¶¶ 12-13, 15-16 (referring to New York-based conduct concerning USD LIBOR only); Barclays CFTC at 8 n.9 (only trader request referenced

therefore should not credit Plaintiffs' conclusory assertions to the contrary.  *See, e.g.*,

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's

allegations are contradicted by . . . a document [referenced in the pleadings], those allegations

are insufficient to defeat a motion to dismiss.").[12]  That some of the settlements identify conduct

relating to benchmarks **other than Sterling LIBOR** cannot support personal jurisdiction in **this**

case, which concerns solely Sterling LIBOR.  *See* PJ Br. 17-18 (citing *LIBOR IV*).[13]

      Plaintiffs also assert that personal jurisdiction exists because Foreign Defendants

purportedly routed funds through U.S.-based accounts "as they manipulated trades with in-forum

counterparties."  Opp. 9 n.6.  Even if this unsubstantiated allegation were pled in the CAC—and

it is not—it would not support jurisdiction because Plaintiffs do not allege that any such transfer

was in connection with a transaction **with Plaintiffs** in Sterling LIBOR-based derivatives.  *See*

*supra* at 5.  Allegations about payments related to transactions with non-plaintiffs that may have

---

concerning Sterling LIBOR originated from Singapore); UBS CFTC at 48 (conduct in Connecticut related only to USD LIBOR).  Appendix A hereto contains full references to the publicly available regulatory settlements incorporated by reference into the CAC.

[12] Plaintiffs inaccurately assert that a declaration in a separate action by Barclays' declarant here, Patrick Gonsalves, was contradicted by CFTC findings.  *See* Opp. 20 n.14.  Setting aside the complete irrelevance of a declaration in an action concerning *USD* LIBOR to this action, Plaintiffs' misleading statement ignores both the clear language of the declaration—which explains where Barclays' USD LIBOR submissions were "determined" (*see* Am. Decl. of P. Gonsalves, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, ECF No. 1005-1 ¶ 16 (S.D.N.Y. Feb. 2, 2015))—and that of the CFTC order—which concerns only where certain requests by traders for favorable submissions were sent (*see* Barclays CFTC Order at 3).  Indeed, the CFTC Order itself makes clear that the traders requesting favorable submissions were *not* the Barclays employees "responsible for determining and submitting Barclays' daily LIBORs."  *Id.*  In any event, while certain requests from Barclays' traders concerning USD LIBOR were transmitted from New York, Barclays' regulatory settlements discuss only a single request from any Barclays trader concerning Sterling LIBOR, and that request originated from Singapore.  *Id.* at 8 n.9.

[13] Likewise, the transcript of former DB trader Michael Curtler's plea before this Court (*see* Opp. 6) contains no reference to Sterling LIBOR—understandably so, as that case involved USD LIBOR conduct.  *See* Lefkowitz Decl., Ex. 29.  Similarly, the indictment of two former DB employees cited by Plaintiffs (*see* Opp. 6-7) contains no reference to Sterling LIBOR.  *See* Lefkowitz Decl. Ex. 38. As Plaintiffs themselves concede (Opp. 7), the indictment relates to USD LIBOR, not Sterling LIBOR.  Plaintiffs also argue that this Court should infer that DB's New York-based employees engaged in manipulation of Sterling LIBOR on the basis of an email from a DB employee stating: "Make sure our libors are on the low side for all ccys."  Opp. 16.  Aside from the fact that this communication has no relation to New York, the DFS found, in its settlement with DB, that "there is no evidence known to the Department that would support a finding that this instruction was followed."  DB DFS ¶ 57 n.1.

been routed through New York are irrelevant.  *See Beach*, 2014 WL 904650, at *6.[14]

### B.   Allegations of In-Forum "Effects" Are Insufficient.

Plaintiffs' argument based on supposedly foreseeable U.S. effects of alleged

manipulation of Sterling LIBOR abroad is equally misconceived.  *See* PJ Br. 23-25.  The inquiry

is not whether effects in the forum were foreseeable, but whether the forum was the "focal point"

of Foreign Defendants' alleged conduct such that they "expressly aimed" their conduct at the

forum and "knew that the brunt of [the] injury" would be felt there.  *See* PJ Br. 24 (citing *Calder*,

465 U.S. at 789-90).  Plaintiffs fail to allege facts plausibly showing that New York (or the U.S.)

was the "focal point" of Foreign Defendants' alleged Sterling LIBOR-related conduct or that

they knew the "brunt" of any injury would be felt here.[15]  Nor could they, because even if

Foreign Defendants were aware of any potential effects in the U.S., Sterling LIBOR-based

---

[14] Plaintiffs erroneously argue that *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012), stands for the proposition that the transfer of funds through New York bank accounts, in itself, is sufficient to subject a foreign defendant to specific jurisdiction.  *See* Opp. 9 n.6.  Not so.  In *Licci*, the New York Court of Appeals, answering questions certified by the Second Circuit, opined that under New York's long-arm statute, a foreign defendant's use of a New York correspondent bank account to execute wire transfers supported the exercise of specific jurisdiction over claims alleging that the transfers were purposefully used to fund terrorist attacks harming the plaintiffs.  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168-69 (2d Cir. 2013).  The Second Circuit then held that this exercise of jurisdiction comported with due process because the transfers were used "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress."  *Id.* at 171.  As discussed above, Plaintiffs here do not allege that their claims arise out of Foreign Defendants' purported wire transfers.

[15] Plaintiffs claim the testimony of former Rabobank employees Paul Robson, Lee Stewart, and Takayuki Yagami supports their allegations (Opp. 15, 22), but, like the testimony of Anthony Allen previously addressed by Foreign Defendants, *see* PJ Br. 25 n.27, this testimony does nothing to establish Sterling LIBOR-related conduct expressly aimed at New York (or the U.S.).  Indeed, it does not refer to Sterling LIBOR, which is unsurprising, as the proceedings involving these individuals concerned only Yen LIBOR and USD LIBOR conduct.  *See* Indictment, *United States v. Robson, et al.*, No. 14-cr-272, ECF No. 5 (S.D.N.Y. Apr. 28, 2014) (alleging Yen LIBOR manipulation only); Plea Tr., *United States v. Yagami*, No. 14-cr-272, ECF No. 16 (S.D.N.Y. June 10, 2014) (guilty plea for Yen LIBOR manipulation only); Plea Tr., *United States v. Stewart*, No. 14-cr-272, ECF No. 46 (S.D.N.Y. Mar. 23. 2015) (guilty plea for USD LIBOR manipulation only); Superseding Indictment, *United States v. Allen, et al.*, No. 14-cr-272, ECF No. 62 (S.D.N.Y. June 25, 2015) (alleging Yen LIBOR and USD LIBOR manipulation only).  Nor does the testimony of former DB employee Curtler establish Sterling LIBOR-related conduct expressly aimed at New York (or the U.S.), as the transcript of his plea contains no reference to Sterling LIBOR.  *See supra* note 13.  Moreover, Plaintiffs' assertion that these individuals' testimony demonstrates express aiming at the U.S. is belied by the testimony itself; the witnesses merely stated that they knew that there were counterparties all over the world trading financial instruments based on interest rate benchmarks in certain currencies (but not Sterling LIBOR), and that some of these counterparties were located in the U.S.  The testimony cited by Plaintiffs fails to establish specific jurisdiction for the additional reason that the sole question on this motion is whether there is personal jurisdiction over the claims of any **named plaintiff**, *AM Trust*, 78 F. Supp. 3d at 986 ("claims of unnamed class members are irrelevant" to specific jurisdiction), and no Plaintiff transacted with Rabobank or DB.

derivatives represent just a small fraction of interest-rate derivatives traded here.[16]

Relying primarily on *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003), Plaintiffs nevertheless argue that the effects allegedly caused in the U.S. by Foreign Defendants' alleged manipulation of Sterling LIBOR abroad support specific jurisdiction. *See* Opp. 9-17. That case, however, lends Plaintiffs no support because it unquestionably involved a conspiracy aimed directly at the U.S. *See* Lefkowitz Decl., Ex. 34 ¶¶ 20-23 (allegations in complaint that foreign defendant's officer directed former employee to attend meeting in U.S. organized to discuss price-fixing, after which officer sought to finalize agreement to fix prices in U.S.); *In re Magnetic Audiotape*, 334 F.3d at 208 (noting also that plaintiffs provided minutes from subsequent meeting in Korea at which representatives of foreign defendant discussed price-fixing aimed at U.S.). The question there was not whether the plaintiffs adequately alleged a price-fixing conspiracy expressly aimed at the U.S., but whether they sufficiently alleged that the foreign defendant itself (as opposed to only its U.S. subsidiary) "participated directly" in the conspiracy. *See* 334 F.3d at 208. The Second Circuit held that the district court should have granted limited jurisdictional discovery on this question. *Id.* But unlike the plaintiffs in *Magnetic Audiotape*, Plaintiffs here not only fail to allege facts showing that Foreign Defendants participated in the alleged price-fixing conspiracy, *see* 12(b)(1)/(6) Mem. at 21-25, they also have not alleged facts establishing that any such conspiracy was expressly aimed at the U.S.[17]

---

[16] A triennial study by the Federal Reserve Bank of New York titled "The Foreign Exchange and Interest Rate Derivatives Markets: Turnover in the United States, April 2007" found that Sterling LIBOR-based swaps accounted for "less than 2 percent of the total" of all single-currency interest rate swaps traded in the U.S. Plaintiffs' counsel filed a copy of the study in an action alleging Euribor manipulation, *see Sullivan, et al. v. Barclays PLC, et al.*, No. 1:13-cv-02811, ECF No. 230-14 (S.D.N.Y. Dec. 4, 2015), but, notably, have chosen not to file that study here. Instead, they have filed the 2010 and 2013 versions of the study, which do not include the above-referenced data. *See* Lefkowitz Decl., Exs. 32-33. In any event, the 2010 and 2013 studies fail to provide any basis for concluding that Foreign Defendants expressly aimed their alleged conduct at the U.S. *See id.*

[17] As Judge Forrest held in *In re Aluminum Warehousing Antitrust Litigation*, 90 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), plaintiffs asserting personal jurisdiction based on a purported conspiracy aimed at the forum "need to allege more. They would need to allege and have facts supporting [defendants] taking specific actions or being a

Plaintiffs contend that *United States v. Allen*, 2016 WL 615705 (S.D.N.Y. Feb. 16, 2016), supports personal jurisdiction over Foreign Defendants, but *Allen* addressed the extraterritorial application of the wire fraud statute against criminal defendants, not personal jurisdiction in the civil context, *id.* at *6-7—two entirely different inquiries. *See United States v. Hayes*, 99 F. Supp. 3d 409 (S.D.N.Y. 2015), *order adopted in part*, 118 F. Supp. 3d 620 (S.D.N.Y. 2015), *appeal dismissed*, No. 15-2597 (2d Cir. Mar. 15, 2016); *see* PJ Br. 25.[18]

### C.     Plaintiffs' Conspiracy Theory Fails.

Plaintiffs ask the Court to exercise jurisdiction over Foreign Defendants because they allegedly participated in a conspiracy with "significant U.S. contacts."  Opp. 20.  But even before *Walden*, the assertion of "personal jurisdiction over a defendant . . . through the imputation of contacts of that defendant's putative co-conspirators . . . ha[d] been widely criticized by courts and scholars."  *Tymoshenko v. Firtash*, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013).[19] After *Walden*—which held that "the relationship [giving rise to jurisdiction] must arise out of contacts that the defendant ***himself*** creates with the forum State," 134 S. Ct. at 1122 (emphasis in original)—it is clear that the conspiracy theory fails to comport with due process because it bases personal jurisdiction squarely upon third parties' contacts with the forum, which *Walden* forbids: "[O]ur minimum contacts analysis looks to the defendant's contacts with the forum State itself,

---

participant in a particular meeting (as in *In re Magnetic Audiotape*) in which the unlawful conspiracy was furthered in some manner."  Otherwise, Plaintiffs fail to plead "action directed at the U.S. to support jurisdiction."  *Id.*

[18] Plaintiffs' reliance on *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659 (2d Cir. 2013), is equally unavailing, as the court in that case held that plaintiffs were entitled to jurisdictional discovery as to whether defendants had expressly aimed their conduct at the U.S. based on factual allegations showing that they had sent financial support to al Qaeda affiliates "known to be targeting the United States."  *Id.* at 678.  Plaintiffs here fail to allege any facts showing that Foreign Defendants expressly targeted the U.S.

[19] In *Tymoshenko*, Judge Wood quoted the Seventh Circuit's holding that "there is no independent federal 'civil co-conspirator' theory of personal jurisdiction."  2013 WL 1234943, at *4 (quoting *Davis v. A. & J. Elec.*, 792 F.2d 74, 76 (7th Cir. 1986)).  Indeed, the conspiracy theory is inconsistent with the Supreme Court's admonition that "[e]ach defendant's contacts with the forum State must be assessed ***individually***" in the due process analysis.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (emphasis added).

not the defendant's contacts with persons who reside there." *Id.* at 1123.  Under *Walden*, "a defendant's relationship with a plaintiff or ***third party***, standing alone, is an insufficient basis for jurisdiction." *Id.* (emphasis added).  Conspiracy jurisdiction violates this precept.[20]

Even if conspiracy jurisdiction could pass constitutional muster, it would require factual allegations Plaintiffs do not (and cannot) make.  Plaintiffs must "(1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction." *Wilder v. News Corp.*, 2014 WL 1315960, at *6 (S.D.N.Y. Mar. 31, 2014).[21]  And to satisfy New York's long-arm statute, Plaintiffs must show that the New York co-conspirator's alleged New York activity (1) had effects of which the out-of-state co-conspirators were aware, (2) was for the benefit of the out-of-state conspirators, and (3) was at the behest of, or under the control of, the out-of-state co-conspirators. *Heinfling v. Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y. 1996); *accord Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981).  These long-arm statute requirements, grounded in the agency-law principles on which the conspiracy jurisdiction theory is based, have assumed constitutional significance post-*Walden*.  Absent their satisfaction, a defendant may not (consistent with due process) be deemed to have purposefully availed itself of the forum and be haled into court based on contacts of third parties.  Plaintiffs plead none of the prerequisites.

---

[20] *See, e.g.*, *In re Aluminum Warehousing*, 90 F. Supp. 3d at 227 ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine."); *Cebulske v. Johnson & Johnson*, 2015 WL 1403148, at *2-3 (S.D. Ill. Mar. 25, 2015) (rejecting conspiracy jurisdiction as inconsistent with due process after *Walden* and noting that "[r]ecent case law reveals a strong trend that something more than an attenuated link is necessary to establish a defendant's personal jurisdiction"); *cf. Laydon*, 2015 WL 1515358, at *3 ("Courts have been increasingly reluctant to extend [the 'conspiracy theory'] of jurisdiction beyond the context of New York's long-arm statute . . . .").  To support their argument that conspiracy jurisdiction remains viable, Plaintiffs point only to pre-*Walden* cases.  *See* Opp. 21 n.18.

[21] Although the case cited by Plaintiffs, *In re Satyam Computer Services Securities Litigation*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013), states the third prong differently, *Satyam* merely paraphrased the standard set forth in *Allstate Life Insurance Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992), which requires that plaintiffs "show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction."

*First*, as detailed in Defendants' merits briefs, the CAC is devoid of **any** allegation of an agreement between **any** Defendants, much less allegations creating a plausible inference of a conspiracy among **all** Defendants—each with its own business strategy and investments—to move Sterling LIBOR upward and downward "on a daily basis" for their collective benefit over a six-year period.  *See* 12(b)(1)/(6) Mem. at Part II.D; 12(b)(1)/(6) Reply at Part III.C.  Contrary to Plaintiffs' assertion otherwise (Opp. 21), the allegations here do not come close to those in *Gelboim*.  *See* 12(b)(1)/(6) Reply at 13-14.  "Bland and conclusory assertions of conspiracy" like those Plaintiffs offer "are insufficient."  *In re Satyam Comput. Servs.*, 915 F. Supp. 2d at 484.[22]

*Second*, Plaintiffs fail to allege specific facts that support an inference that **each** Foreign Defendant was a member of any such conspiracy.  *See* 12(b)(1)/(6) Mem. at Part II.D; 12(b)(1)/(6) Reply at Part III.C.  Plaintiffs' failure to identify **any** Sterling LIBOR-related communications between Defendants or even any statistical evidence demonstrating parallel conduct is fatal to this requirement.  Plaintiffs, moreover, fail to allege that (1) each Foreign Defendant was aware of any effects of the alleged co-conspirators' activity in New York (or the U.S.), (2) any in-forum activity was for the benefit of each Foreign Defendant, and (3) any alleged conspiratorial activity in the forum was at the behest of, or under the control of, each Foreign Defendant.[23]

---

[22] *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010), does not support Plaintiffs' assertion that the existence of a government investigation is "plausible grounds to infer an agreement."  Opp. 20 n.15.  It held only that plaintiffs had alleged a plausible conspiracy on the basis of allegations of "non-conclusory factual allegations of parallel conduct"—allegations absent here—supported by, *inter alia*, pending government investigations.  *Starr*, 592 F.3d at 323-24.  Here, government investigations **undermine**, rather than support, Plaintiffs' assertion of a conspiracy, as none resulted in any finding of conspiratorial conduct by any Defendant with respect to Sterling LIBOR.  *See* 12(b)(1)/(6) Mem. 7-9.  *Pabon v. Barclays Bank*, 2016 WL 2770541 (S.D.N.Y. May 12, 2016), is also inapposite as it involved a motion to compel the production of documents filed by former Barclays employees seeking advancement of legal fees, and has nothing whatsoever to do with Plaintiffs' assertion regarding the import of a government investigation.

[23] *See, e.g.*, *Daventree Ltd. v. Rep. of Azerbaijan*, 349 F. Supp. 2d 736, 763 (S.D.N.Y. 2004) (dismissing claims where no allegation that foreign defendants "controlled or directed" alleged co-conspirators' wrongful acts in New York or had "knowledge of, or consent to" such acts); *Heinfling*, 946 F. Supp. at 265 (same given absence of

*Third*, Plaintiffs fail to allege that any purported co-conspirator committed a tortious act pursuant to the conspiracy in the forum. As discussed in Part II.A, Plaintiffs fail to identify any suit-related conduct in New York (or the U.S.). The "mere presence of one [purported] conspirator [in the forum] . . . does not confer personal jurisdiction over another alleged conspirator." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972). Plaintiffs must allege a "link between the [Foreign] Defendants' allegedly fraudulent conduct and the minimum contacts necessary to exercise personal jurisdiction over them." *In re Satyam Comput. Servs.*, 915 F. Supp. 2d at 485. They have failed to do so.[24]

## III.    FEDERAL STATUTES DO NOT GIVE RISE TO JURISDICTION.

Nationwide service of process provisions in federal statutes do not support personal jurisdiction here.[25] Plaintiffs' reliance on such statutes (Opp. 17-19) is misplaced because their federal claims fail on the merits. *See* 12(b)(1)/(6) Mem. Parts I-IV; PJ Br. 26.[26] But even if their federal claims were viable and a nationwide contacts analysis appropriate—which it is not (*see* PJ Br. 27-28)—this would mean *only* that the relevant forum for the jurisdictional inquiry would be the entire U.S., not New York. Yet, Foreign Defendants' alleged suit-related contacts with the U.S. are still insufficient. *See supra*, Part II; PJ Br. 26-27. Plaintiffs' suggestion that a different due process analysis should apply (Opp. 18-19) is unfounded. Courts have "uniformly" rejected the argument that the Fifth and Fourteenth Amendments have different "minimum

---

allegations of acts for benefit of out-of-forum conspirators or acts under their control or at their request); *First Capital Asset Mgmt., Inc. v. Bricklellbush, Inc.*, 218 F. Supp. 2d 369, 395, 399 (S.D.N.Y. 2002) (similar).

[24] Plaintiffs rely on two criminal cases, *Hayes* and *United States v. Busic*, 592 F.2d 13 (2d Cir. 1978), to argue that "even defendants' acts abroad satisfy the third prong of the conspiracy jurisdiction test because these acts were directed at the U.S." Opp. 22. But those cases are unavailing, as neither concerned personal jurisdiction and, as noted *supra* at Part II.B, Plaintiffs do not allege that Foreign Defendants expressly directed their conduct at the U.S.

[25] Plaintiffs do not attempt to address their failure to satisfy statutory prerequisites for relying on nationwide service provisions in RICO and the Clayton Act. *See* PJ Br. 27 n.32. Thus, those statutes cannot support jurisdiction.

[26] *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395 (2d Cir. 2014) (Opp. 18 n.11), which addressed subject matter jurisdiction, not personal jurisdiction, does not rebut the fact that courts regularly decline to address personal jurisdiction under federal statutes where federal claims fail on the merits. *See* PJ Br. 26 & n.30.

contacts" tests.  *FX II*, 2016 WL 1268267, at *4; *see also LIBOR VI*, 2016 WL 1558504, at *6.[27]

## IV.    JURISDICTIONAL DISCOVERY IS INAPPROPRIATE.

Plaintiffs fail to distinguish this case from every other LIBOR-related case that resolved personal jurisdiction challenges without jurisdictional discovery.  *See* PJ Br. 30.[28]  Indeed, in arguing that Sonterra may seek jurisdictional discovery notwithstanding its failure to request it within the time prescribed by the Court, *see* PJ Br. 29, Plaintiffs concede that they "do not believe jurisdictional discovery is necessary," Opp. 29 n.29.  Moreover, Plaintiffs fail to explain how Sonterra's failure to comply with this Court's directive is cured by the mere filing of the CAC.  In any event, because Plaintiffs fail to plead a *prima facie* case of personal jurisdiction despite having had the unusual benefit of extensive findings from several government investigations—findings unavailable to plaintiffs in the vast majority of cases—they should not be licensed to go on a "fishing expedition" to salvage their deficient claims.  *See* PJ Br. 29-30.[29]

### CONCLUSION

Foreign Defendants should be dismissed from this action pursuant to Rule 12(b)(2).

---

[27] Plaintiffs' citations to federal question cases exclusively involving both a *domestic* plaintiff and a *domestic* defendant (Opp. 16-17) are unavailing, as *Daimler* expressly warned against the "risks to international comity" of an expansive approach to exercising personal jurisdiction over foreign defendants that is "inconsistent with the fair play and substantial justice due process demands." *Gucci Am. Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).  In addition, Plaintiffs' argument that jurisdiction lies under Fed. R. Civ. P. 4(k)(2) (*see* Opp. 18 n.12) fails because Plaintiffs have failed to show that Foreign Defendants' contacts with the U.S. satisfy due process. *See supra* Part II.

[28] Plaintiffs assert that Foreign Defendants may be subject to personal jurisdiction based on contacts of in-forum subsidiaries under New York's "alter ego" theory of personal jurisdiction, and request jurisdictional discovery to examine these contacts. *See* Opp. 29 n.29.  But Plaintiffs have not alleged **any** relevant contacts of Foreign Defendants' in-forum subsidiaries, let alone attempted to satisfy any of the factors needed to plead this theory of jurisdiction. *See Bank of Am. v. Apollo Enter. Sols., LLC*, 2010 WL 4323273, at *4-5 (S.D.N.Y. Nov. 1, 2010) (personal jurisdiction lacking where plaintiff failed to set forth allegations satisfying ten-factor "alter ego" analysis).

[29] Plaintiffs, relying on *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013), argue that Foreign Defendants' declarations cannot be considered without jurisdictional discovery or an evidentiary hearing.  Opp. 19-20.  But Plaintiffs' assertion is irrelevant.  *Dorchester* makes plain that "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion" only by pleading "legally sufficient allegations of jurisdiction."  722 F.3d at 84.  For the reasons set forth herein, Plaintiffs have failed to do so here.

Dated: New York, New York
      June 30, 2016

Respectfully submitted,

/s/ Jonathan D. Schiller*

Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael A. Brille
Melissa Felder Zappala
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Tel: (202) 237-2727
mbrille@bsfllp.com
mzappala@bsfllp.com


/s/ David H. Braff*

David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com


*Attorneys for Defendant Barclays Bank plc*


/s/ David R. Gelfand*

David R. Gelfand
Sean M. Murphy
Mark D. Villaverde
MILBANK TWEED HADLEY
  & McCLOY LLP
28 Liberty Street
New York, New York 10005
Tel.: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com
mvillaverde@milbank.com


*Attorneys for Defendant Coöperatieve
Rabobank U.A. (f/k/a Coöperatieve
Centrale Raiffeisen-Boerenleenbank B.A.)*

/s/ Moses Silverman*
Moses Silverman
Andrew C. Finch
Noam Lerer
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3355
msilverman@paulweiss.com
afinch@paulweiss.com
nlerer@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*


/s/ Fraser L. Hunter, Jr.*
Fraser L. Hunter, Jr.
David S. Lesser
Jamie Dycus
WILMER CUTLER PICKERING
    HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendant The Royal Bank of Scotland plc*


/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Kevin T. Baumann
Benjamin A. Fleming
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
kevin.baumann@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Lloyds Banking Group plc*


/s/ Peter Sullivan*
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California 94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG*


*Electronic signatures used with permission.

- 17 -