

Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

March 9, 2018

VIA ECF

The Honorable Vernon S. Broderick
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:   *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC,*
              *No. 15-cv-3538-VSB*

Dear Judge Broderick:

      As counsel for Lloyds[1] and Defendants' liaison counsel in this action, I write to inform the Court of additional authority relevant to Foreign Defendants' motion to dismiss the CAC for lack of personal jurisdiction (ECF No. 99), which was argued on August 4, 2017.  On February 23, 2018, the Second Circuit issued a decision in *Charles Schwab Corp. v. Bank of America Corp.*, --- F.3d ---, 2018 WL 1022541 (2d Cir. Feb. 23, 2018) ("*Schwab*"), attached as Exhibit A. In *Schwab*, the Second Circuit affirmed in substantial part Judge Buchwald's jurisdictional rulings in *LIBOR IV*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015), and rejected many of the same jurisdictional arguments Plaintiffs advance in this action.

      *Schwab* addressed the dismissal of a complaint in the USD LIBOR multi-district litigation, in which plaintiffs alleged that all sixteen USD LIBOR panel banks were subject to specific jurisdiction in California.  The plaintiffs based their assertion of specific jurisdiction on allegations that the defendant panel banks manipulated USD LIBOR by making false submissions outside the U.S. and traded instruments linked to that benchmark in the U.S., including "billions of dollars' worth" of instruments sold by some (but not all) defendants in California.  *Schwab*, 2018 WL 1022541, at *1–2.  The Second Circuit, addressing specific jurisdiction on a claim-by-claim and defendant-by-defendant basis, divided the claims at issue into two categories: (i) claims relating to certain defendants' solicitation and sale of LIBOR-based instruments to Schwab in California; and (ii) claims "premised solely on [d]efendants' false LIBOR submissions in London."  *Id*. at *6–7.  It held that the plaintiffs failed to establish jurisdiction except as to the first set of claims, solely with respect to defendants that transacted directly with the California-based plaintiffs.  *Id*.  *Schwab* strongly supports dismissal here.

      ***Schwab* Confirms that Plaintiffs Fail to Plead a "Substantial Connection" Between Their Claims and Foreign Defendants' Alleged Forum Contacts.**  *Schwab* rejected the same argument advanced by Plaintiffs here—that they can establish jurisdiction over claims against Foreign Defendants with which they did not trade based on overseas conduct.  The court held

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' briefs addressing the merits and personal jurisdiction.  Internal citations and quotation marks are also omitted.

Hon. Vernon S. Broderick - 2 - March 9, 2018

that, absent specific allegations of an agency relationship between a defendant and a directly transacting affiliate, or properly alleged conspiracy jurisdiction (neither of which was adequately alleged in *Schwab* or here, *see infra*), a defendant's trading activities in the forum can confer jurisdiction only when (1) the defendant traded *directly* with a plaintiff and (2) the in-forum transactions *caused* the conduct giving rise to the claims—here, and in *Schwab*, the alleged manipulation of a LIBOR rate in London. *Schwab* at *7-10.  Even if Plaintiffs could satisfy *Schwab*'s second requirement by establishing a causal relationship between domestic trading and the alleged overseas misconduct (which they cannot, *see infra*), Plaintiffs' failure to allege direct transactions between themselves and any Foreign Defendant other than UBS, without more, would require dismissal of their claims as to all other Foreign Defendants.[2]  As to UBS, which allegedly transacted with one plaintiff, FrontPoint, the allegations fall far short of what the *Schwab* court found sufficient—namely, that certain defendants engaged in "billions of dollars' worth" of transactions in the forum. *Schwab* at *2.  Here, Plaintiffs do not even allege that UBS's transactions with FrontPoint were substantial, and thus these allegations are insufficient to confer jurisdiction. *See E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 2009 WL 764458, at *7 (S.D.N.Y. Mar. 23, 2009) ("single or occasional acts related to the forum" cannot confer jurisdiction where they "create only an attenuated affiliation with the forum").  Moreover, *Schwab* requires that any exercise of jurisdiction over UBS be limited to "claims *relating to those sales*," *Schwab* at *6-7 (emphasis added)—here, only FrontPoint's quasi-contractual claims.  *See* Defs' PJ Reply at 3-4.

**Schwab Confirms that Plaintiffs' Purposeful Availment Theory Fails Because They Do Not Allege Any Suit-Related Conduct Creating a Substantial Connection With the Forum.** *Schwab* also rejected another of the arguments made by Plaintiffs here—that Foreign Defendants' supposed domestic trading in instruments allegedly affected by overseas conduct constitutes "suit-related" activity, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016), that could support personal jurisdiction.  The *Schwab* court squarely held that "sales in California do not alone create personal jurisdiction for claims premised solely on Defendants' false LIBOR submissions in London." *Schwab* at *7.  Relying on *Waldman*, the court held that to establish the requisite "substantial connection," plaintiffs must "show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit" and that the plaintiffs' claim must "arise from the defendants' purposeful contacts with the forum." *Id.*  No such causal relationship was pled: "[T]he California transactions did not cause Defendants' false LIBOR submissions to the BBA in London" or "in some other way give rise to claims seeking to hold Defendants liable for those submissions." *Id.*  Accordingly, the court held they were not suit-related and could not be used to establish specific jurisdiction. *Id.*

The same reasoning applies here and precludes treating Foreign Defendants' supposed in-forum trading activities in Sterling LIBOR-based instruments as a basis for conferring

---

[2] It is of no moment that Plaintiffs allege that Foreign Defendants were "direct sellers" to members of the putative class in the U.S., although not to any named Plaintiff (except for UBS with respect to FrontPoint).  It is black-letter law that "[c]ontacts with unnamed class members may not be used as a jurisdictional basis." *Beach v. Citigroup Alternative Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014); *see also, e.g.*, *Sullivan v. Barclays Bank PLC*, 2017 WL 685570, at *39 (S.D.N.Y. Feb. 21, 2017) (noting in Euribor action that "[t]he existence of other agreements between defendants and non-plaintiffs would not establish personal jurisdiction over a defendant for the purpose of these plaintiffs' claims asserted in this action"); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class.").

Hon. Vernon S. Broderick  - 3 -  March 9, 2018

jurisdiction.  As in *Schwab*, Foreign Defendants' alleged trading activities in the U.S. are in no way "causally connected" to the alleged manipulative conduct in Europe.  *See* Defs.' PJ Br. Part II.B.3.  That *Schwab* dealt with common law fraud claims involving the alleged persistent suppression of a benchmark, while this case involves different claims relating to alleged episodic, "trader-based" manipulation of a benchmark, makes no difference.  Plaintiffs here fail to identify any plausible, non-conclusory allegations linking the alleged manipulation outside the U.S. to Foreign Defendants' trading activities here.  *See id.*  Indeed, *Schwab* held that such transactions would not be "acts in furtherance of" the alleged conspiracy even if defendants had "also [conspired] 'to earn profits' from that manipulation."  *Schwab* at *10 ("[F]inancial self-interest is not the same as furthering a conspiracy through [forum-]directed sales.").  As in *Schwab*, Plaintiffs' contention that jurisdiction exists over *all* Foreign Defendants without regard for whether, as to a particular Foreign Defendant, they can allege any domestic trading activity only bolsters the conclusion that any such trades are not "suit-related."  *Id*. at *7.

***Schwab* Confirms That Plaintiffs Have Failed to Satisfy the So-Called "Effects" Test.**  *Schwab*'s rejected specific jurisdiction under the so-called "effects" test, on which Plaintiffs here also rely.  The Second Circuit re-affirmed that where the conduct at issue "occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff," jurisdiction does not exist unless the defendant "***expressly aimed its conduct at the forum***."  *Schwab* at *10 (emphasis added).  This exacting standard is not met where alleged harmful effects in the forum are "merely foreseeable."  *Id.* (rejecting as insufficient Schwab plaintiffs' allegations that "defendants surely knew that the brunt of th[e] injury would be felt by plaintiffs like Schwab in California").  As *Schwab* put it: "That the effects of LIBOR manipulation were likely to reach an economy as large as California's does not mean that Defendants' conduct in London was 'expressly aimed' at the state." *Id.*  Plaintiffs' argument here is nearly identical:  they allege that Defendants located in Europe manipulated a British benchmark rate intended to reflect the cost of borrowing funds in the London interbank market, that this manipulation affected Sterling LIBOR-based instruments worldwide, and that it was foreseeable that instruments traded in the U.S. would also be affected.  Plaintiffs' allegations come nowhere near establishing that Foreign Defendants expressly aimed their alleged conduct at the U.S., as is required to establish jurisdiction under *Calder v. Jones*, 465 U.S. 783 (1984), and its progeny.  *See* Defs.' PJ Br. Part II.B.3.

***Schwab* Confirms the Insufficiency of Plaintiffs' Conspiracy Jurisdiction Allegations.**  *Schwab* also makes clear that Plaintiffs' theory of jurisdiction based on an alleged conspiracy fails.  The Second Circuit ruled that, at a minimum, "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Schwab* at *9-10.  Plaintiffs here have failed to plausibly allege a conspiracy, *see* Defs.' Merits Br. at Part II.D, each Foreign Defendant's participation in any conspiracy, *see* Defs.' PJ Reply at 13, or an act in furtherance of the conspiracy that occurred in or was expressly aimed at the U.S., *see id.* at 14.[3]

---

[3] The *Schwab* court rejected the position (advocated by plaintiffs there) that conspiracy jurisdiction can be established even if no act in furtherance of the conspiracy occurred in or was specifically directed at the forum.  *Schwab* at *9.  The court did not address whether conspiracy jurisdiction also requires a plaintiff to set forth plausible agency allegations (as Defendants here argue), or the requirements for conspiracy jurisdiction under the New York long-arm statute or Rules 4(k)(1) and 4(k)(2).  *See* Defs.' PJ Br. at 6 nn.5, 7; Defs.' PJ Reply at 12–14.

Hon. Vernon S. Broderick            - 4 -            March 9, 2018

                                         Respectfully submitted,

                                         <u>/s/     Marc J. Gottridge     /</u>

Enclosure

cc:      All counsel of record (by ECF)