UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., RICHARD DENNIS, FRONTPOINT EUROPEAN FUND, L.P on behalf of itself and all others similarly situated,<br><br>         Plaintiffs,<br><br>    - against -<br><br>BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, AND JOHN DOE NOS. 1-50,<br><br>         Defendants. | Docket No. 15-cv-3538 (VSB) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PARTIAL RECONSIDERATION OF THE COURT'S OPINION AND ORDER
ON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii
INTRODUCTION .....................................................................................................................................1
ARGUMENT..............................................................................................................................................3
    I.    THIS COURT SHOULD RECONSIDER ITS ANTITRUST STANDING RULING AS IT RELATES TO THE CO-CONSPIRATOR DEFENDANTS..............................................4

    II.    THE CO-CONSPIRATOR DEFENDANTS ARE PROPER DEFENDANTS IN THIS ACTION. ...................................................................................................................................7

        A.    FrontPoint Has Plausibly Alleged an Antitrust Conspiracy Against All Co-Conspirator Defendants........................................................................................................................7

        B.    This Court Has Personal Jurisdiction Over All Co-Conspirator Defendants.........................8
CONCLUSION.........................................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
   888 F. Supp. 2d 478 (S.D.N.Y. 2012) ................................................................................4

*Anders v. Verizon Comms., Inc.*,
   16 CV 5654, 2018 WL 6605200 (S.D.N.Y. Dec. 17, 2018) ..................................................4

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ..................................................................................................8

*Charles Schwab Corp. v. Bank of America Corp.*,
   883 F.3d 68 (2d Cir. 2018) ............................................................................................. 9, 10

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
   No. 16 Civ. 5263, 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ....................................2, 6, 9

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
   No. 15-CV-3538, 2018 WL 6725387 (S.D.N.Y. Dec. 21, 2018) ................................*passim*

*Gelboim v. Bank of America Corp.*,
   823 F.3d 759 (2d Cir. 2016) ....................................................................................2, 3, 4, 5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ................................2, 5, 6

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ..........................................................................................3

*Keiser v. CDC Inv. Mgmt. Corp.*,
   No. 99 CIV.12101, 2004 WL 516212 (S.D.N.Y. Mar. 17, 2004) .........................................4

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) ..................................................................................................4

*Questrom v. Federated Dep't Stores, Inc.*,
   192 F.R.D. 128 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 81 (2d Cir. 2001) ..................................3

*Sullivan v. Barclays PLC*,
   No. 13-cv-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ..........................................2, 6

Plaintiff FrontPoint European Fund L.P. ("FrontPoint" or "Plaintiff") respectfully requests that this Court reconsider its December 21, 2018 Opinion and Order, 2018 WL 6725387, ECF No. 191 ("*GBP LIBOR*") to the extent that the Court: (i) collapsed the liability analysis of who the proper Defendants are into the standing analysis of who the proper Plaintiff is; and (ii) as a result, permitted FrontPoint's antitrust claims to proceed *only* against Defendant UBS AG ("UBS") and not UBS's co-conspirator defendants Barclays Bank PLC ("Barclays"), Cooperatieve Rabobank U.A. ("Rabobank"), Deutsche Bank AG ("Deutsche Bank"), Lloyds Banking Group PLC ("Lloyds"), and The Royal Bank of Scotland ("RBS") (collectively with UBS, the "Co-Conspirators" or "Co-Conspirator Defendants").[1]

## INTRODUCTION

This Court correctly held that FrontPoint has antitrust standing to pursue the Sherman Act claims alleged in the Consolidated Amended Complaint ("Complaint" or "CAC"). *GBP LIBOR*, 2018 WL 6725387, at *17. Specifically, the Court recognized that FrontPoint sufficiently alleged both that it suffered an antitrust injury "flowing from the alleged corruption of the rate-setting process" and that it is an efficient enforcer—"an acceptable plaintiff to pursue the alleged antitrust violations"—by virtue of its direct trades with Defendant UBS. *Id.* at *13, *15. The Court further found that FrontPoint had adequately alleged an antitrust conspiracy in which UBS and other Co-Conspirator Defendants "collusively shared information to coordinate their Sterling LIBOR submissions and engaged in manipulative trading practices to fix the prices of Sterling LIBOR-based derivatives for their collective financial benefit." *Id.* at *19.

However, the Court then collapsed the liability analysis of who the proper Defendants are into the standing analysis of who the proper Plaintiff is. "Because I find that Plaintiff FrontPoint is

---

[1] Plaintiff does not seek reconsideration of the Court's decision as to Defendant Barclays Capital Inc. ("BCI") because BCI was dismissed from the case on a separate, additional ground from the Co-Conspirator Defendants.

1

the only efficient enforcer of any antitrust claims against Defendants . . . I need only address the extent to which FrontPoint has alleged an antitrust conspiracy against UBS." *GBP LIBOR*, 2018 WL 6725387, at *19 n. 19. Thus, the Court permitted FrontPoint's antitrust claims to proceed only against Defendant UBS, and not against UBS's Co-Conspirators. FrontPoint respectfully submits that this aspect of the Court's decision overlooked the distinction established in *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 770 (2d Cir. 2016) between the antitrust standing analysis (*i.e.*, determining which parties are proper *plaintiffs*) and the separate analysis needed to determine which parties are proper *defendants*.

Numerous courts in this District, faced with benchmark manipulation claims similar to those asserted here, have adopted a direct transaction approach to determine which plaintiffs are proper parties to "vindicate the public interest in antitrust enforcement," against **all members of the alleged conspiracy**. *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *15 (S.D.N.Y. Feb. 21, 2017) ("*Euribor*") (Castel, J.). In addition to *Euribor*, this Court cited two other such cases in support of its finding that FrontPoint has antitrust standing: *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263 (AKH), 2018 WL 4830087, at *5-6 (S.D.N.Y. Oct. 4, 2018) ("*SIBOR II*") (Hellerstein, J.), and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *17 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*") (Buchwald, J.). In all three of these cases cited by this Court for standing principles,[2] the efficient enforcer plaintiff was permitted to pursue its claims not only against the defendant with whom it directly transacted, but also against other defendants who conspired to manipulate the price of the derivative that plaintiff transacted.

In fact, Defendants made no argument to the effect that, if FrontPoint alleged a plausible conspiracy among the Co-Conspirator Defendants, and if Plaintiff transacted only directly with

---

[2] *See GBP LIBOR*, 2018 WL 6725387, at *6 (citing *Euribor*); *15 (citing *SIBOR II*); *17 (citing *LIBOR VI*).

UBS, then Plaintiff still lacked standing to sue the Co-Conspirator Defendants.[3]  Moreover, here, *all* Defendants are alleged to have conspired to create artificial prices via their unlawful coordinated manipulation of Sterling LIBOR. "Because antitrust liability is joint and several, a Plaintiff injured by one Defendant as a result of the conspiracy has standing to represent a class of individuals injured by any of the Defendant's co-conspirators." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y. 1996).  If Plaintiff plausibly alleged a conspiracy among UBS and other Defendants, Plaintiff has standing to proceed against those other Defendants.

FrontPoint respectfully requests that this Court reconsider its holding that FrontPoint is an efficient enforcer only as to claims against UBS, to bring this case back in line with the rest of the benchmark manipulation cases in this District, with the distinction drawn by the Second Circuit in *Gelboim,* and with other case law and antitrust principles, including efficient enforcer principles. Upon reconsideration, the same analysis that the Court has now used to find that UBS plausibly entered the conspiracy dictates a similar finding that each of the other Co-Conspirator Defendants is plausibly alleged to have entered such conspiracy.  Finally, this Court's finding of the existence of such conspiracy also adds to the showing of personal jurisdiction under conspiracy jurisdiction principles.  FrontPoint therefore respectfully requests that the Court reinstate FrontPoint's antitrust claims against each of the Co-Conspirator Defendants.

## ARGUMENT

A motion for reconsideration is generally "intended to bring to the Court's attention matters that it overlooked. . . ." *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 130 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 81 (2d Cir. 2001). Courts expand this focus to include reconsideration where the

---

[3] *See* Mem. of Law in Support of Defs.' Mot. to Dismiss the Consolidated Am. Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. 100 *passim*; Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Consolidated Am. Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. 121 *passim*.

failure to reconsider would result in "manifest injustice." *Anders v. Verizon Comms., Inc.*, 16 CV 5654, 2018 WL 6605200, at *1 (S.D.N.Y. Dec. 17, 2018) (Broderick, J.) (a party seeking reconsideration may show "the need to correct a clear error or prevent manifest injustice.") (citation omitted). Reconsideration should be granted where the movant points to "controlling decisions or data that the Court overlooked." *See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 487-89 (S.D.N.Y. 2012) (granting reconsideration where the court overlooked "two pieces of evidence"); *Keiser v. CDC Inv. Mgmt. Corp.,* No. 99 CIV.12101 (WHP), 2004 WL 516212, at *1 (S.D.N.Y. Mar. 17, 2004) (granting partial reconsideration where the court "overlooked certain aspects of controlling decisions").

## I.  THIS COURT SHOULD RECONSIDER ITS ANTITRUST STANDING RULING AS IT RELATES TO THE CO-CONSPIRATOR DEFENDANTS.

Second Circuit law makes clear that the identities of proper price-fixing plaintiffs (*i.e.*, antitrust standing) and proper price-fixing defendants (*i.e.*, antitrust violation) are determined through separate inquiries. *Gelboim*, 823 F.3d at 770. Whether a given defendant belongs in the case depends on whether plaintiffs plausibly allege that defendant's participation in a conspiracy to violate the antitrust laws. *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). In contrast, "whether the putative plaintiff is a proper party to perform the office of a private attorney general and thereby vindicate the public interest in antitrust enforcement" depends on whether that plaintiff suffered an antitrust injury and is an efficient enforcer of the antitrust laws. *Gelboim*, 823 F.3d at 780 (quoting *Gatt Commc'ns., Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 80 (2d Cir. 2013)). The Second Circuit, in directing courts to "assume[] 'the existence of a violation in addressing the issue of [antitrust] standing,'" has cautioned against conflating the two separate analyses. *Gelboim*, 823 F.3d at 770 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 437 (2d Cir. 2005)).

Here, this Court correctly followed the steps of the antitrust standing analysis up until the very end. The Court found that all three of the original Plaintiffs adequately alleged an antitrust injury, following *Gelboim*'s teaching that "manipulating LIBOR is a per se violation of antitrust laws that causes antitrust injury to anyone who transacted in financial instruments with prices influenced by that rate." *GBP LIBOR*, 2018 WL 6725387, at *13. Because Plaintiffs transacted in financial instruments "priced, benchmarked, or settled based on Sterling LIBOR," they "have clearly sufficiently alleged that they have suffered an antitrust injury in the form of higher prices flowing from the alleged corruption of the rate-setting process." *Id.*

The Court then properly turned to the question of whether Plaintiffs were efficient enforcers of the antitrust laws. Applying the test set forth in *Gelboim*, this Court weighed: (1) the directness of Plaintiffs' asserted injury; (2) the existence of more direct victims; (3) whether damages would be highly speculative, and (4) whether there is a risk of duplicate recoveries or that damages would be difficult to apportion among possible victims. *GBP LIBOR*, 2018 WL 6725387, at *14. The Court found that these factors supported a finding of antitrust standing for Plaintiff FrontPoint because FrontPoint "transacted directly with UBS and can point to specific transactions on specific dates, which obviates concerns about damages calculations and speculative damages," and because no "non-defendant third-parties[']…independent decision[s] to incorporate Sterling LIBOR into their transactions break[] the chain of causation between Defendants' actions and [Plaintiffs'] injury." *Id.* at *17 (quoting *LIBOR VI*, 2016 WL 7378980, at *17).[4] But then, the Court incorrectly concluded that FrontPoint had antitrust standing for the entire conspiracy *only* against UBS.

---

[4] The Court found that Plaintiffs Sonterra and Dennis lacked antitrust standing because they had not transacted directly with any Defendant. *GBP LIBOR*, 2018 WL 6725387, at *15 (citations omitted). To be clear, FrontPoint is not asserting an umbrella purchaser claim, *i.e.*, FrontPoint is not seeking to hold the Co-Conspirator Defendants liable for damages it suffered from the conduct of any non-conspirator.

The last part of the Court's opinion quoted above—stating that no third party's decision breaks the chain of causation between **Defendants'** actions and Plaintiff's injury—strongly supports a finding that Plaintiff has plausibly alleged a conspiracy against all of the Co-Conspirator Defendants. "Defendants' actions," plural. As the Court already found, FrontPoint was injured by transacting in Sterling LIBOR derivatives at artificial prices. *All* of the Defendants are alleged to have conspired to create those artificial prices via their unlawful coordinated manipulation of Sterling LIBOR.

FrontPoint's injury flowed directly from all conspiring Defendants'—not just UBS'— unlawful and conspiratorial conduct. FrontPoint is therefore an efficient enforcer as to *all* Defendants who are properly alleged to have participated in the conspiracy and violated the antitrust laws. This is the precise result that Judge Buchwald reached in the *LIBOR VI* decision that this Court quoted, and the result that Judge Hellerstein and Judge Castel also reached in other benchmark manipulation cases.  While each judge found that only those plaintiffs who had transacted directly with a conspiring defendant had antitrust standing, the Court nonetheless held that the direct-transacting plaintiff had antitrust standing to pursue its respective antitrust claims against each member of the price-fixing conspiracy, including against those defendants who plaintiff did not transact. *See SIBOR II*, 2018 WL 4830087, at *5, *11 (sustaining plaintiff FrontPoint Asian Event Driven Fund, L.P.'s antitrust claim against all SIBOR panel members, including those with whom FrontPoint did not transact); *LIBOR VI*, 2016 WL 7378980, at Appendix (sustaining the antitrust claims of direct transaction plaintiffs as to non-counterparty defendants)[5]; *Euribor*, 2017 WL

---

[5] Judge Buchwald's opinion articulated the legal principles applicable to all of the many individual actions included within the U.S. dollar LIBOR multi-district litigation, and then set out the individual holdings in an attached appendix. *See LIBOR VI*, 2016 WL 7378980, at *25. The Appendix specifically sustained the antitrust claims of the over-the-counter class as to six defendants, none of which is named as a direct counterparty in the OTC class's complaint. *See Mayor & City Council of Baltimore v. Credit Suisse Grp. AG*, No. 1:11-md-2262-NRB, Second Consol. Am.

6

685570, at *18 (sustaining plaintiff FrontPoint Australian Opportunities Trust's claims against JPMorgan and Citi because of direct transactions with other members of the alleged conspiracy). In other words, those cases all drew distinctions among different categories of *plaintiffs* in making their antitrust standing decisions—those who transacted directly with a conspiracy member and those who did not. But once a plaintiff fell into the right category, that plaintiff had antitrust standing to assert claims against any defendant who was plausibly alleged to have participated in the conspiracy. FrontPoint respectfully submits that this Court's oversight of the plaintiff-focused nature of the antitrust standing analysis justifies reconsideration.

## II. THE CO-CONSPIRATOR DEFENDANTS ARE PROPER DEFENDANTS IN THIS ACTION.

Because this Court believed that FrontPoint had antitrust standing only against UBS, it did not reach the questions of whether FrontPoint had adequately alleged that the Co-Conspirator Defendants participated in the conspiracy to rig Sterling LIBOR or whether this Court has personal jurisdiction over the Co-Conspirator Defendants. The answer to both questions is "yes," under the same reasoning that this Court employed to find that UBS is a proper defendant in this case.

### A. FrontPoint Has Plausibly Alleged an Antitrust Conspiracy Against All Co-Conspirator Defendants.

The Court has already found that Plaintiff sufficiently alleged the existence of an antitrust conspiracy, and UBS's participation in that conspiracy. It pointed to specific paragraphs of the Complaint in which Plaintiff alleges that (1) "Defendants collusively shared information to coordinate their Sterling LIBOR submissions and engaged in manipulative trading practices to fix the prices of Sterling LIBOR-based derivatives for their collective financial benefits" (CAC ¶ 125); (2) that "collusive communications" occurred between Sterling LIBOR traders and submitters at various banks (CAC ¶ 127); and (3) that UBS entered into settlements with regulators pertaining to

---

Compl. ¶ 337, ECF No. 406 (S.D.N.Y. Sept. 10, 2013) (alleging direct transactions only with UBS and Deutsche Bank).

its "collusive conduct intended to manipulate the LIBOR" (CAC ¶¶ 5, 11-12, 17-19, 120(e)).  *See GBP LIBOR*, 2018 WL 6725387, at *19.  As to each of the three points, the cited sections of the CAC apply with equal force to the Co-Conspirator Defendants as they do to UBS. *See* CAC ¶ 125 (referring generally to all Defendants' "settlement agreements with multiple global regulatory agencies…regarding their intentional manipulation of Sterling LIBOR and the prices of Sterling LIBOR-based derivatives"); CAC ¶ 127 & n.56 (referring generally to "collusive electronic chats" among Sterling LIBOR traders and submitters, and citing to Lloyds' regulatory settlement admissions of collusion with inter-dealer brokers); CAC ¶ 5 (explaining that, like UBS, all Co-Conspirator Defendants have been subject to government charges for manipulation of LIBOR, and that all but RBS expressly admitted to having done so); CAC ¶¶ 13-25 (detailing the admissions that Deutsche Bank, UBS, Rabobank, Barclays, and Lloyds made as to their manipulation of Sterling LIBOR, and stating Plaintiff's grounds to believe that RBS participated in the same conduct); and CAC ¶ 120 (recounting Lloyds', Barclays', UBS', Deutsche Bank's and Rabobank's admissions as to manipulation of LIBOR in currencies other than Sterling).[6]  Accordingly, Plaintiff has alleged a plausible antitrust conspiracy against all Co-Conspirator Defendants. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court … may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

### B. This Court Has Personal Jurisdiction Over All Co-Conspirator Defendants.

This Court's finding that Plaintiff has plausibly alleged a conspiracy against UBS also demonstrates that this Court has personal jurisdiction over each of the other Co-Conspirator

---

[6] For the Court's convenience, Plaintiff attaches a more detailed recitation of the CAC's allegations and the sources cited therein which plausibly allege each Co-Conspirator Defendant's participation in the conspiracy.  *See* Appendix A hereto.

Defendants under conspiracy jurisdiction principles. Plaintiff's allegations here comfortably meet the standard for conspiracy jurisdiction set forth in *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018). Conspiracy jurisdiction allows a court to impute the in-forum contacts of one defendant to that defendant's co-conspirators as well. *See Schwab*, 883 F.3d at 86. In *Schwab*, the Second Circuit set forth the following three-part test for conspiracy jurisdiction: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [the forum] to subject that co-conspirator to jurisdiction in that [forum]." *Id.* at 87 (citation omitted).  Plaintiff meets all three elements.

*First*, this Court has already found "that Plaintiffs adequately allege an antitrust conspiracy." *GBP LIBOR*, 2018 WL 6725387, at *19.

*Second*, as set forth above, Plaintiff alleges that each of the Co-Conspirator Defendants participated in the antitrust conspiracy.

*Third*, this Court has already found that Defendant UBS's overt acts in furtherance of the conspiracy subject it to personal jurisdiction here. The Court noted Plaintiff's allegation that a senior manager in UBS's Stamford office "directly manipulated UBS's LIBOR submissions" and "directed UBS LIBOR submitters to manipulate LIBOR submissions across all currencies, including Sterling LIBOR."  *GBP LIBOR*, 2018 WL 6725387, at *31 (quoting CAC ¶ 85). It found that "[t]his conduct, which allegedly occurred in the forum, is alleged to have caused, in part, the harm suffered by Plaintiff FrontPoint as a result of Defendant UBS's Sherman Act violations, which is 'suit-related conduct' that creates a 'substantial connection' with the forum." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Accordingly, all three parts of the conspiracy jurisdiction test are met, and the other members of the conspiracy are therefore subject to personal jurisdiction in this forum alongside UBS.  *See also SIBOR II*, 2018 WL 4830087, at *8 ("FrontPoint's contacts, furthermore, can form the basis of specific jurisdiction not only for the two defendants who traded with Plaintiff

9

(*i.e.*, Deutsche Bank and Citibank) but also for all the Panel Member defendants who participated in the conspiracy. The Panel's conspiracy was collectively to profit from the manipulation of SIBOR, including allowing individual members to trade and profit with unknowing victims. Deutsche Bank's and Citibank's trading with FrontPoint were acts in furtherance of the conspiracy, and therefore can be the basis for jurisdiction over all members of the conspiracy, whether or not they themselves traded derivatives in the U.S."). Notably, this is a much easier case for conspiracy jurisdiction than cases like *Schwab* or *SIBOR II*, where the only in-forum acts were derivatives trades, and the court was then tasked with determining whether those trades were acts in furtherance of that particular alleged conspiracy's goals. Here, the coordination and actual LIBOR manipulation occurred in the forum, unquestionably giving rise to specific jurisdiction over each of the Co-Conspirator Defendants.

Just like UBS, the Co-Conspirator Defendants are large financial institutions with a substantial presence (including through New York branches) in the United States, such that "the assertion of personal jurisdiction [over them] would comport with fair play and substantial justice." *GBP LIBOR*, 2018 WL 6725387, at *31. *See* CAC ¶¶ 40-47 (Barclays); ¶¶ 48-51 (Rabobank); ¶¶ 52-58 (Deutsche Bank); ¶¶ 59-64 (Lloyds); ¶¶ 65-77 (RBS).

Finally, although FrontPoint believes that personal jurisdiction over each of the Co-Conspirator Defendants is adequately established under *Schwab* and the import of this Court's rulings in *GBP LIBOR*, FrontPoint notes that *Schwab* explicitly granted leave to replead. *Schwab*, 883 F.3d at 89. To the extent that this Court does not find FrontPoint's allegations of personal jurisdiction over any Co-Conspirator Defendant sufficient, FrontPoint respectfully requests leave to replead to cure that deficiency.

## CONCLUSION

For the foregoing reasons, FrontPoint respectfully requests that this Court reconsider the portion of its Opinion and Order finding that FrontPoint has antitrust standing only against Defendant UBS, and (1) find that FrontPoint has antitrust standing to pursue its Sherman Act claims against all Co-Conspirator Defendants; (2) find that FrontPoint has plausibly alleged that all Co-Conspirator Defendants participated in the alleged conspiracy; and (3) find that all Co-Conspirator Defendants are subject to personal jurisdiction in this Court.

Dated: January 22, 2019
White Plains, New York

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By: /s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
Christian Levis
Margaret C. MacLean
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
clevis@lowey.com
mmaclean@lowey.com

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By: /s/ Christopher Lovell
Christopher Lovell
Gary Jacobson
Jody Krisiloff
61 Broadway, Suite 501
New York, NY 10006
Tel: (212) 608-1900
clovell@lshllp.com

**THE LAW OFFICE OF JAMISON A. DIEHL LLC**

By: /s/ Jamison Diehl
Jamison Diehl
420 Lexington Avenue, Suite 2440
New York, NY 10170
Tel: 212-500-5049
jdiehl@jdnylaw.com