**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

SONTERRA CAPITAL MASTER FUND, LTD.,
RICHARD DENNIS, and FRONTPOINT EUROPEAN
FUND, L.P., on behalf of themselves and all others similarly
situated,

                           Plaintiffs,

              -against-

BARCLAYS BANK PLC, COOPERATIEVE CENTRALE
RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE
BANK AG, LLOYDS BANKING GROUP PLC, THE
ROYAL BANK OF SCOTLAND PLC, UBS AG, JOHN DOE
NOS. 1-50, and BARCLAYS CAPITAL, INC.,

                       Defendants.

Docket No. 15-cv-3538 (VSB)

---

**REPRESENTATIVE PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT WITH DEFENDANT DEUTSCHE BANK AG**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

OVERVIEW OF THE LITIGATION ................................................................................. 2

SUMMARY OF KEY SETTLEMENT TERMS ................................................................ 4

ARGUMENT....................................................................................................................... 4

I.     THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)............. 4

   A.   The Preliminary Approval Standard ................................................................. 4

   B.   The Settlement is Procedurally Fair ................................................................. 5

      1.   The Class Has Been Adequately Represented ......................................... 5

      2.   The Settlement is the Product of Arm's Length Negotiations ....................... 7

   C.   The Settlement is Substantively Fair ................................................................. 8

      1.   The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ...................................... 9

      2.   The Grinnell Factors Not Expressly Addressed Above Also Support Approval of the Settlement ................................................................................................. 12

      3.   The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii) ...................................................................... 15

      4.   The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief ................................................ 17

      5.   There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class ................................................................................. 18

      6.   The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences ............................................................................................. 18

II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS ..... 19

   A.   The Settlement Class meets the Rule 23(a) requirements. .................................. 19

      1.   Numerosity ......................................................................................... 19

      2.   Commonality ...................................................................................... 19

      3.   Typicality........................................................................................... 20

      4.   Adequacy ........................................................................................... 21

   B.   The proposed Settlement Class satisfies Rule 23(b)(3)...................................... 21

      1.   Predominance ..................................................................................... 21

      2.   Superiority .......................................................................................... 23

III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR....................................... 24

IV.   THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT. ............. 25

V.     PROPOSED SCHEDULE OF EVENTS ............................................................................. 25

CONCLUSION ......................................................................................................................... 25

APPENDIX A............................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................ 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000) ........................................................................................ 21

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................... 13

*Bolanos v. Norwegian Cruise Lines Ltd.*,
212 F.R.D. 144 (S.D.N.Y. 2002) ............................................................................... 20

*Bolivar v. FIT Int'l Grp. Corp.*,
No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) .................................. 12

*Brown v. Kelly,*
609 F.3d 467 (2d Cir. 2010) ................................................................................ 21, 22

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) .................................................................................. 9, 13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ........................................................................................ 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 02CV1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .................................. 18

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
991 F.3d 370 (2d Cir. 2021) ........................................................................................ 5

*Guerrero v. Wells Fargo Bank, N.A.*,
No. C 12-04026 WHA, 2014 WL 1365462 (N.D. Cal. Apr. 7, 2014) .......................... 8

*In re "Agent Orange" Prod. L*iab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 19*84),* aff'd 818 F.2d 145 (2d Cir. 1987) ................ 10, 14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........ 6, 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .............. 7

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
689 F.3d 229 (2d Cir. 2012) ...................................................................................... 22

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................................... 13

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................................................... 5

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
No. 12-md-2330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................... 18

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................................... 23

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................................... 6, 10, 11

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................................... 5

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01MDL1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ................................................. 4

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...................................................................................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ....................................................................................................... 20

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
357 F.3d 800 (8th Cir. 2004) ................................................................................................... 19

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................... 14

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................................. passim

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................................................. 19

*In re Michael Milken and Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................................................... 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................................... 22

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1977) ........................................................................................... 8, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................................... passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) .......................................................... 12

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..................... 5

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 19

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
  No. M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ............... 12

*In re Stock Exchanges Options Trading Antitrust Litig.*,
  No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) .................... 4

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................. 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................ 17

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................... 24

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ................................................................ 10, 14

*Ploss v. Kraft Foods Grp., Inc.*,
  431 F. Supp. 3d 1003 (N.D. Ill. 2020) ....................................................... 21

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........... 6

*Soberal-Perez v. Heckler*,
  717 F.2d 36 (2d Cir. 1983) ........................................................................ 24

*Velez v. Novartis Pharms. Corp.*,
  No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ....... 17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................. passim

**Rules**

FED. R. CIV. P. 23 (e)(3) ................................................................................. 9

FED. R. CIV. P. 23(b)(3)(A)-(D) ...................................................................... 23

FED. R. CIV. P. 23(e)(1) ................................................................................... 4

FED. R. CIV. P. 23(e)(2) ............................................................................... 4, 5

FED. R. CIV. P. 23(e)(2)(A)-(B) ....................................................................... 5

FED. R. CIV. P. 23(e)(2)(B) .............................................................................. 7

FED. R. CIV. P. 23(e)(2)(C) et seq. ............................................................. 9, 12

FED. R. CIV. P. 23(e)(2)(D) ......................................................................... 9, 18

FED. R. CIV. P. 23(g) ....................................................................................... 6

## Other Authorities

William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2021) ............................ 15

William B. Rubenstein, 6 NEWBERG ON CLASS ACTIONS §§ 18:28 & 18:29 (5th ed. 2021) ............ 22

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) ...................................................... 18

# INTRODUCTION

Representative Plaintiffs[1] move for preliminary approval of the $5,000,000 settlement (the "Settlement") with Deutsche Bank AG ("Deutsche Bank"). The Settlement fully satisfies the requirements for preliminary approval: it is procedurally fair, as Representative Plaintiffs and Plaintiffs' Counsel are adequate representatives for the Settlement Class, and the Settlement itself resulted from arm's length negotiations with Deutsche Bank. The Settlement terms are substantively fair, providing relief to Class Members in exchange for resolving the Action as to Deutsche Bank. The Court may certify the Settlement Class under Rule 23(a) and (b)(3), and the notice program will fully apprise the Class of their rights and options. The Court should therefore grant this motion and enter the order filed herewith (the "Preliminary Approval Order") that:

    (a) preliminarily approves the proposed Settlement, subject to later, final approval;

    (b) conditionally certifies a Settlement Class on the claims against Deutsche Bank;

    (c) preliminarily approves the proposed Distribution Plan;

    (d) appoints Representative Plaintiffs as representatives of the Settlement Class;

    (e) appoints Lowey Dannenberg, P.C. ("Lowey") and Lovell Stewart Halebian Jacobson LLP ("Lovell") as Class Counsel;

    (f) appoints Citibank, N.A. ("Citibank") as the Escrow Agent for the Settlement;

    (g) appoints A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator;

    (h) approves the proposed forms of Class Notice and the proposed Class Notice plan;

    (i) sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement, including the date, time, and place of the Fairness Hearing; and

    (j) stays all proceedings in the Action related to Deutsche Bank except those relating to Settlement approval.

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Stipulation and Agreement of Settlement as to Deutsche Bank dated March 31, 2022 ("Settlement Agreement"), attached as Exhibit 1 to the Joint Declaration of Vincent Briganti and Christopher Lovell dated July 29, 2022 ("Joint Decl."). Unless otherwise noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted.

## <u>OVERVIEW OF THE LITIGATION</u>

*Procedural History.* On May 6, 2015, this action was filed on behalf of all persons and entities that engaged in Sterling LIBOR-Based Derivatives transactions, with Sonterra Capital Master Fund, Ltd. ("Sonterra") as a plaintiff. ECF No. 1. On July 24, 2015, Sonterra filed the First Amended Complaint ("FAC"), asserting CEA, Sherman Act, RICO, and common law claims. ECF No. 18. Defendants moved to dismiss based on lack of subject matter and personal jurisdiction, and failure to state a claim on November 13, 2015, which plaintiff opposed. ECF Nos. 65-75, 81-83. On January 21, 2016, a second complaint was filed alleging the same misconduct with named plaintiffs FrontPoint European Fund, L.P. ("FrontPoint") and Richard Dennis ("Dennis"). Complaint, *Dennis, et al. v. Barclays Bank PLC*, No. 16-cv-464 (VSB) (S.D.N.Y. Jan. 21, 2016), ECF No. 1. The Court consolidated the suits, ordered the filing of a consolidated complaint, and dismissed the motion to dismiss without prejudice. ECF No. 91.

On February 25, 2016, plaintiffs filed the consolidated complaint. ECF No. 95. On April 11, 2016, Defendants filed a motion to dismiss asserting lack of subject matter and personal jurisdiction, and failure to state a claim, which plaintiffs opposed. ECF Nos. 99-110, 114-16, 120-21. On December 21, 2018, the Court granted in part and denied in part the motion. ECF No. 191. Plaintiffs and UBS filed motions for reconsideration on January 22, 2019. ECF Nos. 196-99. FrontPoint also moved to substitute Fund Liquidation Holdings, LLC ("FLH") as its assignee. ECF Nos. 201-05. On August 16, 2019, the Court denied the substitution motion, dismissed the FrontPoint claims, and terminated the pending motions finding, *inter alia*, that FrontPoint lacked capacity to maintain the lawsuit. ECF No. 235.

On September 16, 2019, plaintiffs filed their notice of appeal and, on September 30, 2019, UBS filed its notice of cross-appeal. ECF. Nos. 237-38. On plaintiffs' motion, the Second Circuit

granted their request on December 19, 2019 to stay the appeals pending the issuance of an opinion in *FrontPoint Asian Event Driven v. Citibank, N.A.*, No. 19-2719 (2d Cir.), which stay was lifted on July 13, 2021. *Sonterra Capital Master Fund, Ltd. v. Barclays PLC*, No. 19-2979 (2d Cir.) ("*Sonterra Appeal*"), ECF Nos. 90 (Dec. 19, 2019), 111 (July 13, 2021). Plaintiffs filed their opening appellate brief on October 21, 2021. *Sonterra Appeal*, ECF No. 127-29. UBS AG and Defendants-Appellees Barclays Bank PLC, Barclays Capital Inc., Cooperative Centrale Raiffeisen-Boerenleenbank B.A., Lloyds Banking Group PLC and The Royal Bank of Scotland Group PLC ("Appellees") filed their briefs on January 20, 2022. *Sonterra Appeal*, ECF No. 146, 148. Plaintiffs filed their brief in response to UBS's opening brief and reply to Appellees' brief on April 8, 2022. *Sonterra Appeal*, ECF No. 201. UBS filed its reply to plaintiffs' response on May 20, 2022. *Sonterra Appeal*, ECF No. 215. The appeal remains pending before the Second Circuit.

*Settlement Negotiations*. Negotiations with Deutsche Bank began in approximately September 2021. Plaintiffs' Counsel and Deutsche Bank engaged in lengthy negotiations, with each side presenting their views on the merits of the case and Deutsche Bank's litigation exposure. Deutsche Bank denied any liability and maintained that it had meritorious defenses to plaintiffs' claims. Joint Decl. ¶ 11. The Parties had extensive discussion over material settlement terms, including the settlement amount, cooperation, release, and settlement termination rights, and signed a term sheet on January 3, 2022. *Id.* ¶ 12. After execution of the term sheet, plaintiffs moved to stay and sever the appeal as to Deutsche Bank only, and to remand that portion of the Action to the Court to consider the approval of the proposed Settlement. *Sonterra Appeal*, ECF No. 147 (January 20, 2022). The Second Circuit granted the motion on January 25, 2022. *Sonterra Appeal*, ECF No. 169; Joint Decl. ¶ 13. After several weeks of negotiations, the Parties executed the Settlement on March 31, 2022. *Id.* ¶ 14.

## SUMMARY OF KEY SETTLEMENT TERMS

The proposed Settlement Class under the Settlement is defined as:

> All Persons or entities that transacted in a Sterling LIBOR-Based Derivative at any time from January 1, 2005 through at least December 31, 2010 ("Class Period"), provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Joint Decl., Ex. 1 (Settlement Agreement) § 1(F). In addition to paying $5,000,000, Deutsche Bank has agreed to provide cooperation to advance the litigation, identify potential Class Members, and (if necessary) further validate the Distribution Plan. *Id.*, Ex. 1 §§ 1(LL), 4. In exchange, the Releasing Parties will release the Released Parties for the Released Claims. *Id.*, Ex. 1 § 12(A).

## ARGUMENT

### I. THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

#### A. The Preliminary Approval Standard

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("*Wal-Mart Stores*"). Rule 23 requires that courts approve settlements of class action litigation. *See In re Currency Conversion Fee Antitrust Litig.*, No. 01MDL1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006). "Preliminary approval is generally the first step in a two-step process before a class action settlement is [finally] approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). The Court may preliminarily approve and direct notice of the Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies FED. R. CIV. P. 23(e)(2) and the proposed Class may be certified. FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330

F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the Rule 23(e)(2) preliminary approval standards). A court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014); *see also Payment Card*, 330 F.R.D. at 30 n.25. This Court is empowered to approve the Settlement because it has subject matter jurisdiction over this Action. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 375 (2d Cir. 2021).

### B.     The Settlement is Procedurally Fair

To assess procedural fairness, Rule 23(e)(2) requires that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(A)-(B). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000).

### 1.     The Class Has Been Adequately Represented

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[2] requires that the "interests . . . served by the Settlement [are] compatible with" those of class members. *Wal-Mart Stores*, 396 F.3d at 110. It is met when class representatives do not have interests that are antagonistic to the class and their counsel is qualified to litigate the case. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *Wal-Mart Stores*, 396 F.3d at 106-07 (adequate representation is established "by showing an alignment of interests between class members").

---

[2] *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context.").

Representative Plaintiffs' interests are aligned with those of the Class. Dennis (directly) and FLH (through its assignors) transacted in Sterling LIBOR-Based Derivatives during the Class Period. *See* ECF No. 95 at ¶¶ 205-216. Deutsche Bank's alleged misconduct caused artificial market prices for all participants. *Id.* Thus, the interests of Representative Plaintiffs in proving liability and damages are perfectly aligned with those of the Class. *See Wal-Mart Stores*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *34 (E.D.N.Y. Oct. 15, 2014) ("Even if there was a conflict here [relating to the interests of class members that assigned recovery rights] (and there is not), it would under no conceivable circumstances be so 'fundamental'" to cause class representatives to be inadequate), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

Courts also consider the adequacy of plaintiffs' counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."); *accord* FED. R. CIV. P. 23(g). Lowey and Lovell serve as Plaintiffs' Counsel, led the prosecution of this Action, and negotiated the Settlement. Plaintiffs' Counsel's extensive antitrust and CEA class action experience on behalf of some of the nation's largest pension funds and institutional investors is strong evidence that the Settlement is procedurally fair. *See* Joint Decl., Exs. 8, 9 (firm resumes); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). That work includes achieving substantial settlements in other benchmark manipulation cases. *See, e.g., Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC)

(S.D.N.Y.), ECF Nos. 424, 498 (approving $491.5 million in settlements related to manipulation of the Euro Interbank Offered Rate ("Euribor")); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y.) ECF Nos. 720, 838, 891, 1013-14 (approving $307 million in settlements related to manipulation of Yen-LIBOR/Euroyen TIBOR). Plaintiffs' Counsel also have expertise in implementing distribution plans for complex financial instruments. Joint Decl. ¶ 38.

Moreover, in this Action, Plaintiffs' Counsel have diligently prosecuted the case by, among other things: (i) conducting a thorough pre-filing investigation of relevant facts; (ii) drafting the complaints; (iii) opposing Defendants' motion to dismiss; (iv) appealing the dismissal of the Action; (v) negotiating the proposed Settlement; and (vi) developing the proposed Distribution Plan. *See Id.* ¶¶ 36-37. Plaintiffs' Counsel's extensive experience and efforts in this litigation, provide direct evidence of their adequacy.

### 2. The Settlement is the Product of Arm's Length Negotiations

Procedural fairness is presumed where a settlement results from "arm's length negotiations between experienced and able counsel on all sides." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at *7 (E.D.N.Y. Sept. 25, 2009); *see also* FED. R. CIV. P. 23(e)(2)(B). That presumption applies here, as counsel for Representative Plaintiffs and Deutsche Bank, each with a deep understanding of the case's risks and the Settlement's benefits, negotiated the Settlement. Deutsche Bank is represented by skilled counsel from a top law firm with extensive experience in litigating antitrust and class actions. *See* Joint Decl. ¶ 24.

The Settlement process fully supports preliminary approval. *Id.* ¶¶ 11, 24, 25. The Parties had numerous communications during which each expressed its views of the Action and Deutsche Bank's potential liability, the merits of continuing litigation, and damages. *Id.* ¶ 11. At all times, Deutsche Bank argued that it was not liable for the claims asserted in the Action. *Id.* Prior to the negotiations, Plaintiffs' Counsel researched and considered a wide range of relevant legal issues,

analyzed the facts known to date, including the Court's prior decision on Defendants' motion to dismiss and government settlements involving similar conduct involving other benchmarks, and considered expert analysis about the alleged manipulation. *Id.* ¶¶ 25, 28.

Representative Plaintiffs' claims have substantial merit, but Plaintiffs' Counsel acknowledge the expense and uncertainty of continued litigation against Deutsche Bank. In recommending the Settlement, Plaintiffs' Counsel have accounted for the risks of further litigation and believe the Settlement confers significant benefits on the Settlement Class. Considering Plaintiffs' Counsel's extensive past experience in complex class action litigation, their knowledge of the strengths and weaknesses of Representative Plaintiffs' claims, and their assessment of the Settlement Class's likely recovery following trial and appeal, the Settlement is entitled to a presumption of procedural fairness. *See In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977) ("great weight" is given to advice of experienced counsel).

### C.  The Settlement is Substantively Fair

If approved, the Settlement will recover $5,000,000 for the Settlement Class, providing one of the few (if not the only) means of recovery for the alleged manipulation of Sterling LIBOR-Based Derivatives. Representative Plaintiffs successfully negotiated with Deutsche Bank that the Settlement Amount will not revert, regardless of how many Class Members submit proofs of claim. *See* Settlement Agreement § 10. Because claim rates typically fall below 100%, the non-reversion term will substantially enhance Authorized Claimants' recovery.[3]

Under Rule 23(e), substantive fairness is assessed by considering whether "the relief provided for the class is adequate," in light of "(i) the costs, risks, and delay of trial and appeal;

---

[3] *See Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2014 WL 1365462, at *2 (N.D. Cal. Apr. 7, 2014) (the lack of reversion of the net settlement is an important benefit to the class).

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under FED. R. CIV. P. 23 (e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). This District also considers the factors in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"),[4] which overlap with Rule 23(e)(2)(C)-(D). *See Payment Card*, 330 F.R.D. at 29. Both the Rule 23(e)(2)(C)-(D) and *Grinnell* factors support preliminary approval of the Settlement.

### 1. The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36. This factor "implicates several *Grinnell* factors, including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.* Relatedly, to assess whether the recovery is within the range of reasonableness, courts weigh the settlement relief against the strength of the plaintiff's case, including the likelihood of a recovery at trial. *See Grinnell*, 495 F.2d at 463. This approach "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

---

[4] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As a result, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

Representative Plaintiffs faced significant litigation risks, which were amplified by the complexity of the alleged manipulation involving Sterling LIBOR-Based Derivatives. To start, the issues in this Action are complex and expensive to litigate. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (Rakoff, J.) (recognizing the complexity of federal antitrust claims and finding that the "complex issues of fact and law related to the [transactions occurring] at different points in time" weighed in favor of preliminary approval); *Currency Conversion Fee,* 263 F.R.D. at 123 ("The complexity of Plaintiffs' claims *ipso facto* creates uncertainty."). This Action alleged manipulative and collusive conduct between and among at least six institutions over a six-year period.

If the case proceeds to discovery, the collection and analysis of years' worth of documents and data would be required to understand the impact of Defendants' alleged manipulation and develop damages models. Relevant transactional data and documents, including chat room transcripts involving industry jargon, will have to be deciphered, and Representative Plaintiffs would need to prove the significance of instant messages, trading patterns, and other facts to bolster their claims. Defendants would also undertake discovery and may introduce evidence to refute or weaken Representative Plaintiffs' evidence of market manipulation. *See In re GSE Bonds*, 414 F. Supp. 3d at 694 ("Given that … defendants contend that they can present a strong case against plaintiffs after discovery, … there is no guarantee that plaintiffs will be able to prove liability.").

Based on their experience in antitrust and benchmark litigation cases, Plaintiffs' Counsel anticipate discovery will be lengthy and costly if this Action proceeds. The duration of the case will depend in part on the time that the Defendants require to produce documents, the time required to review Defendants' and non-party productions, and the time required to use those documents to depose witnesses, conduct expert analyses, and prepare for trial. Representative Plaintiffs (and Defendants) would likely engage experts to provide econometric and industry analysis, adding to the cost and duration of the case. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"). Expert discovery would likely have led to *Daubert* motion practice, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this Action and its focus on a market that would likely be unfamiliar to the average juror, this case presents a significant level of risk and uncertainty. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015); *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("it is virtually impossible to predict with any certainty which [expert] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . .").

Class certification would raise complex legal and factual issues given the nature of the financial products and market. *See Currency Conversion Fee*, 263 F.R.D. at 123 ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty"). While Plaintiffs are confident the Court would certify a litigation class, Deutsche Bank would have vigorously opposed the motion. *See In re GSE Bonds*, 414 F. Supp. 3d at 694 (the risk of maintaining a class "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). The losing party would likely seek interlocutory review, further extending the litigation timeline. *See*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Deutsche Bank almost certainly would have pursued extensive pre-trial motions, including summary judgment and motions *in limine*. Beyond these, Representative Plaintiffs would still bear the risk of establishing liability at trial and proving actual damages. *See, e.g.*, *Bolivar v. FIT Int'l Grp. Corp.*, No. 12-cv-781, 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019). Even where the government has secured a criminal guilty plea, civil juries have found no damages. *See, e.g.*, Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07 MD 1827 (N.D. Cal. Sept. 3, 2013), ECF No. 8562. There is a substantial risk that a jury might accept Deutsche Bank's damages arguments and award nothing or less than the $5,000,000 that, if approved, would be available to the Settlement Class. Even if Representative Plaintiffs prevail at trial, "post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years if at all." *In re GSE Bonds*, 414 F. Supp. 3d at 693. Accordingly, each of these and other risks[5] weighs in favor of preliminary approval.

### 2. The Grinnell Factors Not Expressly Addressed Above Also Support Approval of the Settlement

The *Grinnell* factors not expressly encompassed in Rule 23(e)(2)(C)(i) include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

---

[5] Plaintiffs' Counsel must be wary in describing in detail its proof risks. *See In re Prudential Secs. Inc. Ltd. P'ships Litig.*, No. M-21-67 (MP), 1995 WL 798907, at *15 (S.D.N.Y. Nov. 20, 1995) (Pollack, J.) (where non-settling defendants are present, class counsel appropriately omitted detailed discussion of all risks to recovery).

litigation." *Grinnell*, 495 F.2d at 463. Each factor supports approval of the Settlement.

### a. The reaction of the Settlement Class to the Settlement

Consideration of this factor is premature before notice issues. *See In re GSE Bonds*, 414 F. Supp. 3d at 699 n.1. Nonetheless, Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction. Any Class Member who does not favor the deal can opt out. Representative Plaintiffs will address the Class's reaction in their motion for final approval.

### b. The stage of the proceedings

"[C]ourts encourage early settlement of class actions . . . because [it] allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013). The relevant inquiry is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). This does not require extensive (or any) discovery "as long as '[counsel] have engaged in sufficient investigation . . . to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *Id.*

Plaintiffs' Counsel serve as lead, co-lead counsel, or additional plaintiffs' counsel in at least seven class actions (including this one) bringing antitrust and/or CEA claims for the manipulation of global benchmark rates. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (GBD) (S.D.N.Y.) (Yen-LIBOR/ Euroyen TIBOR); *Sullivan v. Barclays plc,* No. 13-cv-2811 (PKC) (S.D.N.Y.) (Euribor); *Dennis. v. JPMorgan Chase & Co.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) (BBSW); *Fund Liquidation Holdings LLC v. Citibank, N.A.*, No.: 16-cv-05263 (AKH) (S.D.N.Y.) (SIBOR and SOR); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, No. 15-cv-871 (SHS)

(S.D.N.Y.) (Swiss franc LIBOR). Joint Decl. ¶ 26. The knowledge developed from the work in these other actions gave Plaintiffs' Counsel two distinct advantages. Plaintiffs' Counsel gained substantial information about how best to conduct their investigation—where to find and how to analyze the best trading data and evidence, which experts to engage, and what methodologies to use to estimate damages. The other cases also provided settlement benchmarks against which Plaintiffs' Counsel could compare the proposed Settlement.

The information gathered from the various sources greatly informed Plaintiffs' Counsel and Representative Plaintiffs of the advantages and disadvantages of entering into the Settlement with Deutsche Bank and weigh in favor of preliminary approval.

### c. The Ability of Deutsche Bank to withstand greater judgment

Deutsche Bank has the ability to withstand a judgment greater than the Settlement Amount, but this factor alone does not bear on the appropriateness of the Settlement. *See In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

### d. Reasonableness of the Settlement

The range of reasonableness factor weighs the settlement relief against the strength of the plaintiffs' case, including the likelihood of a recovery at trial. This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman,* 464 F.2d at 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange,"* 597 F. Supp. at 762.

The Settlement is an excellent recovery for the Class. *See PaineWebber*, 171 F.R.D. at 125 ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). In addition to providing cooperation, which adds significant value, the Settlement serves as an "ice-breaker" and may ultimately facilitate future settlements. *See In re GSE Bonds*, 414 F. Supp. 3d at 697 ("[Deutsche Bank] has offered cooperation which has added significant value to its settlement agreement. . . . DB also added 'significant value' by being a settlement 'ice-breaker,' or first party to settle, potentially helping to spur other parties to settlement.").

### 3. The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Payment Card*, 330 F.R.D. at 40. In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

Lowey consulted with experts to develop the proposed Distribution Plan. *See* Joint Decl. ¶ 37, Ex. 7. It is structured to be efficient to administer and simple for Class Members, encouraging participation. *See* William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2021) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"). This distribution method is similar to plans approved in other cases. *See, e.g.*, Plan of Distribution, *Fund Liquidation Holdings LLC v. Citibank, N.A.*, No. 16-cv-05263 (AKH) (S.D.N.Y. May 13, 2022), ECF No. 473-11; Orders Preliminarily Approving Class Action Settlements at ¶ 10, *Fund Liquidation Holdings LLC v. Citibank, N.A.*, No. 16-cv-05263 (AKH) (S.D.N.Y. June 9, 2022), ECF Nos. 509-15 (preliminarily approving plan of distribution as within the range of reasonableness, fairness, and

adequacy); Plan of Distribution, *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, No. 14-cv-7126 (S.D.N.Y. Mar. 30, 2018), ECF No. 602-1; Plan of Distribution, *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, No. 14-cv-7126 (S.D.N.Y. Sept. 28, 2018), ECF No. 681-1; Final Judgments and Orders of Dismissal at ¶ 16, *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, No. 14-cv-7126 (S.D.N.Y. June 1, 2018), ECF Nos. 648-57 (approving plan of distribution as fair, reasonable, and adequate).

To receive a portion of the Net Settlement Fund, Class Members will be required to submit a Proof of Claim and Release form ("Claim Form"), which requires a claimant to provide certain background information and readily accessible data about their Sterling LIBOR-Based Derivatives transactions, including the transaction type, trade date, applicable Sterling LIBOR rate, and notional (face) value of the transaction. *See* Joint Decl., Ex. 6. This information is comparable to the information requested in other benchmark litigation cases.[6]

Substantively, the Distribution Plan allocates the Net Settlement Fund *pro rata* to Authorized Claimants based on an estimate of the impact of Defendants' alleged manipulation on Sterling LIBOR-Based Derivatives. *Id.* In particular, it calculates for each Sterling LIBOR-Based Derivatives transaction a "Transaction Notional Amount," a score that reflects the interest rate impact of the alleged manipulation on Sterling LIBOR-Based Derivatives. If all other factors are held constant, claimants with a higher trading volume can expect a proportionally higher Transaction Notional Amount. Sterling LIBOR-Based Derivatives transactions that include multiple interest payments based on the notional value of the transaction (*e.g.*, interest rate swaps) will have higher Transaction Notional Amounts than Sterling LIBOR-Based Derivatives transactions that have the same notional value but are based on fewer interest payments. An

---

[6] *See* Proof of Claim and Release Form, *Fund Liquidation Holdings LLC v. Citibank, N.A.*, No. 16-cv-05263 (S.D.N.Y.), ECF No. 499-4.

Authorized Claimant's Transaction Notional Amounts for all of its eligible Sterling LIBOR-Based Derivatives transactions will be summed together (the "Transaction Claim Amount") and divided by the sum of all calculated Transaction Claim Amounts to determine the Authorized Claimant's *pro rata* fraction of the Net Settlement Fund.

Authorized Claimants whose expected distribution based on their *pro rata* fraction is less than the costs of administering the claim will receive a Minimum Payment Amount, to be determined after the Claim Forms are reviewed, calibrated to ensure that a minimal portion of the Net Settlement Fund is reallocated towards these payments. Any claims payments that go uncollected after a set time period will be reallocated to Authorized Claimants who have cashed their payments. Hence, the Distribution Plan is a fair and adequate allocation of the Net Settlement Fund that ensures that the Settlement does not favor or disfavor any Class Members, create any limitations, or exclude from payment any persons or groups within the Settlement Class.

### 4. The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief

Plaintiffs' Counsel will limit their attorneys' fee request to no more than one-third of the Settlement Amount ($1.67 million) net of Plaintiffs' Counsel's litigation expenses, which may be paid upon final approval. Joint Decl., Ex. 4, at 18. This request is comparable to the fees awarded in other cases of similar size and complexity. *See, e.g.*, Order Awarding Attorneys' Fees at 2, *In re JPMorgan Treasury Futures Spoofing Litig.*, 20-cv-3515 (PAE) (S.D.N.Y. June 3, 2022), ECF No. 96 (approving attorneys' fees of one-third of $15.7 million settlement); Order Awarding Attorneys' Fees at 2, *Bouchard, et al. v. Gandhi, et al.*, 18-cv-7041 (JJT) (N.D. Ill. Jul. 30, 2021), ECF No. 154 (approving attorneys' fees of 33% of $15 million settlement); *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (approving attorneys' fees of 33.3% of $11.5 million settlement fund); *see also Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM,

2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." (collecting cases)). In addition to attorneys' fees, Plaintiffs' Counsel will seek payment for litigation costs and expenses not to exceed $600,000. Joint Decl., Ex. 4, at 18. Plaintiffs' Counsel will separately file their Fee and Expense Application seeking approval of the requested awards and will promptly post it on the Settlement website for Class Members to review prior to the objection deadline.

### 5. There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Settlement Agreement identifies the Supplemental Agreement, which provides Deutsche Bank a qualified right to terminate the agreement under certain circumstances before final approval. Joint Decl., ¶ 18; Ex. 1 § 23. This agreement is common in class action settlements and does not impact the Settlement's fairness.[7]

### 6. The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences

The Settlement also "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Fund among Authorized Claimants. *See, e.g., Payment Card*, 330 F.R.D. at 47 (finding that "pro rata distribution scheme is sufficiently equitable"). All Class Members would release Deutsche Bank for claims based on the same factual predicate of this Action. Where class members have received notice of the effect of the settlement and judgment, courts have enforced the bar on prosecuting released claims that were based on the identical factual predicate and where class

---

[7] *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02CV1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-2330, 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest,"); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004).

members were adequately represented. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800 (8th Cir. 2004) (affirming injunction against prosecution of claim released by a related class action); *Wal-Mart Stores*, 396 F.3d at 112-13 (adopting the analysis of *In re Gen. Am. Life*).

Because the Settlement's releases and the Distribution Plan do not include any improper intra-class preferences or prejudice, the Court should find that the Settlement satisfies this factor.

## II.     THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

The proposed Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). Accordingly, the Court should conditionally certify the Settlement Class.[8]

### A.     The Settlement Class meets the Rule 23(a) requirements.

#### 1.     Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). Joinder need not be impossible, only "merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009). There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class definition based on any analysis of transaction volumes during the Class Period. *See* Joint Decl. ¶ 19. Joinder of all of these individuals and entities would be impracticable.

#### 2.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This is a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995). Commonality requires only a single

---

[8] Deutsche Bank consent to certification of the Settlement Class solely for the purpose of the Settlement and without prejudice to any position it may take with respect to class certification in any other action or in the event that the Settlement is terminated. Settlement Agreement § 22(E).

question common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

This case involves numerous common questions of law and fact. Liability and impact questions that Representative Plaintiffs and Class Members have to answer through the same body of common class-wide proof include, among others: (i) whether Defendants and their co-conspirators engaged in a combination or conspiracy to manipulate Sterling LIBOR, and the prices of Sterling LIBOR-Based Derivatives in violation of the Sherman Act, RICO and common law; (ii) what constitutes a false or manipulative submission by a Sterling LIBOR contributor panel bank; (iii) which Defendants conspired to manipulate Sterling LIBOR during which period(s); and (iv) what would the non-manipulated Sterling LIBOR rate have been in the "but-for" world for each day of the Class Period? These common questions involve dozens of sub-questions of fact and law that are also common to all members of the Settlement Class.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This standard is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.").

Courts generally find typicality in cases alleging manipulative conduct that affects all class members in the same fashion. *See, e.g.*, *In re GSE Bonds*, 414 F. Supp. 3d at 700-01 ("typicality is met when plaintiffs allege an antitrust price-fixing conspiracy because Plaintiffs must prove a conspiracy, its effectuation, and damages therefrom--precisely what the absent class members

must prove to recover."); *accord Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011 (N.D. Ill. 2020). Given that the alleged manipulation was marketwide, Representative Plaintiffs' claims are typical of the Class Members' claims for certification purposes.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). As discussed in Argument I.B.1. above, there are no conflicts between Representative Plaintiffs and Class Members, and Representative Plaintiffs' interest in proving liability and damages wholly aligns with the Settlement Class' interest. Further, Plaintiffs' Counsel are highly experienced in complex class action antitrust litigation and are adequate class counsel. Accordingly, the requirements of both Rule 23(a)(4) and Rule 23(g) are satisfied.

### B. The proposed Settlement Class satisfies Rule 23(b)(3).

Rule 23(b)(3) certification is proper where the action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). To satisfy Rule 23(b)(3), Plaintiffs must establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Both prongs are satisfied.

### 1. Predominance

"If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs.,* 2014 WL 7882100, at *35. To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject

to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483 (ellipses in original).

Predominance can be established in antitrust cases because the elements of the claims lend themselves to common proof. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); William B. Rubenstein, 6 NEWBERG ON CLASS ACTIONS §§ 18:28 & 18:29 (5th ed. 2021) (noting that allegations of antitrust conspiracies generally establish predominance of common questions). Additionally, the "predominance inquiry will sometimes be easier to satisfy in the settlement context." *In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 229, 240 (2d Cir. 2012). Unlike class certification for litigation purposes, a settlement class presents no management difficulties for the court as settlement, not trial, is proposed. *Amchem*, 521 U.S. at 620; *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996) ("*NASDAQ I*") (predominance is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").

If the claims against Deutsche Bank had not been settled, common questions would have predominated over individual questions. Representative Plaintiffs and the Class would address the same questions regarding allegations of conspiracy, unlawful manipulation of the Sterling LIBOR and the prices of Sterling LIBOR-Based Derivatives, and the damages caused by such alleged manipulation. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of . . . a price-fixing conspiracy are susceptible to common proof"); *In re GSE Bonds*, 414 F. Supp. 3d at 701-02 ("whether a price-fixing conspiracy exists is the central question in this case, outweighing any questions that might be particular to individual plaintiffs").

## 2. Superiority

Rule 23(b)(3)'s "superiority" requirement obliges a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Court balances the advantages of class action treatment against alternative available methods of adjudication. *See* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement is applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

A class action is the superior method for the fair and efficient adjudication and settlement of this Action. *First*, Class Members are numerous and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004). *Second*, the majority of Class Members have neither the incentive nor the means to litigate these claims. The damages most Class Members suffered are likely to be small compared to the very considerable expense and burden of individual litigation. A class action allows claimants to "pool claims which would be uneconomical to litigate individually." *Currency Conversion*, 224 F.R.D. at 566. "Under such circumstances, a class action is efficient and serves the interest of justice." *d Third*, the prosecution of separate actions by hundreds (or thousands) of individual Class Members would impose heavy burdens upon the Court. It would also create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class. Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of conditional certification.

## III.     THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR

Due process and Rule 23 require that the Class receive adequate notice of the Settlement. *Wal-Mart Stores*, 396 F.3d at 114. To be adequate, the method(s) used to issue notice must be reasonable. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983).

The proposed Class Notice plan and related forms of notice (see Joint Decl. Exs. 2, 4-5) are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The direct-mailing notice component of the notice program will involve sending the Post Card Notice (Joint Decl. Ex. 3) via First-Class Mail, postage prepaid to potential Class Members. *See id.* Ex. 2 (Declaration of Linda V. Young). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane*, 339 U.S. at 319. The Long-Form Notice and Proof of Claim Form (Joint Decl. Exs. 4, 6) will be available on the Settlement Website for Class Members to review and download. The Settlement Administrator also will publish the Short-Form Notice in various periodicals, industry publications, and through a digital campaign on websites. *See* Joint Decl. Ex. 5. Any Class Members that do not receive the Class Notice via direct mail likely will receive the Class Notice through the foregoing publications or word of mouth. The Settlement Website, www.sterlingliborsettlement.com, will serve as an information source regarding the Settlement, including the notices, Settlement Agreement, key pleadings, and Court orders. The Settlement Administrator will also operate a toll-free telephone number to provide assistance.

Plaintiffs' Counsel recommend that A.B. Data be appointed as Settlement Administrator. A.B. Data developed the Class Notice plan with Plaintiffs' Counsel and has experience in

administering settlements involving complex financial instrument.[9]

## IV. THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT.

Plaintiffs' Counsel, with Deutsche Bank's consent, designate Citibank to serve as Escrow Agent to maintain the Settlement Fund. Citibank has served as escrow agent in numerous settlements, including *Fund Liquidation Holdings LLC v. Citibank, N.A.*, No. 16-cv-05263 (AKH) (S.D.N.Y.), and will provide its services at market rates.

## V. PROPOSED SCHEDULE OF EVENTS

In Appendix A, Representative Plaintiffs propose a schedule for issuance of Class Notice, objection and opt-out opportunities for Class Members, and the motions for final approval, attorneys' fees, and expense reimbursements. If the Court agrees, Representative Plaintiffs request that the Court schedule the Fairness Hearing for a date two hundred twenty-five (225) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that would require scheduling by the Court is the date for the Fairness Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the Fairness Hearing date.

## <u>CONCLUSION</u>

For the foregoing reasons, Representative Plaintiffs respectfully request that the Court grant Representative Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with Deutsche Bank AG and enter the accompanying Preliminary Approval Order.

---

[9] *See, e.g.*, *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.) (NRB); *Sullivan v. Barclays plc,* No. 13-cv-2811 (S.D.N.Y.) (PKC); *In re GSE Bonds Antitrust Litig.*, 19-cv-1704 (S.D.N.Y.) (JSR).

Dated: July 29, 2022

Respectfully submitted,

LOWEY DANNENBERG, P.C.                    LOVELL STEWART HALEBIAN
                                          JACOBSON LLP

_____/s/ Vincent Briganti_____        _____/s/ Christopher Lovell_____
Vincent Briganti                          Christopher Lovell
Geoffrey Horn                             Victor E. Stewart
44 South Broadway                         Benjamin M. Jaccarino
White Plains, NY 10601                    500 Fifth Avenue, Suite 2440
Tel.: (914) 997-0500                      New York, NY 10110
Fax: (914) 997-0035                       Tel.: (212) 608-1900
E-mail: vbriganti@lowey.com               Fax: (646) 398-8392
E-mail: ghorn@lowey.com                   E-mail: clovell@lshllp.com
                                          E-mail: vstewart@lshllp.com
                                          E-mail: bjaccarino@lshllp.com

*Counsel for Representative Plaintiffs and the Proposed Class*

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline to begin mailing of Class Notice to Class Members and post the Notice and Claim Form on the Settlement Website | 90 days after entry of the Preliminary Approval Order ("PAO") |
| Substantial completion of initial distribution of mailed notices | 150 days after entry of the PAO |
| Deadline for Representative Plaintiffs to file papers in support of final approval and application for fees and expenses | 50 days prior to the Fairness Hearing |
| Deadline for requesting exclusion and submitting objections | 35 days prior to the Fairness Hearing |
| Deadline for filing reply papers | 7 days prior to the Fairness Hearing |
| Fairness Hearing | 225 days after the Preliminary Approval Order |
| Deadline for submitting Claim Forms | 60 days after the Fairness Hearing |