| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., RICHARD DENNIS, and FRONTPOINT EUROPEAN FUND, L.P., on behalf of themselves and all others similarly situated, | Docket No. 15-cv-3538 (VSB) |
| Plaintiffs, | |
| -against- | |
| BARCLAYS BANK PLC, COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., DEUTSCHE BANK AG, LLOYDS BANKING GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, UBS AG, JOHN DOE NOS. 1-50, and BARCLAYS CAPITAL, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION................................................................................................................1

ARGUMENT......................................................................................................................3

   I.     PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE.........3

        A.    The Risks Faced by Plaintiffs' Counsel in this Complex Action Support
            the Requested Fee ..................................................................................................4

        B.    The Time and Labor Expended by Plaintiffs' Counsel Support the
            Requested Fee........................................................................................................9

            1.   Plaintiffs' Counsel's Initial Investigation and Drafting of Complaints......9

            2.   Plaintiffs' Counsel Prosecution of the Appeal.......................................12

            3.   Settlement Negotiations Between Plaintiffs and Deutsche Bank ...........13

        C.    Quality of the Representation.....................................................................14

        D.    The Fee Request is Supported by the Remaining Goldberg Factors.............16

            1.   Plaintiffs' Counsel's Request is Within the Range Used Under the
                Second Circuit's Preferred Percentage-Based Methodology ..................16

            2.   Public Policy Supports Approval...........................................................18

        E.    The Lodestar Value of Plaintiffs' Counsel's Time and Labor Confirms
            the Reasonableness of the Fee Request.....................................................19

   II.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE..........................22

CONCLUSION.................................................................................................................23

**Cases**                                                                                                                                **Page(s)**

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ........................................................................... 5

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013), 293 F.R.D. ................................................... 23

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................ 3

*Cange v. Stotler & Co., Inc.*,
  826 F.2d 581 (7th Cir. 1987) ............................................................................ 19

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................................... 7

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............... 5, 9, 22

*Dennis v. JPMorgan Chase & Co.*,
  No. 16-cv-6496 (LAK), 2023 WL 3646801 (S.D.N.Y. May 25, 2023) ................................. 20

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021) ........................................................................ 13, 14

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016) ............................................................................... 6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...................................................................... 3, 4, 15, 19, 20

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15 Civ. 07192 (CM), 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................ 22

*Hall v. Children's Place Retail Stores Inc.*,
  669 F. Supp. 2d 399 (S.D.N.Y. 2009) ............................................................... 17

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
  No. 12 Civ. 5575 (SWK), MDL 1500, 2006 WL 3057232 (S.D.N.Y. Oct. 26, 2006) ............. 4

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95 CV 3431 (ARR), 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ........................... 22

*In re Beacon Assocs. Litig.*,
09-cv-3907 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013) .......................................... 16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 21

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005) ..................................................................... 4

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013) ................................................................. 4, 7

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................... 18, 19, 20

*In re Credit Default Swaps Antitrust Litig.*,
13-md-2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ................................. 3, 23

*In re Deutsche Bank AG Sec. Litig.*,
No. 1:09-cv-01714 (GHW), 2020 WL 3162980 (S.D.N.Y. June 11, 2020) .......................... 17

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MC-2543 (JMF), 2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) .............................. 16

*In re GSE Bonds Antitrust Litig.*,
No. 19-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) .............................. 8, 21

*In re Holocaust Victim Assets Litig.*,
No. CV 06-0983 (FB)(JO), 2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) .............................. 8

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-cv-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .......................... 17, 23

*In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*,
No. 14-md-02542 (VSB), 2021 WL 2328431 (S.D.N.Y June 7, 2021) ............................... 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................... 6

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................... 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 7, 8, 16, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................... 4

*In re Platinum & Palladium Commodities Litig.,*
    No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ....................... 4, 7, 9

*In re Remeron Direct Purchaser Antitrust Litig.,*
    No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................ 5

*In re Sumitomo Copper Litig.,*
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................. 17

*In re Vitamin C Antitrust Litig.,*
    No. 06-md-1738 (BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .......................... 9

*Jermyn v. Best Buy Stores, L.P.,*
    No. 08 Civ. 214 (CM), 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ................... 22

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998) .............................................................................. 20

*Leist v. Simplot,*
    638 F.2d 283 (2d Cir. 1980) .............................................................................. 19

*Maley v. Del Glob. Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................7, 16, 22

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..............................................4, 9, 16, 22

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
    456 U.S. 353 (1982) .......................................................................................... 19

*Micholle v. Ophthotech Corporation et al.,*
    1:17-cv-00210 (VSB)(GWG), 2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022) ..................... 17

*Missouri v. Jenkins by Agyei,*
    491 U.S. 274 (1989) .......................................................................................... 20

*Pillsbury Co. v. Conboy,*
    459 U.S. 248 (1983) .......................................................................................... 19

*Solis v. Orthonet LLC,*
    No. 1:19-cv-04678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021) ........................... 17

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................... 17

*Tellabs Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ................................................................................................ 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................ 3, 16

**Other Authorities**

Center for Litigation and Courts and The Huntington National Bank, *2021 Antitrust Annual Report: Class Actions in Federal Court* (April 2022) ........................................... 18

Joshua P. Davis & Robert H. Lande, *Toward an Empirical and Theoretical Assessment of Private Antitrust Enforcement,*
    36 SEATTLE U.L. REV. 1269 (2013) ....................................................................... 18

Theodore Eisenberg *et al., Attorneys' Fees in Class Actions: 2009-2013,*
    92 N.Y.U. L. REV. 937 (2017) ............................................................................... 18

Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases,*
    42 U.S.F. L. REV. 879 (July 2008) ......................................................................... 18

Pursuant to this Court's opinion and order preliminarily approving the class action settlement (the "Settlement") in this Action (ECF Nos. 266, 268) (the "Preliminary Approval Orders") and Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs' Counsel[1] respectfully submits this memorandum in support of their motion for (1) an attorneys' fees award of one-third of the $5,000,000 common fund created by Representative Plaintiffs'[2] Settlement with Defendant Deutsche Bank AG ("Deutsche Bank") ($1,666,666.66), and (2) reimbursement of litigation expenses totaling $375,536.24, plus interest on both awards accrued at the same rate as the Settlement Fund.

## INTRODUCTION

The proposed Settlement with Deutsche Bank marks a significant milestone in this Action. After eight years of taxing, hard-fought, complex litigation against six of the world's largest financial institutions over the alleged manipulation and conspiracy to manipulate Sterling LIBOR and the prices of Sterling LIBOR-Based Derivatives, this first settlement serves as a strategic "ice-breaker," providing valuable layered benefits to the Settlement Class. In the near-term, the $5,000,000 Settlement provides tangible relief to eligible Class Members who invested in an artificial Sterling LIBOR-Based Derivatives market and were harmed by Defendants' alleged misconduct. Such relief is enhanced by virtue that, as an "ice-breaker," it may facilitate additional settlements with the remaining non-settling Defendants. Moreover, the Deutsche Bank Settlement provides Representative Plaintiffs and Plaintiffs' Counsel access to valuable cooperation materials that may be used to prosecute the Action and increase the total recovery if the Second Circuit decides the pending appeal in Representative Plaintiffs' favor.

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as in the Settlement Agreement. ECF No. 262-1.

[2] "Representative Plaintiffs" or "Plaintiffs" are Richard Dennis and Fund Liquidation Holdings, LLC ("FLH").

This Settlement and the benefits flowing from it are the direct result of Plaintiffs' Counsel's preparation and execution of an effective litigation strategy and the investment of more than 8,000 hours to date. They investigated the underlying facts, developed comprehensive complaints, defended those allegations from vigorous attacks by Defendants, and undertook difficult negotiations with Deutsche Bank to achieve a settlement that is fair, reasonable and adequate. Plaintiffs' Counsel's work is still ongoing, as they pursue an appeal against the non-settling Defendants and stand ready to continue their prosecution of the Class's claims under the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, the Clayton Antitrust Act, 15 U.S.C. §§ 15-16, *et seq.* the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and common law. Their work to date and their continued advocacy on behalf of Representative Plaintiffs and the Settlement Class amply justify awarding Plaintiffs' Counsel a significant attorneys' fee award.

As described below, the risks involved in litigating an action of this complexity and magnitude, combined with the time and labor invested in prosecuting this case and the quality of that prosecution, support awarding the requested one-third fee. *See* Part I.A-C, *infra*. The remaining *Goldberger* factors, the size of the fee in relation to the Settlement and public policy considerations, along with the lodestar cross-check also favor awarding the fee request. *See* Part I.D-E, *infra*.

Plaintiffs' Counsel also seek $375,536.24 for out-of-pocket litigation costs incurred from the initial investigation and commencement of this Action through present. *See* Part II, *infra*. These expenses, described in the accompanying declarations of Vincent Briganti ("Briganti Fee Decl.") and Benjamin M. Jaccarino ("Jaccarino Fee Decl."), were incurred for the Class's benefit and predominantly related to work with experts in assessing the potential damages, developing a fair

and reasonable Distribution Plan, and engaging appellate counsel. Such costs were necessary and reasonable and should be reimbursed.

## ARGUMENT

## I. PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Credit Default Swaps Antitrust Litig.* ("*CDS Litig.*"), No. 13-md-2476 (DLC), 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016). Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method;" the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). Courts assess the reasonableness of the fee request based on six factors: "the risk of the litigation [ ];" "the magnitude and complexities of the litigation;" "the time and labor expended by counsel;" "the quality of representation;" "the requested fee in relation to the settlement;" and "public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

In this case, Plaintiffs' Counsel's attorneys' fee request of one-third of the $5,000,000 Settlement Fund, or $1,666,666.66, satisfies each of these factors. As further discussed below, Plaintiffs' Counsel confronted substantial risks to prosecute this Action, including the risk of prosecuting this large and complex matter without the additional assistance of any supporting firms. Plaintiffs' Counsel invested considerable time and labor to prosecute the Action, and much of that work will remain uncompensated even after any fee award is granted on this motion. By all reasonable measures, Plaintiffs' Counsel provided excellent representation as reflected in the result of the Settlement. When compared to fees granted in other similar cases, Plaintiffs' Counsel's request is reasonable and is also consistent with the public policy interest in encouraging attorneys

to pursue such actions. Finally, the lodestar cross-check confirms that the requested fee is reasonable in relation to Plaintiffs' Counsel's investment in the case, as the cross-check here results in a negative multiplier.

### A. The Risks Faced by Plaintiffs' Counsel in this Complex Action Support the Requested Fee

The litigation risk is the foremost *Goldberger* factor. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014); *see also In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. 12 Civ. 5575 (SWK), MDL 1500, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 26, 2006) (the judiciary's focus is on "fashioning a fee" that encourages lawyers to "undertake future risks for the public good"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (the risk of the litigation is the "first, and most important, *Goldberger* factor"); *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."). The risk of undertaking litigation is "measured as of when the case is filed." *Goldberger*, 209 F.3d at 55.

If an action is large, complex, and coupled with significant litigation risks, a greater fee award is warranted. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("the magnitude and complexity of the litigation also weigh in favor of a significant award"). Large, complex cases require a greater level of investment by counsel of effort, expertise, and resources to competently litigate the claims and issues at stake on behalf of the class. Class actions involving antitrust and commodities claims stand out as some of the most "complex, protracted, and bitterly fought." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) (commodities cases are "complex and expensive" to litigate).

Consequently, Plaintiffs' Counsel decision to undertake this litigation on a fully contingent basis and advance considerable time, money and resources without any guarantee of recouping that investment represented just the first of many risks to litigating the Action. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *14 (D.N.J. Nov. 9, 2005), *judgment entered,* No. 03-cv-0085 (FSH), 2005 WL 8181042 (D.N.J. Nov. 9, 2005) (identifying "the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by plaintiffs, and the fact that the risk of failure and nonpayment in an antitrust case are extremely high" as risks in an antitrust class action.). The other risks borne by Plaintiffs' Counsel in prosecuting the Action arose from various sources due to the complex legal issues at play, and included:

**Risk of Personal Jurisdiction Defense**: From the outset of litigation, the assertion of a personal jurisdiction defense by the Foreign Defendants[3] posed an immediate and substantial risk to the prosecution of the claims against them. This risk materialized after Deutsche Bank and the other Foreign Defendants made several arguments that both the First Amended Class Action Complaint ("FAC") (relating solely to the action brought in the name of Sonterra Capital Master Fund, Ltd. ("Sonterra")) and the Consolidated Class Action Complaint ("CAC") should be dismissed for a lack of personal jurisdiction, including that: (i) the Foreign Defendants did not

---

[3] The Foreign Defendants are Deutsche Bank, Barclays Bank plc ("Barclays Bank"), Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank"), Lloyds Banking Group plc ("Lloyds"), The Royal Bank of Scotland plc ("RBS"), and UBS AG ("UBS").

consent to general jurisdiction in New York or the United States by registering to do business in the state; (ii) Foreign Defendants are not subject to specific jurisdiction because there were no suit related contacts in the United States; and (iii) no Federal statute provides for personal jurisdiction. *See* ECF Nos. 65, 99. While the Court dismissed many of the claims against them on other grounds, the Court held that the Foreign Defendants did not consent to jurisdiction by virtue of registering branches in the United States. ECF No. 191 at 56-58.

**Risk of Pleading and Merits Defenses**: At the outset of this Action, it was unclear whether a private right of action was available under antitrust laws for the alleged misconduct. The risk of dismissal of private antitrust claims was realized in other cases shortly before filing this Action. *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 688 (S.D.N.Y. 2013) ("*LIBOR I*"). Plaintiffs' antitrust claims survived here because the Second Circuit's decision in *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 771-75 (2d Cir. 2016), vacated the prior consensus that private plaintiffs did not have antitrust claims for benchmark rate manipulation. *See* ECF No. 191 at 14, 26-32. When *Gelboim* was decided, Plaintiffs' Counsel had already been prosecuting these claims in high-risk conditions for over a year. *Gelboim* did not, however, mitigate other risks and asserted defenses, including challenges to Plaintiffs' Article III standing, the timeliness and adequacy of the claims pled, and the inherent difficulty of litigating against some of the world's largest financial institutions with the financial resources and ability to prolong this case for years.

**Risk of Certifying a Class and Establishing Liability**: Assuming Plaintiffs prevail on appeal, Plaintiffs would still face enormous challenges in certifying a litigation class and establishing liability. These antitrust and CEA claims involving both domestic and foreign misconduct are inherently complex. At class certification, Plaintiffs' Counsel would have to demonstrate, supported by expert testimony, that Defendants' alleged manipulation of the Sterling

LIBOR-Based Derivatives market caused class wide impact, an argument Defendants would vigorously oppose with expert testimony of their own. Plaintiffs' Counsel would need to establish Defendants' liability using evidence that in part relies on technical financial language and industry jargon with which a factfinder is likely unfamiliar. Such information would also need to be used to establish common impact and show that class wide damages could be calculated based on common proof. The risks associated with certifying a class and establishing liability independently satisfy this *Goldberger* factor.

**Risk of Establishing Damages**: Deutsche Bank would have argued that it was not liable for any of the damages that Plaintiffs allege. In addition, there are risks associated with establishing a class wide damages model. *See In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 ("[I]n any market manipulation or antitrust case, [p]laintiffs face significant challenges in establishing liability and damages."). While Plaintiffs' Counsel is confident in its position that class wide damages could be determined with the assistance of experts, there is always uncertainty where a battle of experts is involved. *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (noting the complexities of calculating damages in class actions); *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (citing *Chatelain* and stating the complex issue of calculating damages incurred by the Class requires a battle of the experts). Given the risks involved with establishing damages, the requested attorneys' fee is appropriate.

**Risks Due to the Size and Complexity of the Claims**: A greater fee award is warranted for counsel prosecuting complex class action cases. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d at 379; *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477

(S.D.N.Y. 1998) ("*NASDAQ III*") ("[C]lass actions have a well-deserved reputation as being most complex").

This case involves an alleged conspiracy among six banks, members of the panel whose daily interest rate submissions set the Sterling LIBOR rate during the putative Class Period (from January 1, 2005 through December 31, 2010). Trillions of dollars of Sterling LIBOR-Based Derivatives were traded within the United States during the Class Period and, during that time, Defendants allegedly coordinated their daily Sterling LIBOR submissions and manipulative trading practices to fix the prices of Sterling LIBOR-Based Derivatives for their financial benefit. *See* CAC ¶¶ 1, 95. The amount of work required to understand the inner workings of a cartel with this level of sophistication and number of participants was extraordinary and required Plaintiffs' Counsel to master the properties of complex financial instruments and markets. *See In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020) (finding "complexity [is] present [where] plaintiffs claimed that the defendants colluded in the GSE Bond market over more than seven years, involving thousands of bond issuances, and implicating sixteen defendants"); *In re Holocaust Victim Assets Litig.*, No. CV 06-0983 (FB)(JO), 2007 WL 805768, at *46 (E.D.N.Y. Mar. 15, 2007), *report and recommendation adopted,* 528 F. Supp. 2d 109 (E.D.N.Y. 2007), *as amended* (Dec. 14, 2007).

So far, this litigation is at the pleading stage and has generated more than 270 district court docket entries, including filings related to amended complaints, motions to dismiss, motions for reconsideration, notices of appeal and the Deutsche Bank settlement. The appeals of the Court's December 2018 Order further expanded the cost and duration of the Action. Should the Second Circuit remand the case for further proceedings, the magnitude and duration of the Action will only increase. The nature, duration, size of the case, complexity of the financial instruments, and

sophistication and the depth of the conspiracy weigh heavily in favor of approving the requested fee. *See In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (BMC)(JO), 2012 WL 5289514, at *4,10 (E.D.N.Y. Oct. 23, 2012) (*Goldberger* factors favored granting the requested fee where litigation was ongoing for seven years, involved the production of thousands of documents, expert discovery and extensive motion practice); *accord Meredith Corp.*, 87 F. Supp. 3d at 670; *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655 at *12. Plaintiffs' Counsel took this case on a fully contingent basis and invested considerable time, money, and resources to advance the Action. *See City of Providence*, 2014 WL 1883494, at *14 ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."). The likelihood of success would have been low absent Plaintiffs' Counsel's willingness and ability to commit sufficient time and resources to address the complexity and magnitude of the Action.

### B. The Time and Labor Expended by Plaintiffs' Counsel Support the Requested Fee

This Settlement is the product of the continued investigation, diligence and skill of Plaintiffs' Counsel, who are among the most experienced attorneys litigating benchmark rate manipulation cases. They shouldered the risk of the litigating this Action and, through their work, obtained an outstanding result for Plaintiffs and the Class.

#### 1. Plaintiffs' Counsel's Initial Investigation and Drafting of Complaints

Plaintiffs' Counsel assembled a team of attorneys and other resources to assess the potential impact of the alleged manipulation on the Sterling LIBOR-Based Derivatives market following public disclosure of settlements involving Defendants and the U.S. Commodity Futures Trading Commission, U.S. Department of Justice, and the U.K. Financial Services Authority relating to the alleged manipulation of Sterling LIBOR, the prices of Sterling LIBOR-Based Derivatives, and

other benchmark rates. Joint Declaration of Vincent Briganti and Christopher Lovell dated October 5, 2023 ("October 2023 Joint Decl.") ¶ 12. Utilizing their experience litigating other benchmark rate manipulation cases, Plaintiffs' Counsel identified the relevant sources of market data and information on Sterling LIBOR, the composition of the Sterling LIBOR panel and the structure of the Sterling LIBOR-Based Derivatives market to understand the potential size and scope of Defendants' alleged misconduct. *Id.* ¶ 13. They studied the regulatory disclosures and contacted clients to assess who and which transactions may have been impacted by price artificiality in the market. *Id.* ¶¶ 14-15. Plaintiffs' Counsel reviewed transcripts of and, in some cases, observed or hired investigators to observe and report on United Kingdom trials involving Defendants and/or current and former employees of Defendants alleged to have manipulated financial benchmark rates. *Id.* ¶¶ 17, 18. Their attorneys and investigators were able to quickly assess the proffered evidence and testimony for new areas of investigation. *Id.* ¶ 17.

Plaintiffs' Counsel also analyzed the current state of the law, including in many of the cases which they litigated, to understand the strengths and weaknesses of pursuing this Action. *Id.* ¶ 14. Based on their investigation and their experience, Plaintiffs' Counsel developed and implemented a litigation strategy intended to maximize the Class's recovery.

Plaintiffs' Counsel routinely consulted with a range of experts to, among other things, evaluate the size of the Sterling LIBOR-Based Derivatives market. *Id.* ¶ 19. Plaintiffs' Counsel or their experts gathered publicly available Sterling LIBOR-Based Derivatives trading volume data from various sources, including Reuters, the Federal Reserve Bank of New York's U.S. based market surveys, and Bank for International Settlements ("BIS") Triennial Surveys, one of the most significant sources of information on the size and structure of global foreign exchange and OTC derivative markets commonly used by economics experts to estimate market size and class-wide

impact arising from interest rate manipulations. *Id.* This information was analyzed to determine the size of the affected market, controlling for factors including the volume of interdealer market transactions, the time to maturity for instruments, and the issue of data completeness.

Using all of this and other information, Plaintiffs' Counsel drafted and filed the initial Class Action Complaint on May 6, 2015 on behalf of FLH (in Sonterra's name) alleging antitrust, CEA, RICO, and common law violations against Barclays Bank, Rabobank, Deutsche Bank, Lloyds, RBS, and UBS. *Id.* ¶ 20. Based on additional information they developed, Plaintiffs' Counsel then filed the FAC on July 24, 2015, adding Defendant Barclays Capital, Inc. (together with Barclays Bank plc, "Barclays"). *Id.* ¶ 21.

Defendants moved to dismiss the FAC on November 13, 2015, filing two briefs totaling 75 pages and eight declarations in which they asserted that the Court lacked subject matter jurisdiction and personal jurisdiction over certain Defendants, and Plaintiffs failed to state any claim. *Id.* Plaintiffs' Counsel immediately began to research and prepare Plaintiffs' counterarguments and on January 13, 2016, they filed two briefs in opposition to Defendants' motion totaling 74 pages and a declaration containing 857 pages of exhibits. *Id.*

Plaintiffs' Counsel also filed a separate case on January 21, 2016 on behalf of plaintiffs Richard Dennis ("Dennis") and FLH in the name of FrontPoint European Fund, L.P. ("FrontPoint"). *Id.* ¶ 22. After the Court consolidated the cases, it dismissed the pending motion to dismiss without prejudice to refile after the consolidated complaint was filed. *Id.*. On February 25, 2016, Plaintiffs' Counsel prepared and filed the CAC, which similarly asserted claims under the CEA, Sherman Act, RICO, and common law. *Id.* ¶ 23.

Following the filing of the CAC, Defendants filed a new motion to dismiss on April 11, 2016. *Id.* ¶ 26. Once again asserting a lack of subject matter jurisdiction, lack of personal

jurisdiction, and a failure to state a claim, Defendants submitted two briefs totaling 85 pages and 9 declarations containing 46 pages of exhibits in support of their motion. *Id*. In response, Plaintiffs' Counsel researched, drafted, and filed two briefs totaling 85 pages and a declaration containing 1138 pages of exhibits in support of Plaintiffs' opposition. *Id*.

Over the next two and a half years, Plaintiffs' Counsel continued its legal research and investigation into the novel issues raised in this Action by reviewing any decisions that had any bearing on the issues in this Action. Plaintiffs' Counsel submitted 15 letters totaling 52 pages alerting the Court to supplemental authorities related to the pending motions to dismiss and opposing arguments advanced in supplemental authority letters submitted by Defendants. *Id.* ¶ 27.

On December 21, 2018, the Court granted in parted and denied in part Defendants' motion, and both Plaintiffs and UBS moved for reconsideration in January 2019. *Id.* ¶ 29. Plaintiffs' Counsel also moved to substitute FLH as assignee and attorney-in-fact in place of FrontPoint on February 5, 2019, which UBS opposed. *Id.* ¶ 31. After the motions had been fully briefed, the Court denied Plaintiffs' motion for substitution, dismissed FrontPoint's remaining claims for lack of capacity, and terminated the pending motions. *Id.*

### 2. Plaintiffs' Counsel's Prosecution of the Appeal

On September 16, 2019, Representative Plaintiffs filed their notice of appeal and, on September 30, 2019, UBS AG filed its notice of cross-appeal. October 2023 Joint Decl. ¶ 32. On December 19, 2019, the Second Circuit granted Plaintiffs' motion to hold the appeals in abeyance due to the more advanced status of an appeal before the Second Circuit with similar central issues, *Frontpoint Asian Event Driven v. Citibank, N.A.*, No. 19-2719 (2d Cir.) ("*FrontPoint Appeal*"). *Id*. The stay was lifted on July 13, 2021 after the Second Circuit held in the *FrontPoint Appeal* that Article III was satisfied because FLH, the real party in interest, had standing at all relevant times and could step into a dissolved entity's shoes without the need to initiate a new action. *See Fund*

*Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 375 (2d Cir. 2021), *cert. denied,* 142 S. Ct. 757 (2022). *Id.*

On October 21, 2021, Plaintiffs filed their 59-page opening appellate brief, a 91-page special appendix and a 328-page joint appendix. October 2023 Joint Decl. ¶ 33. UBS and Defendants-Appellees Barclays, Rabobank, Lloyds, and RBS ("Appellees") filed their briefs, totaling 102 pages, on January 20, 2022. *Id.* After analyzing UBS's and Appellees' submissions, and conducting additional research, Plaintiffs filed their 57-page brief in response to UBS's opening brief and reply to Appellees' brief on April 8, 2022. *Id.* UBS filed a 26-page reply to Plaintiffs' response on May 20, 2022. *Id.* The appeal remains pending before the Second Circuit.

### 3. Settlement Negotiations Between Plaintiffs and Deutsche Bank

Settlement negotiations with Deutsche Bank took place over several months, starting in approximately September 2021 and continuing until the Settlement Agreement was executed on March 31, 2022. October 2023 Joint Decl. ¶ 37. Following initial communications with Deutsche Bank's counsel in September 2021, Plaintiffs' Counsel and Deutsche Bank engaged in lengthy negotiations, with each side presenting their views on the strengths and weaknesses of the case, as well as Deutsche Bank's litigation exposure. *Id.* ¶ 38. During the negotiations, Deutsche Bank denied any liability and maintained that it had meritorious defenses to the claims brought against it. *Id.* The Parties had extensive discussion over the material terms of any settlement, including the settlement amount, scope of the cooperation to be provided by Deutsche Bank, the release, and the circumstances under which the Parties may terminate the settlement. *Id.* After several weeks, the parties executed a binding term sheet on January 3, 2022. *Id.* ¶ 39. Upon execution of the term sheet, Plaintiffs' Counsel prepared and filed a motion with the Second Circuit to stay and sever the appeal as to Deutsche Bank only, and to remand that portion of the Action to the Court to consider the approval of the proposed Settlement. After several more months of negotiations,

Plaintiffs and Deutsche Bank executed the Settlement Agreement on March 31, 2022. *Id*. ¶¶ 40-41.

Plaintiffs' Counsel then began preparing a motion seeking preliminary approval of the Deutsche Bank Settlement, while at the same time developing a proposed notice program with the designated Settlement Administrator and working with experts to prepare the Distribution Plan that would be filed with the preliminary approval motion. *Id*. ¶¶ 41, 43-44, 47-48. On July 29, 2022, Plaintiffs' Counsel filed the motion for preliminary approval of the Deutsche Bank Settlement on behalf of Plaintiffs and the Class. *Id*. ¶ 43. Following approval of the motion, Plaintiffs' Counsel worked closely with the Settlement Administrator and Deutsche Bank to facilitate the issuance of notice to potential class members. *Id*. ¶ 45. Should the Settlement be finally approved, Plaintiffs' Counsel will continue to work closely with the Settlement Administrator to ensure the orderly processing of claims and the accurate implementation of the Distribution Plan.

\* \* \* \* \*

As detailed further below (*see* Part E. *infra*), Plaintiffs' Counsel have invested more than 8,000 hours at a lodestar value of $6,886,511.95 in prosecuting this Action for the benefit of the Settlement Class. The amount of time and energy dedicated to advancing this Action adequately supports the requested fee award of one-third of the Settlement Fund.

### C.    Quality of the Representation

"[T]he quality of representation is best measured by results," *Goldberger*, 209 F.3d at 55, which are evaluated by "the recovery obtained and the backgrounds of the lawyers" involved in the suit. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).

**<u>Results Obtained</u>:** The Deutsche Bank Settlement provides significant strategic benefits to the Class. It recovers $5,000,000 for the Class and gives Plaintiffs access to valuable cooperation

materials that may be used to advance the litigation should the Action be remanded. As a result, the Settlement serves as a catalyst for potential additional settlements in this Action. In negotiating this layered form of relief, Plaintiffs' Counsel acted in the best interests of the Class and protected Plaintiffs' ability to pursue claims against the non-settling Defendants.

While the deadlines to object or opt out have not passed, it is noteworthy that no objections have been lodged and only one potential Class Member has opted out of the Settlement. *See* Declaration of Jack Ewashko on behalf of A.B. Data, Ltd. Regarding Notice Administration ¶¶ 27, 29. The Settlement Class consists of numerous institutional investors with the sophistication and resources to object to the Settlement or opt out to pursue claims on their own. Accordingly, the Class's reaction thus far provides another indication of the incredible results achieved thus far.

**Background of Lawyers Involved**: Plaintiffs' Counsel have decades of experience prosecuting class action cases, including some of the largest class action recoveries under the commodities and antitrust laws.[4] This includes specific expertise in benchmark rate manipulation as demonstrated by Plaintiffs' Counsel's current tenure as lead, co-lead, or additional plaintiffs' counsel in cases alleging anticompetitive and manipulative conduct for several "IBOR" rates.[5] Additional examples of Plaintiffs' Counsel's more than 70 years of combined experience with complex litigation are detailed in Plaintiffs' Counsel's resumes.

---

[4] *See* Briganti Fee Declaration, at Exhibit A (attaching Lowey's firm resume); Jaccarino Fee Declaration, at Exhibit A (attaching Lovell's firm resume).

[5] *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y.), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (GBD) (S.D.N.Y.) (involving the London Interbank Offered Rate ("LIBOR") for Japanese Yen ("Yen-LIBOR) and the Tokyo Interbank Offered Rate ("Euroyen TIBOR")); *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (involving the Euro Interbank Offered Rate ("Euribor")); *Dennis et al. v. JPMorgan Chase & Co. et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) (involving the Australian Bank Bill Swap Rate ("BBSW")); *Fund Liquidation Holdings LLC, et al. v. Citibank, N.A., et al.*, No. 16-cv-05263 (AKH) (S.D.N.Y.) (involving the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR")); *Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse Group AG, et al.*, No. 15-cv-00871 (SHS) (S.D.N.Y.) (involving Swiss franc LIBOR); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MD 2262, 11 Civ. 2613, (NRB) (S.D.N.Y.) (U.S. Dollar LIBOR Exchange-Based Action).

Another consideration for assessing the quality of the representation is "[t]he quality of the opposing counsel" in the case. *See Maley*, 186 F. Supp. 2d at 373. The valuable settlement that Plaintiffs' Counsel secured cannot be fully appreciated without recognizing the caliber of Deutsche Bank's counsel in this Action. *See Meredith Corp.*, 87 F. Supp. 3d at 670 (noting that counsel's achievement in "obtaining valuable recompense . . . for its clients is particularly noteworthy given the caliber and vigor of its adversaries").[6] The fact that Plaintiffs' Counsel successfully prosecuted this Action for eight years against formidable opponents leading to the recovery of $5,000,000 further reflects the quality of representation provided.

### D. The Fee Request is Supported by the Remaining Goldberg Factors

#### 1. Plaintiffs' Counsel's Request is Within the Range Used Under the Second Circuit's Preferred Percentage-Based Methodology

The reasonableness of Plaintiffs' Counsel's fee request is confirmed by comparing it to awards in other cases applying the "percentage method" of fee calculation favored in this Circuit. *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method"); *see also In re Beacon Assocs. Litig.*, No. 09-cv-3907 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) (explaining that "percentage of recovery" is "the preferred method of calculating the award for class counsel in common fund cases"). Courts prefer the "percentage method" because it is easy to administer and avoids the "dubious merits of the lodestar approach." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003); *see also NASDAQ III*, 187 F.R.D. at 485 (noting that the percentage method is easy to administer). The percentage method closely "mimics the compensation system actually used by individual

---

[6] *See also NASDAQ III*, 187 F.R.D. at 488 (approving attorneys' fee award where defendants were represented by "several dozen of the nation's biggest and most highly regarded defense law firms."); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2020 WL 7481292, at *2 (S.D.N.Y. Dec. 18, 2020) (litigating against sophisticated opposing counsel with a well-funded defendant are "the hallmarks of a challenging case.").

clients to compensate their attorneys," *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999), and "aligns the interests of the class and its counsel" while incentivizing "the efficient prosecution and early resolution of litigation." *Hall v. Children's Place Retail Stores Inc.*, 669 F. Supp. 2d 399, 401 (S.D.N.Y. 2009) (citation omitted).

Plaintiffs' Counsel's request for one-third of the $5,000,000 Settlement as attorney fees aligns with the fee percentages routinely approved in this District for similarly sized (or larger) settlements. *See Solis v. Orthonet LLC*, No. 1:19-cv-04678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021) (awarding one-third fee of $3 million settlement fund); *Merryman v. Citigroup Inc.*, No. 15-cv-9185, ECF No. 163 (S.D.N.Y. May 3, 2019) (awarding 33.33% of $14.75 million settlement as attorney fees); *In re JPMorgan Treasury Futures Spoofing Litig.*, No. 1:20-cv-03515 (PAE) (S.D.N.Y. June 6, 2022), ECF No. 96 (awarding 33.3% of $15,700,000 settlement fund); *In re Deutsche Bank AG Sec. Litig.*, No. 1:09-cv-01714 (GHW), 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding one-third fee from $18.5 million settlement); *Micholle v. Ophthotech Corporation et al*, No. 1:17-cv-00210 (VSB)(GWG), 2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022) (awarding one-third fee of $29 million settlement fund); *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18-cv-10356 (GHW) (S.D.N.Y. Jul. 7, 2022), ECF. No. 114 (awarding one-third fee from a $60 million settlement); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548 (VSB), 2019 WL 4734396, at *2 (S.D.N.Y. Sept. 23, 2019) ("*J.P. Morgan*") (approving one-third fee of $75 million common fund).

Studies of antitrust class actions further confirm the reasonableness of the requested one-third fee. *See* Center for Litigation and Courts and The Huntington National Bank, *2021 Antitrust Annual Report: Class Actions in Federal Court* (April 2022) at 28 (median fee awards of 30% in

antitrust settlements of less than $10 million);[7] Theodore Eisenberg *et. al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (the median fee award in nineteen different antitrust class actions studied during 2009-2013 was 30%); Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases*, 42 U.S.F. L. REV. 879, 911, tlb.7A (July 2008) (majority of antitrust class actions awarded a contingent fee of 30% or more where the recoveries were up to $100 million); Joshua P. Davis & Robert H. Lande, *Toward an Empirical and Theoretical Assessment of Private Antitrust Enforcement*, 36 SEATTLE U.L. REV. 1269, 1293-95 (2013) ("[I]n the twenty newer cases counsel tended to recover approximately 30% to 33.3% in cases with recoveries below $100 million").

### 2. Public Policy Supports Approval

Had Plaintiffs' Counsel not prosecuted this Action, the class of investors in Sterling LIBOR-Based Derivatives would have been left without recompense for their losses. Despite the government investigations and certain Defendants' admissions of wrongdoing, many investors harmed by the conspiracy would not have received any money at all but for this Action. *See, e.g.*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) ("providing lawyers with sufficient incentive to bring common fund cases . . . serve[s] the public interest") (citations omitted). Indeed, the U.S. Supreme Court has repeatedly stated that such actions are "an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Public policy encourages enforcement of the antitrust and commodities laws through private civil suits to deter infringing conduct in the future. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means

---

[7] *Available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4117930.

of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); *Leist v. Simplot*, 638 F.2d 283, 311 (2d Cir. 1980) ("The 1974 Congress repeatedly expressed its view that the changes [to the CEA] were designed to strengthen commodity futures regulation, a goal that would be ill-served by abolishing the private right of action that everyone had thought to exist."), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) (citing CEA legislative history); *Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 584 (7th Cir. 1987) (explaining that Congress depends on the "critical" role of additional private suits to deter violations of the CEA).

Awarding a reasonable percentage of the common fund further ensures that Plaintiffs' Counsel retains the ability and incentive to pursue antitrust and CEA violations at their own expense even when recovery is uncertain. *See Goldberger*, 209 F.3d at 51 ("There is . . . commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.").

### E. The Lodestar Value of Plaintiffs' Counsel's Time and Labor Confirms the Reasonableness of the Fee Request

The amount of work that Plaintiffs' Counsel have undertaken is further evident in the total lodestar to date in this Action. Courts in this Circuit use the lodestar calculation "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353. There is no windfall here. Plaintiffs' Counsel spent 8,036.61 hours litigating this Action as of August 31, 2023, for an aggregate lodestar of $6,886,511.95. *See* Joint Decl. ¶ 56; Briganti Fee Decl.; Jaccarino Fee Decl. Not only is Plaintiffs' Counsel's request for fees reasonable, but their total current lodestar far exceeds the fees requested here, resulting in a negative multiplier.

Lodestar is calculated by "multipl[ying] the reasonable hours billed by a reasonable hourly rate." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 347.[8] Courts use "prevailing market rates" and current rates, rather than historical rates, to calculate the lodestar figure to account for the delay in payment. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989)).

The billing rates used to calculate the lodestar are reasonable. The attorneys working on this case had hourly billing rates ranging from $325 to $1,395. *See* Briganti Fee Decl. ¶ 7 (schedule listing attorney rates from $325-$1,395); Jaccarino Fee Decl. ¶ 7 (schedule listing attorney rates from $540-$1,210). Billing rates in the same range have been previously accepted as reflective of market rates in New York for work of comparable size and complexity. *See*, *e.g.*, *Dennis v. JPMorgan Chase & Co.*, No. 16-cv-6496 (LAK), 2023 WL 3646801, at *2 (S.D.N.Y. May 25, 2023) ("The Court finds that the hourly rates for the remaining timekeepers – the attorneys, staff attorneys, project attorney, and paralegals – were appropriate."), *see* Mem. in Support of Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses at 14-15, *Dennis v. JPMorgan Chase & Co.*, No. 16-cv-6496 (LAK) (S.D.N.Y. Aug. 18, 2022), ECF No. 555 ("The hourly billing rates for attorneys working on this case ranged from $185 to $1,295."); Order Awarding Attorney's Fees, at 2, *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18 Civ. 10356 (GHW) (S.D.N.Y. Jul. 7, 2022), ECF. No. 114 (awarding 33.3% of a $60 million settlement), *see* Hearing Transcript at 26:19-23, *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18 Civ. 10356 (GHW) (S.D.N.Y.), ECF No. 117 ("The Court has reviewed the [hourly rates between $365 and $1,295] and find them to be in the appropriate [ ] range"); *In re GSE Bonds*

---

[8] When used as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

*Antitrust Litig.*, 2020 WL 3250593, at *5 (applying lodestar calculation using billing rates ranging from $350 to $1,150 per hour).

Further, the number of hours spent on this Action are reasonable, particularly in light of Plaintiffs' Counsel's work. They independently investigated and developed the Action; opposed Defendants' motions to dismiss and motion for reconsideration; prosecuted the appeal of this Action in the Second Circuit; negotiated the Settlement, drafted the term sheet and Settlement Agreement, and prepared the motion for preliminary approval of the Settlement; and have supervised and will continue to supervise the notice and settlement administration process. *See* Part I.B, *supra*. Plaintiffs' Counsel actively managed the case to ensure that resources were adequately and appropriately utilized. Their time and lodestar were audited to remove any time spent working on this Fee and Expense Application as well as any time entries discounted in the exercise of billing judgments.

Compared with the lodestar value of Plaintiffs' Counsel's work, the requested fee award yields a negative multiplier of 0.24. Where, as here, the lodestar cross-check results in a negative multiplier, courts in the Second Circuit have consistently found that a negative lodestar is "a strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (finding the negative lodestar multiplier of 0.92 "a strong indication of the reasonableness of the proposed [$35.388 million] fee" from a $294.9 million settlement); *see also, e.g., In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-md-02542 (VSB), 2021 WL 2328431 (S.D.N.Y June 7, 2021) (approving a 33.3% attorneys' fee ($10,333,333.33) that represented a negative multiplier of 0.49); *City of Providence*, 2014 WL 1883494, at *13 (finding that a fee award of $4,950,000 represented a negative multiplier of 0.7, which was "well below the parameters used throughout district courts

in the Second Circuit, [thus affording] additional evidence that the requested fee is reasonable."); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 (CM), 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[h]ere the [0.39] lodestar multiplier is negative, and this is further indication of the reasonableness of the negotiated fee."); *In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431 (ARR), 2001 WL 1590512, at *17 (E.D.N.Y. Oct. 31, 2001) (the "high percentage fee" of $195 million "still represent[ed] a negative multiplier" of 0.7 and "therefore [there was] no real danger of over-compensation" when cross-checked with lodestar of $378 million). The lodestar cross-check applied in this case provides additional support to granting the requested fee award of one-third of the $5,000,000 Settlement.

## II. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE

The attorneys whose work leads to the creation of "a common settlement fund for a class are entitled to reimbursement of [reasonable] expenses that they advance to a class." *Meredith Corp.*, 87 F. Supp. 3d at 671; *see also In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431(ARR), 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."). When "a class plaintiff successfully recovers a common fund for the benefit of a class, the costs of litigation should be spread among the fund's beneficiaries." *Maley*, 186 F. Supp. 2d at 369. Such costs are "compensable if they are of the type normally billed by attorneys to paying clients." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15 Civ. 07192 (CM), 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019). In cases where a large amount of the expenses was paid to experts, courts routinely approve those disbursements. *See, e.g., CDS Litig.*, 2016 WL 2731524, at *18 (approving $10 million in expenses where "[m]ost of these expenses were incurred in connection with retention of experts").

Here, Plaintiffs' Counsel incurred $375,536.24 in expenses from inception through August 31, 2023. *See* Joint Decl. ¶¶ 58-59. This amount is well below the $600,000 Plaintiffs' Counsel

advised in the Court-approved notice sent to Settlement Class Members. *See* ECF No. 262-4 at 18. These costs and expenses were "incidental and necessary to the representation of the [C]lass," and should be reimbursed. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013). Of Plaintiff's Counsel's expenses, $350,150.00 (or 93%) went towards expert and professional services, which include consulting with experts with respect to analyzing relevant data, estimating damages, and developing the Distribution Plan, and engaging appellate counsel to assist Plaintiffs' Counsel with the appeal. The remaining costs relate to ordinary expenses such as legal research costs, in-house copying charges, and travel costs. *See J.P. Morgan*, 2019 WL 4734396, at *2 (approving Plaintiffs' reasonable expenses, including legal research costs and in-house copying). As the costs were necessary for the prosecution and are reasonable, reimbursement of these expenses should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that the court approve their application for an attorneys' fees award of one-third of the Settlement Fund ($1,666,666.66) and reimbursement of litigation costs and expenses totaling $375,536.24.

Dated: October 5, 2023

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

**LOVELL STEWART HALEBIAN JACOBSON LLP**

_/s/ Vincent Briganti_

Vincent Briganti
Geoffrey Horn
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
E-mail: vbriganti@lowey.com
E-mail: ghorn@lowey.com

_/s/ Christopher Lovell_

Christopher Lovell
Victor E. Stewart
Benjamin M. Jaccarino
500 Fifth Avenue, Suite 2440
New York, NY 10110
Tel.: (212) 608-1900
Fax: (646) 398-8392
E-mail: clovell@lshllp.com
E-mail: vstewart@lshllp.com
E-mail: bjaccarino@lshllp.com

_Counsel for Representative Plaintiffs and the Proposed Class_